1  James C. Bastian, Jr. - Bar No. 175415
   Melissa Davis Lowe – Bar No. 245521
2  **SHULMAN HODGES & BASTIAN LLP**
   100 Spectrum Center Drive, Suite 600
3  Irvine, California 92618
   Telephone:  (949) 340-3400
4  Facsimile:   (949) 340-3000
   Email: jbastian@shbllp.com; mlowe@shbllp.com
5
   Attorneys for Petitioning Creditors D&A Daily
6  Mortgage Fund III, L.P.; D&A Semi-Annual Mortgage
   Fund III, L.P.; and D&A Intermediate-Term Mortgage Fund III, L.P.
7
   Robert E. Opera – Bar No. 101182
8  WINTHROP COUCHOT
   PROFESSIONAL CORPORATION
9  660 Newport Center Drive, Fourth Floor
   Newport Beach, California 92660
10 Telephone:  (949) 720-4100
   Facsimile:   (949) 720-4111
11 Email: ropera@winthropcouchot.com

12 General Insolvency Counsel for Debtor
   and Debtor In Possession

13

14          **UNITED STATES BANKRUPTCY COURT**

15     **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

16 | In re                          | Case No.  8:15-bk-10721-SC |
   |                                | Chapter  11 |
17 | **AMERICAN SPECTRUM REALTY, INC.,** | |
   |                                | **SECOND AMENDED DISCLOSURE** |
18 |                                | **STATEMENT DESCRIBING SECOND** |
   |                                | **AMENDED LIQUIDATING CHAPTER 11** |
19 |                  Debtor.       | **PLAN PROPOSED JOINTLY BY THE** |
   |                                | **PETITIONING CREDITORS AND THE** |
20 |                                | **DEBTOR** |

21                                   **Disclosure Statement Hearing**
                                     Date:   April 6, 2016
22                                   Time:  2:00 p.m.
                                      Place: Courtroom 5C
23                                            411 West Fourth Street
                                             Santa Ana, CA 92701
24
                                     **Plan Confirmation Hearing**
25                                   [See Disclosure Statement for Voting and
                                     Objection Procedures]
26                                   Date:   May 25, 2016
                                     Time:  1:30 p.m.
27                                   Place: Courtroom 5C
                                            411 West Fourth Street
28                                           Santa Ana, CA 92701

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................5

    A.    Purpose of this Document.......................................................................8

    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing............9

        1.    Time and Place of the Confirmation Hearing...............................9

        2.    Deadline for Voting for or Against the Plan.................................9

        3.    Deadline for Objecting to the Confirmation of the Plan...........................10

        4.    Identity of Person to Contact for More Information Regarding the Plan ..................................................................................11

    C.    Disclaimer ........................................................................................11

II.    DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION ............14

    A.    Definitions.......................................................................................14

    B.    Interpretations, Computation of Time and Governing Law.................................28

        1.    Undefined Terms .......................................................................28

        2.    Rules of Interpretation ..............................................................28

        3.    Computing Time Periods ...........................................................29

        4.    Notices and Delivery of Documents ..........................................29

III.    BACKGROUND ................................................................................................30

    A.    Description of the Debtor's Background and Business Operations.......................30

    B.    The Debtor's Assets and Liabilities...................................................31

    C.    Events Leading to the Bankruptcy Filing ..........................................33

    D.    Management of the Debtor Before and After the Petition Date .....................35

    E.    Significant Events During the Bankruptcy Case ................................37

        1.    Bankruptcy Proceedings ............................................................37

        2.    Other Legal Proceedings............................................................52

    F.    Procedures Implemented to Resolve Financial Problems....................................58

    G.    Debtor's Current Financial Condition ...............................................59

IV.    SUMMARY OF THE PLAN.................................................................................59

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

A.    Overview ...................................................................................................... 59

B.    Unclassified Claims ..................................................................................... 59

      1.    Administrative Expenses ................................................................. 60

      2.    Priority Tax Claims ......................................................................... 65

C.    Classified Claims ........................................................................................ 68

      1.    Class 1 – Class of Secured Claims ................................................. 68

      2.    Class 2 – Classes of Priority Non-Tax Claims ............................... 72

      3.    Class 3 - General Unsecured Claims .............................................. 74

      4.    Class 4 – Class of Interest Holders ................................................ 75

D.    Means of Effectuating the Plan .................................................................. 76

      1.    Summary of Distributions Under the Plan ..................................... 76

      2.    Dissolution of the Debtor ................................................................ 77

      3.    The Liquidating Trust. .................................................................... 77

      4.    The Liquidating Trustee. ................................................................ 79

      5.    Dunham Funds Settlement .............................................................. 81

      6.    Basis for Settlement with the Dunham Funds ................................ 83

      b.    Difficulties in Collection ................................................................ 84

      c.    The Complexity, Expense, Inconvenience and Delay of Litigation .......... 85

      d.    The Interests of Creditors ............................................................... 85

E.    Post-Confirmation Management ................................................................. 87

F.    Employment and Compensation of Professionals ...................................... 88

G.    Risk Factors ................................................................................................ 88

H.    Post-Confirmation Estate Claims ............................................................... 91

I.    Objections to Claims ................................................................................... 92

J.    Pending Disputed General Unsecured Claims as of the Date of
      Distribution ................................................................................................. 93

K.    Setoff, Recoupment, and Other Rights ...................................................... 93

L.    Unclaimed Distributions ............................................................................ 93

M.    Other Provisions of the Plan ...................................................................... 95

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| | 1. | Executory Contracts and Unexpired Leases | 95 |
| | 2. | Changes In Rates Subject To Regulatory Commission Approval | 97 |
| | 3. | Retention of Jurisdiction | 97 |
| N. | | Tax Consequences of the Plan | 99 |
| V. | | CONFIRMATION REQUIREMENTS AND PROCEDURES | 100 |
| | A. | Who May Vote Or Object | 101 |
| | 1. | Who May Object To Confirmation Of The Plan | 101 |
| | 2. | Who May Vote To Accept The Plan | 101 |
| | 3. | What Is An Allowed Claim | 101 |
| | 4. | What Is An Impaired Claim | 101 |
| | 5. | Who Is Not Entitled To Vote | 102 |
| | 6. | Who Can Vote In More Than One Class | 103 |
| | 7. | Votes Necessary To Confirm The Plan | 103 |
| | 8. | Votes Necessary For A Class To Accept The Plan | 103 |
| | 9. | Treatment Of Non-Accepting Classes | 104 |
| | 10. | Request For Confirmation Despite Nonacceptance by Impaired Class(es) | 104 |
| | B. | Liquidation Analysis | 104 |
| | C. | Feasibility | 108 |
| | D. | Exculpation | 109 |
| | E. | Conditions Precedent to Confirmation | 110 |
| | F. | Modification of the Plan | 110 |
| | G. | Post-Confirmation Status Reports | 110 |
| | H. | Post-Confirmation Conversion/Dismissal | 111 |
| | I. | Termination of the Board and the Committee and Appointment of Oversight Committee | 111 |
| | J. | Substantial Consummation | 112 |
| | K. | Recommendation and Conclusion | 112 |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

# I.   **INTRODUCTION**

On February 13, 2015, an Involuntary Bankruptcy Case[1] was filed against the Debtor by the Petitioners.  An Order for Relief under Chapter 11 was entered by the Court on May 1, 2015 (docket 112) and since that time the Debtor has been in the possession of its property and the management of its affairs pursuant to Bankruptcy Code Sections 1107 and 1108.

Petitioners and the Debtor jointly provide this Disclosure Statement to all of the Debtor's Creditors and other parties in interest.

The Bankruptcy Code requires that, at the time when the Plan is delivered to Creditors, the Plan be accompanied by a Disclosure Statement.  The purpose of a Disclosure Statement is to provide information of a kind, and in sufficient detail, so far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a typical Creditor to make an informed judgment about the Plan and to enable such Creditor to determine whether it is in his best interest to vote for (accept) or against (reject) the Plan.

**THE DOCUMENT YOU ARE READING IS THE**

**DISCLOSURE STATEMENT FOR THE PLAN**

Chapter 11 of the Bankruptcy Code allows debtors, and under some circumstances, Creditors and other parties in interest, to propose a Chapter 11 plan.  The plan may provide for debtor to reorganize by continuing to operate, to liquidate by selling assets of the Estate, or a combination of both.  The Petitioners and the Debtor are jointly proposing the Plan sent to you in the same envelope as this document.

This Disclosure Statement contains a description of the Plan and other information relevant to the decision whether to vote to accept the Plan.  The Debtor and the Petitioners encourage you to read this Disclosure Statement because it contains important information concerning the history of the Debtor's business operations, its financial affairs, its assets and liabilities, and it sets forth a summary of the Plan terms.

---

[1] The definitions of the capitalized terms used in this Disclosure Statement are contained in Section II. of this Disclosure Statement.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

5

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1   This Disclosure Statement, including the schedules and exhibits attached hereto, is the

2   only document authorized by the Court to solicit votes for or against the Plan. Most statements

3   and financial information contained herein about the Debtor have been obtained from documents

4   and information contained in the Court's files in the Case and/or provided to the Debtor and the

5   Petitioners by the Debtor and/or Creditors and from what the Chief Restructuring Officer has

6   learned since his appointment and review of the Debtor's books and records.

7   The statements contained in this Disclosure Statement are made as of the date this

8   Disclosure Statement is signed below by the Petitioners and the Debtor unless another time is

9   specified.  The delivery or filing of this Disclosure Statement does not constitute a representation

10  that there has been no change in the information set forth in this Disclosure Statement and the

11  materials relied upon in preparation of this Disclosure Statement after the date signed below.

12  Nothing contained in this Disclosure Statement shall constitute an admission of any fact

13  or liability by any party.  THE DEBTOR AND THE PETITIONERS RESERVE THE RIGHT

14  TO AMEND OR UPDATE ANY PORTION OF THIS DISCLOSURE STATEMENT PRIOR

15  TO THE PLAN CONFIRMATION HEARING.

16  The Plan is a liquidating plan.  The Debtor will make payments under the Plan primarily

17  from all of the Debtor's Net Operating Income plus Net Sale Proceeds.  The Liquidating Trustee,

18  with oversight and the consent of the Oversight Committee, will liquidate the assets of the

19  Debtor and disburse the proceeds to Creditors as set forth herein.  Proceeds derived from Post-

20  Confirmation Estate Claims will also provide funds for payment to Creditors.

21  Distributions to holders of Allowed Claims will be made as follows:

22  1.      First, to pay the Dunham Funds for any funds advanced to pay the Sabatasso

23  Settlement, Allowed Administrative Claims, Gap Claims and the initial 5% distribution to

24  Allowed General Unsecured Claims as described below.

25  2.      Second, to pay Allowed Administrative Claims and Gap Claims in full on the

26  Effective Date unless the holder of an Allowed Administrative Claim or Gap Claim agrees to a

27  different treatment.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

6

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

3.      Next to pay holders of Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, if any, in an amount equal to the Allowed amount of such Claims.  Alternatively, at the discretion of the Liquidating Trustee, Allowed Priority Tax Claims shall be paid in full with interest within two years of the Order for Relief Date.

4.      Allowed Secured Claims under the Plan are separately classified in accordance with the Code.  All Secured Creditors shall retain, unaltered, all of their legal, equitable and contractual rights and consequently, shall be deemed to vote in favor of the Plan.  Creditors with Allowed Secured Claims should review the treatment section herein to see the repayment terms for their specific debts.

5.      General Unsecured Claims other than the Dunham General Unsecured Claim will receive a one time lump sum payment within six (6) months of the Effective Date totaling the lesser of 5% of their Allowed Claim or a Pro Rata Share with other General Unsecured Claims other than the Dunham General Unsecured Claim of the amount of $600,000.

6.      Allowed General Unsecured Claims and the Dunham Funds will then share in the Liquidating Trust Assets 50% to 50% provided that Allowed General Unsecured Claims total no more than $14 million.  If Allowed General Unsecured Claims are higher than $14 million, the Dunham General Unsecured Claim is capped at $14 million and General Unsecured Creditors and the Dunham Funds will share pro rata in all Liquidating Trust Assets. Once Allowed General Unsecured Claims have been paid 22.5% of their Allowed Claims, then thereafter the Dunham Funds shall receive 2/3 of all distributions and Allowed General Unsecured Creditors shall receive 1/3 of all distributions from the Liquidating Trust.

**A MORE COMPLETE DESCRIPTION OF THE PROVISIONS OF THE PLAN AND THE MEANS OF EFFECTUATING THE PLAN ARE LOCATED AT SECTION IV. BELOW.**

///

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

## A.     Purpose of this Document

This Disclosure Statement does not purport to be a complete description of the financial data pertaining to the Debtor's business and financial affairs, the applicable provisions of the Bankruptcy Code, or any other matter which may be deemed significant by Creditors. Out of practical necessity, this Disclosure Statement represents an attempt to summarize extensive overall data, legal documents and legal principles, including provisions of the Bankruptcy Code, and to set them forth in understandable, readable form.

**READ THIS DISCLOSURE STATEMENT CAREFULLY TO LEARN ABOUT:**

1. **WHO CAN VOTE OR OBJECT;**

2. **THE TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN A LIQUIDATION;**

3. **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE CASE;**

4. **WHAT THE COURT WILL LOOK AT TO DECIDE WHETHER TO CONFIRM THE PLAN;**

5. **THE EFFECT OF CONFIRMATION; AND**

6. **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney and accountant to obtain advice on how the Plan will affect you and what is the best course of action for you.

Any party can now solicit votes for or against the Plan. However, the statements and financial information herein about the Debtor have been obtained from documents and information contained in the Court's files in the Case and/or provided to the Debtor and the Petitioners by the Debtor and/or Creditors and the conclusions set forth herein are based on such information. The accuracy has not yet been determined by the Court and the Court may determine such accuracy at the hearing regarding whether to confirm the Plan.

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

8

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**B.**       **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS IN THE CASE.

**1.**       **Time and Place of the Confirmation Hearing**

May 25, 2016 at 1:30 p.m.
United States Bankruptcy Court
Courtroom 5C
411 West Fourth Street
Santa Ana, CA 92701

**2.**       **Deadline for Voting for or Against the Plan**

If you are entitled to vote, it is in your best interest to vote timely on the enclosed Ballot and return the Ballot by the Voting Deadline to the following:

**Attorneys for the Petitioners:**
Melissa Davis Lowe, Esq.
SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: 949-340-3400
Facsimile: 949-340-3000
Email: mlowe@shbllp.com

**Service of the Ballot may be made via email, facsimile, personal delivery or United States Mail, First Class, such that the Ballot received by the Voting Deadline of May 11, 2016 at 5:00 p.m. California time.**  Your Ballot must be received by the Voting Deadline or it will not be counted.  Since mail delays may occur, and because time is of the essence, it is important that Ballots be mailed well in advance of the Voting Deadline.  Failure to deliver a properly completed ballot by the Voting Deadline will result in the Ballot not being counted as an acceptance or a rejection.  Any improperly completed or late Ballot will not be counted.

///

///

**SHULMAN HODGES &
BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

9

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

### 3.      Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and upon the following such that it is received by **May 11, 2016, at 5:00 p.m. California time**:

**Attorneys for the Petitioners:**
James C. Bastian, Esq.
Melissa Davis Lowe, Esq.
SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: 949-340-3400
Facsimile: 949-340-3000
Email: jbastian@shbllp.com; mlowe@shbllp.com

**Attorneys for the Debtor:**
Robert E. Opera, Esq.
WINTHROP COUCHOT
PROFESSIONAL CORPORATION
660 Newport Center Drive, Fourth Floor
Newport Beach, California 92660
Telephone:  (949) 720-4100
Facsimile:   (949) 720-4111
Email: ropera@winthropcouchot.com

**Service of the objections to the confirmation of the Plan may be made via email, facsimile, personal delivery or United States Mail, First Class, such that the objections are received by May 11, 2016 at 5:00 p.m. California time.**

At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to Section 1129 of the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims created under the Plan, and if not, whether the Bankruptcy Court should nevertheless confirm the Plan.  If at the Confirmation Hearing the Bankruptcy Court determines that the Plan meets all of the requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will enter a Confirmation Order.  Pursuant to Section 1141 of the Bankruptcy Code, the effect of the Confirmation Order will be to make the provisions of the Plan binding upon the Debtor and each of its Creditors, regardless of whether each Creditor voted to accept the Plan.

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

10

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**4.** **Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan may contact the Petitioners' counsel, James C. Bastian, Jr., Esq. or Melissa Davis Lowe, Esq., at Shulman Hodges & Bastian LLP, 100 Spectrum Center Drive, Suite 600, Irvine, California 92618, telephone: (949) 340-3400, or email to jbastian@shbllp.com or mlowe@shbllp.com.

**C.** **Disclaimer**

The Court has not yet determined whether the Plan can be confirmed and makes no recommendation as to whether Creditors should support the Plan.

The financial data relied upon in formulating the Plan is based on the Debtor's records filed in the Case including the Debtor's Bankruptcy Schedules, the projected recovery from Post-Confirmation Estate Claims (including any Avoidance Actions and any D&O Action) and the financial information contained in pleadings filed with the Bankruptcy Court.  This information was not audited or reviewed by an independent accountant and the Petitioners are unable to warrant or represent that such financial information is without any inaccuracies.  Likewise, the Petitioners are unable to verify any information contained in the Debtor's public filings, including but not limited to all filings with the SEC.  The Petitioners have made reasonable efforts under the circumstances to present financial information fairly and accurately.  The Petitioners represent that everything stated in this Disclosure Statement is true to the best of their knowledge and is based primarily on what the Chief Restructuring Officer has learned since his appointment and been able to access to the Debtor's books and records.

The financial transactions contained in this Disclosure Statement represent the Petitioners' best estimates and projections of future events based on certain assumptions, based on what the Chief Restructuring Officer has learned and what the Petitioners have been told by the Debtor and its representatives.  With the passage of time, some or all of these estimates and projections may not occur.  None of the financial analyses contained in this Disclosure Statement, upon which this Disclosure Statement is based, is considered to be a "forecast" or "projection" as technically defined by the American Institute of Certified Public Accountants.  The use of the words "forecast," "project," or "projection" within this Disclosure Statement

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

11

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  relate to the broad expectations of future events or market conditions and qualifications of the

2  potential results of operations under those conditions.

3      The financial statements/projections attached to the Disclosure Statement as **Exhibit 1**

4  (historical statements) and **Exhibit 2** (financial projections for the life of the Plan) were prepared

5  by the Debtor and J. Michael Issa. The financial statements/projections set forth the cash

6  available for the purpose of funding the payments required by the terms of the Plan.  The Debtor

7  projects that there will be sufficient funds available to make the payments called for under the

8  Plan.

9      The Debtor's estimate as to the value of the Estate's assets set forth in the Disclosure

10  Statement are based in part on the Debtor's Schedules filed with the Court on June 3, 2015

11  (docket 146).

12      The discussion in the Disclosure Statement regarding the Debtor may contain "forward

13  looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.

14  Such statements consist of any statement other than a recitation of historical fact and can be

15  identified by the use of forward-looking terminology such as "may," "expect," "anticipate,"

16  "estimate," or "continue," or the negative thereof or other variations thereon or comparable

17  terminology.   The reader is cautioned that all forward looking statements are necessarily

18  speculative and there are certain risks and uncertainties that could cause actual events or results

19  to differ materially from those referred to in such forward looking statements.  The liquidation

20  analysis, financial projections, and other information are estimates only, and the timing and

21  amount of actual distributions to Creditors may be affected by many factors that cannot be

22  predicted.   Therefore, any analysis, estimates, or projections may or may not turn out to be

23  accurate.

24      The Debtor and the Petitioners have made a diligent effort to identify in this Disclosure

25  Statement all litigation claims, including claims for relief, counterclaims, and objections to

26  claims.  **However, no reliance should be placed on the fact that a particular litigation claim**

27  **is or is not identified herein.**  The Liquidating Trustee, or other parties-in-interest with Court

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

12

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

approval, may seek to investigate, file and prosecute litigation claims after the confirmation or Effective Date of the Plan whether or not the litigation claims are identified herein.

**THIS IS A SOLICITATION JOINTLY BY THE DEBTOR AND THE PETITIONERS.  THE REPRESENTATIONS HEREIN ARE THOSE OF THE DEBTOR AND THE PETITIONERS AND NOT OF THEIR ATTORNEYS OR CONSULTANTS. NO REPRESENTATIONS CONCERNING THE DEBTOR OR POST-CONFIRMATION DEBTOR, INCLUDING, BUT NOT LIMITED TO, REPRESENTATIONS AS TO THE POST-CONFIRMATION DEBTOR'S FUTURE ACTIVITIES, THE VALUE OF ITS PROPERTY, THE AMOUNT OF CLAIMS AGAINST THE ESTATE, OR ANY TAX EFFECT OF THE TRANSACTIONS PROPOSED UNDER THE PLAN, ARE AUTHORIZED BY THE DEBTOR AND THE PETITIONERS, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE IN ADDITION TO OR DIFFERENT FROM THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PARTY IN INTEREST.  ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR'S AND THE PETITIONERS' ATTORNEYS WHO, IN TURN, WILL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE BANKRUPTCY COURT MAY DEEM TO BE APPROPRIATE.**

**UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT REGARDING THE DEBTOR HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  COUNSEL FOR THE DEBTORS AND COUNSEL FOR THE PETITIONERS HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN AND MAKE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE ACCURACY THEREOF.**

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

13

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW CAREFULLY THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR TO VOTING ON THE PLAN. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED IN ANY MANNER TO BE LEGAL, BUSINESS, OR TAX ADVICE. EACH CREDITOR AND OTHER PARTY IN INTEREST SHOULD CONSULT WITH HIS OWN LEGAL COUNSEL, BUSINESS ADVISOR, CONSULTANT, AND/OR ACCOUNTANT PRIOR TO VOTING TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE CREDITORS TO ENABLE THEM TO MAKE AN INFORMED DECISION REGARDING THE PLAN.**

**THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION OF ACCEPTANCES TO THE PLAN, ASSUMING IT IS ACCURATE. HOWEVER, THE BANKRUPTCY COURT HAS NOT YET DETERMINED THE ACCURACY OF SUCH INFORMATION. IT MAY DO SO AT THE CONFIRMATION HEARING.**

II.    **DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION**

A.    **Definitions**

1.    "Administrative Claim or Administrative Expenses" means a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) and entitled to priority in payment under Bankruptcy Code sections 507(a)(2), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services); (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business; (c) any Professional Fees incurred before the Effective Date; (d) all fees and charges assessed against the Estate under Chapter 123 of title 28 of the United States Code,

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

14

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

sections 1911-30; (e) obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court and (f) Claims under Section 503(b)(9) of the Bankruptcy Code.

2.    "Allowed" means with reference to any Claim, except as otherwise provided herein:

a.    a Claim that has been Scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which the Debtor, the Liquidating Trustee or any other party in interest has not filed an objection;

b.    a Claim that either is not a Disputed Claim or has been allowed by a Final Order;

c.    a Claim that is allowed (i) in any stipulation with the Debtor concerning the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court upon proper notice to the Debtor and/or the Liquidating Trustee and other parties in interest; (ii) in any stipulation with the Liquidating Trustee concerning the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court or (iii) in any contract, instrument, indenture or other agreement entered into or assumed pursuant to the Plan;

d.    a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either of the Cases only if a Proof of Claim has been timely Filed in accordance with the Plan or has otherwise been deemed timely Filed under applicable law; or

e.    a Claim that is allowed pursuant to the terms of the Plan; provided, however, unless otherwise specified herein or by order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date.

3.    "Articles Supplementary" means the Amended and Restated Articles Supplementary for 8% Cumulative Preferred Stock, Series B of American Spectrum Realty, Inc. dated June 7, 2014.

4.    "ASDP" means American Spectrum Dunham Properties LLC.  The sole member of ASDP is ASROP.

5.    "ASRM" means American Spectrum Realty Management, Inc.  The sole member of ASRM is ASROP.

6.    "ASROP" means American Spectrum Realty Operating Partnership L.P., of which the Debtor is the sole general partner and holds a 94% limited partnership interest.  ASROP is the sole member of ASDP and ASRM.  ASROP is the Debtor's primary asset.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

15

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

7.    "<u>Avoidance Action</u>" means any action which is filed or which may be filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, any actions based on applicable nonbankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estate or to avoid a lien or transfer.

8.    "<u>Ballot</u>" means the form distributed to each holder of a Claim that is entitled to vote on the Plan and on which is to be indicated an acceptance or rejection of the Plan.

9.    "<u>Bankruptcy Code</u>" or "<u>Code</u>" means Title 11 of the United States Code, as now in effect or hereafter amended.  All citations in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

10.    "<u>Bankruptcy Court</u>" or "<u>Court</u>" means the United States Bankruptcy Court for the Central District of California, Santa Ana Division, which has jurisdiction over this Case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and regulations pertaining thereto.

11.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or hereafter amended.

12.    "<u>Bar Date</u>" means the last date for filing Proofs of Claim other than Administrative Claims or Claims based upon the rejection of any executory contracts or unexpired leases.  Pursuant to Court order entered on July 23, 2015 (docket 207), October 7, 2015 was set as the deadline for filing Proofs of Claim or interest in this Case.

13.    "<u>Beneficiaries</u>" means the Holders of certain Allowed Unsecured Claims, Holders of Disputed Claims, and Holders of Equity Interests who, pursuant to the Plan, are entitled to any Distributions from the Liquidating Trust.

14.    "<u>Board</u>" shall mean the Board of Directors of the Debtor.

15.    "<u>Business Day</u>" means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

16

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

16.    "Case" or "Involuntary Bankruptcy Case" means the involuntary chapter 11 petition that was filed against the Debtor by the Petitioners on February 13, 2015, for which an order for relief was entered and is now pending in the Central District of California, Santa Ana Division, as Case No. 8:15-bk-10721-SC.

17.    "Cash" means cash and cash equivalents, including, but not limited to, checks or similar forms of payment or exchange.

18.    "Claim" means: (a) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

19.    "Claimant" means the holder of a Claim.

20.    "Causes of Action" mean all of the Debtor's actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross-claims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Case, through and including the Effective Date, including, but not limited to, any Post-Confirmation Estate Claims (which includes any Avoidance Actions and any D&O Action).

21.    "Class" means a grouping into which Claims or Equity Interests which are substantially similar to other Claims or Equity Interests have been classified pursuant to Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

17

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

22.    "Committee" means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on January 21, 2016.

23.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

24.    "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

25.    "Confirmation Hearing" means the hearing, including any continued or postponed session thereof, at which time the Bankruptcy Court will consider and determine whether to confirm the Plan.

26.    "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

27.    "Contribution Agreement" means the agreement entered into on December 30, 2013 between the Debtor, ASROP, and the Dunham Funds whereby the Dunham Funds contributed a real estate portfolio of 19 properties valued at approximately $84.8 million, which included the assumption of approximately $17.2 million of debt, to American Spectrum Dunham Properties, LLC, an affiliate of the Debtor, in exchange for the Debtor issuing to the Dunham Funds approximately $67.5 million worth of 8% Cumulative Preferred Stock, Series B.

28.    "Creditor" means the holder of an Allowed Claim.

29.    "D&O Action" means any action which is filed or which may be filed for breach of fiduciary duty, violation of the business judgment rule, usurpation of corporate opportunities, breach of the California Trust Fund Doctrine, alter ego, fraud based upon misrepresentation of material facts, fraud by concealment of material facts, fraud by promise without intent to perform, fraud by negligent misrepresentation, unfair competition under California Business & Professions Code Section 17200 et seq., or other claims for relief against the Debtor and its officers and directors pursuant to any applicable bankruptcy law or nonbankruptcy law, including those that may be covered by the Debtor's insurance, including any directors' and officers' liability policies.

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive Suite 600 Irvine, CA 92618
4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

30.    "Debtor" means American Spectrum Realty, Inc., the debtor and debtor in possession in this Case.

31.    "Declaratory Relief Action" means that certain adversary proceeding commenced on July 21, 2015 by the Debtor and three of its subsidiaries[2] by the filing of a Complaint for Declaratory and Injunctive Relief (which complaint was amended on July 22, 2015 [3]), against the following Defendants: River Oaks Self Storage TIC 1, LP; River Oaks Self Storage TIC 2, LP; River Oaks Self Storage TIC 3, LP; River Oaks Self Storage TIC 4, LP; Attic Self Storage-Laredo, LP; Attic Space Blanco Self Storage Acquisitions LLC; San Antonio Grissom Road Self Storage TIC 1, LP; San Antonio Grissom Road Self Storage TIC 2, LP; San Antonio Grissom Road Self Storage TIC 3, LP; Houston South Mason Self Storage TIC 1, LP;  Houston South Mason Self Storage TIC 2, LP; Houston South Mason Self Storage TIC 3; LP, Houston South Mason Self Storage TIC 4, LP; Houston South Mason Self Storage TIC 5, LP;  Houston South Mason Self Storage TIC 6, LP; Evergreen Realty Property Management LLC; Ft. Worth Northwest Self Storage LP, LS Storage Investments, LP;  Folly Road Investments LLC; San Antonio Self-Storage III, LLC; Riverside Center Commerce Park II, LP;  Evergreen Nashville Storage LLC; Drennan Equity Pineville LLC; 2525 E Interstate 10, LP; Inwood Storage LLC; Kleinwood Storage LLC; SC Investment Holdings LLC; AQQ Florida LLC; Sabo Road Acquisitions, LP; Strongsville TIC 1, LLC; Strongsville TIC 2, LLC; Strongsville TIC 3, LLC; Strongsville TIC 4, LLC;  Strongsville TIC 5, LLC; Strongsville TIC 6, LLC;  Strongsville TIC 7, LLC; Strongsville TIC 8, LLC; Strongsville TIC 9, LLC; Strongsville TIC 10, LLC; Strongsville TIC 11, LLC; Strongsville TIC 12, LLC; Strongsville TIC 13, LLC; Strongsville TIC 14, LLC; Strongsville TIC 15, LLC; Strongsville TIC 16, LLC; Strongsville TIC 17, LLC; Strongsville TIC 18, LLC; Strongsville TIC 19, LLC; Strongsville TIC 20, LLC; Strongsville

---

[2]    The other Plaintiffs in the Declaratory Relief Action are (i) American Spectrum Realty Management, LLC; (ii) American Spectrum Self-Storage Management, LLC; and (iii) American Spectrum Management Group, Inc.

[3]    The First Amended Complaint for Declaratory and Injunctive Relief filed on July 22, 2015 removed eight of the original Defendants.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    TIC 21, LLC; Strongsville TIC 22, LLC; Strongsville TIC 23, LLC; and Denair Manor

2    Apartments, LP, Adversary Case No. 8:15-ap-01308-SC.

3        32.    "Disallowed Claim" means a Claim against the Debtor, which Claim is

4    disallowed pursuant to an order of the Bankruptcy Court as to which fourteen calendar days have

5    passed following entry of such order and no stay pending an appeal of such order is obtained

6    during such period.

7        33.    "Disbursing Agent" means the Debtor or the Liquidating Trustee.

8        34.    "Disclosure Statement" means the Second Amended Disclosure Statement for

9    Second Amended Chapter 11 Liquidating Plan Proposed Jointly by the Petitioning Creditors and

10   the Debtor (and all exhibits or schedules annexed thereto or referenced therein) as it may be

11   amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code

12   and Bankruptcy Rules.

13       35.    "Disputed Claim" means any Claim: (a) listed on the Debtor's Schedules as

14   unliquidated, disputed, or contingent; or (b) as to which the Debtor, or any other party in interest,

15   has interposed a timely objection or request for estimation or subordination in accordance with

16   the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or

17   subordination has not been withdrawn or determined by a Final Order.    A Claim will be

18   considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such

19   Claim.

20       36.    "Disputed Claims Reserve Fund" means the fund created upon the Effective Date

21   consisting of funds available for Distribution on account of Disputed Claims.

22       37.    "Distribution" means the Cash which is required to be distributed under the Plan

23   to the holders of Allowed Claims.

24       38.    "Dunham Funds" means collectively D&A Daily Mortgage Fund III, L.P., D&A

25   Semi-Annual Mortgage Fund III, L.P., and D&A Intermediate-Term Mortgage Fund III, L.P.

26       39.    "Dunham Funds Rescission Claims" means the claims made by the Dunham

27   Funds that the Contribution Agreement and the Dunham Funds Settlement Agreement must be

28   rescinded based upon fraud in the inducement and based upon failure of consideration.    In

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

20

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

particular, the Dunham Funds claim that the Debtor's CEO made material false representations regarding the Debtor's ability to perform under the Contribution Agreement and the Dunham Funds Settlement Agreement and that material facts regarding the condition of the Debtor and its ability to perform were not disclosed and further, that the Dunham Funds did not receive the approximate $22,124,140.55 to be paid in connection with redeeming the remaining stock under the Dunham Funds Settlement Agreement.  As such, the Dunham Funds essentially exchanged real property for worthless paper.  Since the parties are unable to be restored to their status quo, the Dunham Funds argue they are entitled to a claim for damages against the Debtor in the amount of $22,124,140.55.

40. "Dunham Funds Settlement Agreement" means the Settlement Agreement and Mutual Release entered into by and between the Debtor and the Dunham Funds on or about June 7, 2014 whereby the Dunham Funds agreed to surrender approximately $47.4 million dollars' worth of 8% Cumulative Preferred Stock, Series B, in exchange for a return of 14 of the 19 properties that they conveyed under the Contribution Agreement ("Transfer").  Following this transaction, the Dunham Funds retained approximately $22,124,140.55 in 8% Cumulative Preferred Stock, Series B.

41. "Dunham General Unsecured Claim" means collectively the proofs of claim filed by the Dunham Funds in the Bankruptcy Case on or about September 3, 2015 in the total amount of $22,124,140.55 and appearing on the Court's Claims Register as Claim Nos. 64, 65, and 66.  \

42. "Effective Date" means the means the date not later than thirty days following the date upon which the Confirmation Order becomes a Final Order; provided, however, that, if an appeal of the Confirmation Order is timely filed, the Debtor may elect to cause the Plan to become effective, notwithstanding the pendency of such appeal, so long as no stay of the Confirmation Order is in effect, by filing with the Bankruptcy Court a notice of such election, in which event the Plan will become effective as provided herein.

43. "Estate" means the estate of the Debtor created under Section 541 of the Bankruptcy Code in this Case.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

21

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

44.     "Equity Interests" means, with respect to the Debtor, as of the applicable Petition Date, any capital stock or other ownership interest in the Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in such Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or ownership interest.

45.     "Exculpated Parties" means, collectively, each of the following parties in their respective capacities as such: (a) the Debtor and the Petitioners, (b) each director, officer, financial advisor, other advisors of the Debtor and the Petitioners or the Professionals employed by or serving the Debtor or the Petitioners after the Petition Date, and each of their respective affiliates, and (c) the Committee and its Professionals.

46.     "File," "Filed," or "Filing" means filed with the Bankruptcy Court having jurisdiction over this Case.

47.     "Final Distribution" means, for each Class, the last Distribution to be made to holders of Allowed Claims in that Class.

48.     "Final Order" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which the Debtor and/or the Committee is a party, which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the or the Liquidating Trustee as the case may be; or (c) any appeal, petition for certiorari, reargument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, reargument, or rehearing was sought.

49.     "Gap Claim" means Claims arising in the ordinary course of business or financial affairs of the Debtor after the Petition Date but before the earlier of the appointment of a trustee and the Order for Relief, and shall be determined as of the date such Gap Claim arises and are entitled to priority in payment under Code Section 507(a)(3).

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

22

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

50. "<u>General Unsecured Claim</u>" means an unsecured Claim against the Debtor that is not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, a Claim based on the rejection of an executory contract or unexpired lease.

51. "<u>Gleicher</u>" means collectively Mark Gleicher, Trustee of the Mark Gleicher Trust and the Mark Gleicher Trust, the Debtor's post-petition lender.

52. "<u>Interim Trustee</u>" means Dennis Connolly, who was appointed as the Interim Trustee in the Case pursuant to Order of the Court entered on April 10, 2015 (docket 81) and that certain Notice of Appointment of Chapter 11 Trustee filed by the UST on April 21, 2015 (docket 89).

53. "<u>Liquidating Trust</u>" means that certain trust entitled "American Spectrum Realty, Inc. Liquidating Trust" as created in Section III.D.3 hereof, subject to the Confirmation Order and the Liquidating Trust Agreement. Except as otherwise expressly provided for in the Plan, all of the Liquidating Trust Assets shall be transferred to, and vested in, the Liquidating Trust on the Effective Date. The activities of the Liquidating Trust will include, among other things, objecting to claims and resolving all Disputed Claims, completing the liquidation of the Liquidation Trust Assets, including the Causes of Action, making Distributions to Holders of Allowed Claims (except for any Allowed Claims that are to be paid on the Effective Date by the Debtor), and paying the expenses of the Liquidating Trust.

54. "<u>Liquidating Trust Agreement</u>" means the "American Spectrum Realty, Inc. Liquidating Trust Agreement" by and between the Debtor and the Liquidating Trustee to be entered into as of the Effective Date pursuant to the Plan and the Confirmation Order, substantially in the form attached hereto as **Exhibit 4**, as may be amended from time to time in accordance with its terms. In the event of any inconsistency between the Liquidating Trust Agreement and the Plan, the Plan shall control.

55. "<u>Liquidating Trust Assets</u>" means any and all Assets of the Debtor's Estate that are transferred to, and vested in, the Liquidating Trust as of the Effective Date, including but not limited to certain Cash, Net Operating Income, Net Sale Proceeds, Post-Confirmation Estate Claims, recovery from the D&O Action, and other personal property.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

23

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

56.    "Liquidating Trustee" means the person charged with managing the Liquidating Trust and making Distributions pursuant to the terms of the Plan.  J. Michael Issa will serve as the Liquidating Trustee under the Plan until such time as he is unable or unwilling to serve at which point the Petitioners shall appoint a successor Liquidating Trustee.

57.    "Motion for Order for Relief" means that certain *Petitioning Creditors' Emergency Motion for an Order (1) Approving Stipulation Between Petitioning Creditors and the Debtor; (2) Setting Aside the Order Appointing Chapter 11 Trustee, or in the Alternative, Terminating the Chapter 11 Trustee* filed with the Court on April 29, 2015 (docket 102).

58.    "Net Operating Income" means all of the Debtor's operating income generated from the Debtor's regular business operations, minus (i) all expenses incurred from Debtor's regular business operations, (ii) all costs and administrative expenses of the Estate including the fees and expenses of the Debtor, the Petitioners, the Professionals of the Debtor and/or the Petitioners,  the Committee and its Professionals,  and the Liquidating Trustee and his Professionals, (iii) payment of income taxes, and (iv) payments pursuant to the Plan to Creditors holding Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and/or Allowed Secured Claims.

59.    "Net Sale Proceeds" means all of the Cash proceeds generated from lease, sale or refinance of assets of the Estate under the Plan, if any, minus (i) all costs of the lease, sale or refinance of assets under the Plan, (ii) payment of Claims secured by the assets sold, (iii) payment of all costs and administrative expenses of the Estate including the fees and expenses of the Debtor, the Petitioners, the Professionals of the Debtor, the Petitioners and the Committee, and the Liquidating Trustee and his Professionals, (iv) income taxes and (v) payments pursuant to the Plan to Creditors holding Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and/or Allowed Secured Claims.

60.    "Order for Relief" means that certain *Order for Relief in Involuntary Bankruptcy Case* entered by the Court on May 1, 2015 (docket 112).

61.    "Order for Relief Date" means May 1, 2015, the date of entry of the Order for Relief against the Debtor under Chapter 11.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

24

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

62.    "Order for Relief Stipulation" means that certain *Stipulation Between Debtor and Petitioners to: (1) Call Special Shareholder Meeting to Appoint Preferred Directors; (2) Appoint Interim Chief Executive Officer or Chief Restructuring Officer; (3) Enter Order for Relief; (4) Dismiss Related Voluntary Case; and (5) Set Deadlines to Meet United States Trustee Compliance and to File Bankruptcy Schedules and Statements* attached as Exhibit 5 to the Motion for Order for Relief (docket 102).

63.    "Oversight Committee" means the committee of three members to be formed and effective as of the Effective Date consisting of two members appointed by the Dunham Funds and one member of the Committee which shall oversee the actions of the Liquidating Trustee.

64.    "Petition Date" means the date on which the involuntary petition under Chapter 11 of the Bankruptcy Code  was filed against the Debtor – February 13, 2015.

65.    "Petitioning Creditors" or "Petitioners" means collectively D&A Daily Mortgage Fund III, L.P.; D&A Semi-Annual Mortgage Fund III, L.P.; and D&A Intermediate-Term Mortgage Fund III, L.P.

66.    "Plan" means the   Second Amended Chapter 11 Liquidating Plan Proposed Jointly by the Petitioning Creditors and the Debtor, as such Plan may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules,

67.    "Plan Proponent" means jointly the Petitioners and the Debtor.

68.    "Post-Confirmation Debtor" means the Debtor herein, on or after the Effective Date.

69.    "Post-Confirmation Estate Claims" means any and all claims and Causes of Action which constitute property of the Estate including, but not limited to, any Avoidance Actions and any D&O Action, whether or not such claims or Causes of Action are the subject of litigation pending as of the Effective Date.

70.    "Priority Claim" means an Administrative Claim, Priority Tax Claim, or Priority Non-Tax Unsecured Claim.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

25

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

71.     "<u>Priority Tax Claim</u>" means a Claim of a "governmental unit" (as such term is defined in section 101(27) of the Bankruptcy Code) of the kind specified in, and entitled to priority under, sections 502(i) and 507(a)(8) of the Bankruptcy Code.

72.     "<u>Priority Non-Tax Claim</u>" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

73.     "<u>Pro Rata Share</u>" means, with reference to any Distribution on account of any Allowed Claim or Allowed Interest, as applicable, in any Class, the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Interest bears to the aggregate amount of Allowed Claims or Allowed Interests of the same Class (and to the extent required for an interim Distribution and any reserve for Disputed Claims).

74.     "<u>Professionals</u>" means professionals such as attorneys, consultants or accountants employed by the Debtor, the Petitioners, the Committee, and/or the Liquidating Trustee in this Case, including Winthrop Couchot, P.C. (Debtor's Chapter 11 attorneys), Shulman Hodges & Bastian LLP, (the Petitioners' Chapter 11 attorneys), J. Michael Issa (Debtor's Chief Restructuring Officer), Levene, Neale, Bender, Yoo & Brill L.L.P. (Committee's attorneys), and the Liquidating Trustee and any attorneys, consultants or accountants employed by the Liquidating Trustee.

75.     "<u>Professional Fees</u>" means the fees for services of Professionals rendered and expenses incurred in connection with such services by Professionals on and after the Petition Dates and prior to and including the Effective Date and after the Effective Date.

76.     "<u>Proof of Claim</u>" means a statement under oath filed in this Case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

77.     "<u>Sabatasso Settlement</u>" means the $610,334.75 payment due to the Galardi Parties pursuant to the Sabatassos/Galardi Compromise Motion.

**SHULMAN HODGES &
BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

26

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

78.    "Schedules" means the applicable Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as amended, modified, or supplemented from time to time.

79.    "Secured" means when referring to a Claim: (a) secured by a lien on property in which the applicable Estate has an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the lienholder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

80.    "Secured Claim" means a Claim secured by a lien, security interest or other charge against property in the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

81.    "SHB" shall mean Shulman Hodges & Bastian LLP.

82.    "Unclaimed Distribution" means any Distribution which is unclaimed as a result of any of the following: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which remain unnegotiated for a period of ninety days after the date of issuance.

83.    "UST" means the United States Trustee.

84.    "Voluntary Case" means the March 16, 2015, voluntary Chapter 11 bankruptcy filed by the Debtor in the Bankruptcy Court for the Southern District of Texas, commencing Case No. 15-31514 ("Texas Bankruptcy Case").  At a hearing held on March 19, 2015, the Court transferred the Texas Bankruptcy Case to this Court, commencing Case No. 8:15-bk-11397-SC ("Voluntary Case").  Pursuant to a stipulation between the Debtor and Petitioners, and a Court

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

27

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

order thereon entered on May 1, 2015 (docket 57 in the Voluntary Case), the Voluntary Case was dismissed.

85.    "<u>Voting Deadline</u>" means 5:00 p.m. (California time) on May 11, 2016, which is the deadline for holders of impaired Claims to submit a Ballot.

**B.**    **<u>Interpretations, Computation of Time and Governing Law</u>**

**1.**    **<u>Undefined Terms</u>**

Any term used herein that is not defined herein, either in Section II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply hereto.  The definitions and rules of construction contained herein do not apply to the exhibits attached hereto except to the extent expressly so stated herein or in each exhibit.

**2.**    **<u>Rules of Interpretation</u>**

For the purposes of the Disclosure Statement:

a.    Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

b.    Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

c.    Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

d.    Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or to the Plan.

e.    Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

f.    Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

g.    The provisions of the Plan will control over any description thereof contained in the Disclosure Statement.

h.    Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply hereto.  The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each exhibit to the Plan.

i.    Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced for all purposes in accordance with, the laws of the State of California, without giving effect to any principles of conflict of laws thereof.

j.    All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

**3.    Computing Time Periods**

In computing any period of time prescribed  or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**4.    Notices and Delivery of Documents**

All notices, correspondence, and other deliveries under the Disclosure Statement and Plan must be directed as follows:

| To the Debtor or  Liquidating Trustee: | American Spectrum Realty, Inc.<br>J. Michael Issa, Chief Restructuring Officer<br>19800 MacArthur Suite 820<br>Irvine, CA 92612 |
| --- | --- |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

29

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| With a Copy to: | James C. Bastian, Jr., Esq.<br>Melissa Davis Lowe, Esq.<br>SHULMAN HODGES & BASTIAN LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: 949-340-3400<br>Facsimile: 949-340-3000 |
| --- | --- |
| With a Copy to: | Robert E. Opera, Esq.<br>Winthrop Couchot Professional Corporation<br>660 Newport Center Dr., #400<br>Newport Beach, CA 92660<br>Telephone:  949-720-4100<br>Facsimile:   949-720-4111 |

## III.    BACKGROUND

The Plan provides for the liquidation of the Debtor pursuant to the terms and conditions set forth in the Plan.  The Debtor's assets will be vested in the Liquidating Trust to be managed and disbursed to the Beneficiaries by the Liquidating Trustee with the oversight of the Oversight Committee while all assets are liquidated. The Involuntary Bankruptcy Case was necessitated by the Debtor's admitted failure to pay debts as they have come due, the Debtor's overall insolvency, numerous pending lawsuits, judgments and foreclosure proceedings against the Debtor and its subsidiaries, serious concerns raised about the deteriorating financial condition of the Debtor, the Debtor's failure to meet SEC reporting requirements, and the Debtor's failure to call a special meeting of the Series B shareholders to replace management despite the Debtor's duty and the Petitioning Creditors' demand to do so.

The Plan is a liquidating plan.  The Liquidating Trustee, with oversight and the consent of the Oversight Committee, will continue to operate the business and liquidate the assets of the Debtor over time.  The Liquidating Trustee will make payments under the Plan primarily from all of the Debtor's Net Operating Income plus Net Sale Proceeds.  The Liquidating Trustee will also investigate and may pursue Post-Confirmation Estate Claims in order to repay Creditors.

The following is a description of the nature and the history of the Debtor's business and financial affairs, and of its financial difficulties.

## A.    Description of the Debtor's Background and Business Operations

The Debtor was formed in 2000 and began publicly trading on the New York Stock Exchange in 2001.  Although the Debtor is a real estate investor, the Debtor does not directly

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

30

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  own any real property.  The Debtor operates primarily through ASROP, of which the Debtor is

2  the sole general partner and holds 94% of the limited partnership interests.  (The other 6%

3  limited partnership interest in ASROP is owned by other non-affiliated parties).  ASROP is the

4  sole member of ASRM and ADSP.  ASRM is the Debtor's property managing affiliate.  ADSP

5  owns real property.

6       The Debtor acquires properties through its subsidiaries, which require operational

7  attention, physical improvement or capital restructuring.  The Debtor, through its subsidiaries,

8  holds a wide range of property types, including industrial property, commercial office buildings,

9  single family residences, and others throughout fifteen states.  The properties are held either by

10  the Debtor or through an entity in which it has a controlling interest or is the beneficiary of a

11  variable interest entity.  As of December 31, 2013, through its subsidiaries, the Debtor owned

12  approximately thirty properties, twenty additional properties through variable interest entities,

13  and managed another thirty properties owned by a third party.  The Debtor's primary asset

14  consists of its 94% limited partnership interest in ASROP.

15  **B.**      **The Debtor's Assets and Liabilities**

16       Readers are referred to the documents filed by the Debtor with the SEC, including

17  Debtor's most recently filed annual SEC report (for the period ending December 31, 2013)  filed

18  with the SEC on October 31, 2014, as may be amended and the Debtor's Form 8-Ks.  You may

19  obtain copies of any documents filed with the SEC by visiting the SEC website at

20  http://www.sec.gov and performing a search under the "Filings & Forms (EDGAR)" link.

21       Prior to the Petition Date, the Debtor reported its finances on a consolidated basis with its

22  variable interest entities and other subsidiaries. The Debtor's consolidated financials for

23  December 31, 2013 show total assets of nearly $400 million and total revenues of over $42

24  million.  Unfortunately, the Debtor had a net loss of over $14 million in 2013 and serious cash

25  flow issues with only $112,000 in cash at the end of 2013.   In 2013 alone, the Debtor lost three

26  properties to foreclosure.

27       In its Bankruptcy Schedules filed with the Court on June 3, 2015 (docket 146), the

28  Debtor has listed the following principal assets:

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Type of Property | Value |
|---|---|
| Stock in American Spectrum Management Group, Inc., a Delaware corporation (sole shareholder, 100% interest) | $.00 |
| Partnership and/or joint venture interests in:<br><br>• American Spectrum Realty Operating Partnership LP, a Delaware limited partnership (33-0986833) (General Partner) (94% limited partnership interest)<br><br>• Attic Self-Storage Manager, LLC, a Delaware limited liability company (sole member, 100% interest) (Attic Self Storage-Laredo, LP and Attic Self Storage-Blanco, LP)<br><br>• ASR Centennial Park, LLC, a Delaware limited liability company (27-5037523) (manager member of Centennial Park Kansas, LLC which owns interest in property) (sole member, 100% interest)<br><br>• ASR-Risk Management, LLC, a Delaware limited liability company (27-1152888) (sole member, 100% interest)<br><br>• Rooftop, LLC, a Delaware limited liability company (sole member, 100% interest)<br><br>• Solar Spectrum, LLC, a Delaware limited liability company (sole member, 100% interest)<br><br>• ASR-Newport, LLC, a Delaware limited liability company (26-4217746) (sole member, 100% interest)<br><br>• American Spectrum Self Storage Management, LLC, a Delaware limited liability company (46-2517596) (General Partner) (1% interest) (Texas properties) | $5,000,0000 to $10,000,0000 (estimated net value less property obligations) |
| Proceeds from the sale of 2620/2630 Fountainview property held in Court Registry until resolution of litigation[4] | $1,377,000 |
| Proof of Claim for $3,200,000 filed against ASR 2401 Fountainview, LP bankruptcy estate for unpaid advances[5] | $0 |
| Claims against affiliates | Unknown value |
| Intercompany obligations | Unknown value |

---

[4] The bankruptcy schedules list this asset as being worth $1,377,000 but the Debtor believes the actual value is in the range of $100,000 to $1,377,000.

[5] The Proof of Claim was not allowed because the Debtor waived the claim at a pre-petition mediation. As such, there will be no recovery to the Debtor on account of the Proof of Claim filed in the ASR 2401 Fountainview, LP bankruptcy case.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

32

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Type of Property | Value |
|---|---|
| Possible claims against the Debtor's Directors and Officers insurance policy | Unknown value |
| Litigation claims pending lawsuits in which the Debtor is a plaintiff or cross-claimant<br><br>• *American Spectrum Realty, Inc., v. Evergreen Realty*, pending in the California Superior Court, Orange County, Case No. 2011-00480677. This action was stayed following the Chapter 7 bankruptcy filing of Evergreen Realty on or about May 25, 2011.<br>• *American Spectrum Realty, Inc., et al., v. Dunham & Associates Holdings, Inc., et al*, pending in the 333rd Judicial District Court of Harris County, Texas, Case No. 2014-24363. In this lawsuit, the Debtor alleges disparaging and tortious interference with Debtor's business relations by the defendants G. Anthony Eppolito, William H. McGrath and Paul E. Perkins, who are former officers and/or employees of the Debtor.<br>• *American Spectrum Realty, Inc., et al., v. William H. McGrath and Darren Kelley*, pending in the 55th Judicial District Court of Harris County, Texas, Case No. 2013-39530. In this lawsuit, the Debtor alleges claims for conversion, theft, misappropriation of trade secrets, tortious interference with prospective business relationships, business disparagement and a claim pursuant to Chapter 143 of the Texas Civil Practice Remedies Code. A counterclaim was filed, and the Debtor filed its answer. On October 14, 2013, William H. McGrath filed a bankruptcy. This lawsuit has been settled. | Unknown value |

**C.    Events Leading to the Bankruptcy Filing**

The involuntary petition which commenced this Case was necessitated by the Debtor's admitted failure to pay debts as they have come due, including substantial sums owed to Petitioning Creditors, the Debtor's overall insolvency, numerous pending lawsuits, judgments and foreclosure proceedings against the Debtor and its subsidiaries, serious concerns raised about the deteriorating financial condition of the Debtor, the gross mismanagement, including but not limited to issues of self-dealing, commingling of assets, and misappropriations by the Debtor's President and Chief Executive Officer, the Debtor's failure to meet SEC reporting requirements,

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

33

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

and the Debtor's failure to call a special meeting of the Series B shareholders to replace management despite the Debtor's duty and the Petitioners' demand to do so.

The following is a brief summary of the various issues that are of tremendous concern to the Petitioners and which warranted the filing of the Involuntary Bankruptcy Case:

1.      The Debtor had failed and refused to call a special meeting of the Series B shareholders to appoint preferred directors despite the Debtor's requirement to do so under the Articles Supplementary and Petitioners' demand.  Specifically, the Petitioners bargained for the ability to appoint new directors in the event the Debtor failed to make payments due and owing and otherwise defaulted under the terms of their agreement.  The Debtor defaulted under the Articles Supplementary by not making a dividend payment on December 1, 2014 or January 1, 2015 and not curing such defaults within thirty days.  On January 30, 2015, the Petitioners sent a written demand to the Debtor to call a special meeting so the Petitioners could appoint new directors as the Articles Supplementary provide.  Two weeks passed and the Debtor failed and refused to respond to the Petitioners' demand other than to advise that not only does the Debtor not have sufficient funds to pay sums due and owing, but it also could not meet its regular monthly operating expenses.  The Debtor's response raised very serious concerns about the operations and management of the Debtor.

2.      Petitioners had reason to believe the Debtor's President and Chief Executive Officer, William J. Carden, was misappropriating funds, improperly commingling assets, and engaging in improper self-dealing.  The Petitioners are investigating these allegations and if necessary, will commence litigation to seek damages for Mr. Carden's alleged breach of fiduciary duty.

3.      The Debtor had not filed any required SEC filings for 2014, leading the SEC to issue multiple notices of non-compliance.  The Debtor needed a substantial amount of cash in order to complete its required SEC filings but did not have the funds necessary to do so.  The most recent SEC filings for 2013 admit that the Debtor was woefully insolvent, showing a consolidated net loss in 2012 of $1.8 million and in 2013 of $15.2 million.   The Debtor's

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

34

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

auditors (who resigned in November 2014) raised serious concerns about the Debtor's ability to continue as a going concern due to liquidity issues.

4.     The financial condition and solvency of the Debtor had been rapidly declining over the last three years.

5.     The Debtor had been named in numerous lawsuits alleging fraud in many instances and claiming almost $4 million due by the Debtor to the plaintiffs therein.  The Debtor had already suffered judgments against it in three cases.  Litigating these matters was and would be expensive not to mention the strain on the Debtor's finances if it suffers additional judgments.

6.     The Debtor appeared to be improperly commingling monies among the Debtor's managed properties and was taking management fees in advance from all properties.

7.     The Debtor had failed to keep accurate accounting records and had employed three different accounting firms in four years.

For all of these reasons, the Petitioners believed that the best way to maximize everyone's recovery was to commence the Involuntary Bankruptcy Case so that new management could be put in place.

**D.     Management of the Debtor Before and After the Petition Date**

As of the Petition Date, the officers and directors of the Debtor and each stockholder who directly or indirectly owned, controlled or held five percent or more of the voting or equity of the corporation were the following:

| Name | Title, if any | Stock Ownership, if any |
|---|---|---|
| William J. Carden | Chairman of the Board | 33.3% of outstanding common stock |
| James L. Hurn | Vice President and General Counsel | |
| Patrick D. Barrett | Director | Less than 1% of outstanding common stock |
| D. Brownell Wheless | Director | Less than 1% of outstanding common stock |
| Estate of John N. Galardi | | 16.5% of outstanding common stock |
| Cynthia L. Galardi | | 5.4% of outstanding common stock |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Name | Title, if any | Stock Ownership, if any |
|------|---------------|-------------------------|
| Tom Gehring | Director as of 4/30/2015 | |
| Michael Cox | Director as of 4/30/2015 | |
| Robert Moore | Director as of 4/30/2015 | |
| Bart Ziegler | Director as of 4/30/2015 | |
| Parker Hinshaw | Director as of 4/30/2015 | |

During the one year period immediately prior to the commencement of the case, the following officers and directors' relationship with the Debtor were terminated:

| Name | Title | Date of Termination or Resignation |
|------|-------|-------------------------------------|
| Quentin Thompson | Chief Financial Officer | 2/23/2015 |
| Quicny Wocker | Vice President of Finance and IT | 5/16/2015 |
| James L. Hurn | Director | 4/1/2014 |
| Stacey Speier | Director | 4/20/2014 |

After the Petition Date, pursuant to the Order for Relief Stipulation, J. Michael Issa was appointed as the Debtor's Chief Restructuring Officer with full authority of a Chief Executive Officer.

During the Case, the Debtor's current management is being compensated for their services in the following amounts:

| Name | Title | Compensation Per Month |
|------|-------|------------------------|
| J. Michael Issa | Chief Restructuring Officer | $20,000 |

Linda Duer also acts as the Debtor's Interim Chief Financial Officer and is compensated at a rate of $100 per hour.

After confirmation of the Plan, the Liquidating Trustee will be responsible for ensuring that Distributions are made under the Plan, will ensure that the Debtor is in compliance with UST requirements, will investigate and prosecute Post-Confirmation Estate Claims, and will otherwise ensure that the provisions of the Plan are implemented timely and fully.  The Debtor, through the Liquidating Trustee, shall serve as the Disbursing Agent.  Mr. Issa shall receive his regular monthly compensation as set forth in the chart above and reimbursement of expenses as incurred.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

36

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

## E.      Significant Events During the Bankruptcy Case

While more detailed information related events during the bankruptcy case can be obtained by assessing the Court's CM/ECF filing system docket and reviewing the pleadings filed in the Case, the following is summary of certain key bankruptcy related proceedings and events that have occurred during the Debtor's Case.

### 1.      Bankruptcy Proceedings

### Case Commencement and Appointment of Interim Trustee[6]

The Petitioners commenced this Case by filing an involuntary Chapter 11 petition against the Debtor on February 13, 2015.  The Debtor was served with the Summons and Notice of Status Conference in an Involuntary Bankruptcy Case on February 19, 2015.  On March 11, 2015, the Debtor filed an Answer to the involuntary Chapter 11 petition.

On February 13, 2015, Petitioners filed an Emergency Motion for a Court Order Appointing an Interim Chapter 11 Trustee ("Trustee Motion") (dockets 2 through 7).  The Debtor filed an opposition to the Trustee Motion (dockets 16 and 18).  At a hearing held on the Trustee Motion on February 19, 2015, the Court *sua sponte* granted the Petitioners relief from the automatic stay for the express purpose of obtaining the relief requested in the Ex Parte Application (defined below) and continued the hearing on the Trustee Motion until April 9, 2015 to give the Petitioning Creditors sufficient time to file the writ petition and seek the relief requested in the Ex Parte Application, then hold any necessary shareholder and director meetings.

An order granting the Trustee Motion was entered on April 20, 2015 ("Trustee Order"). Pursuant to the Notice of Appointment of Chapter 11 Trustee filed by the UST on April 21, 2015, Dennis Connolly was appointed the Interim Trustee in the Case.

---

[6] On March 16, 2015, the Debtor filed a voluntary Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of Texas, commencing Case No. 15-31514 ("Texas Bankruptcy Case"). At a hearing held on March 19, 2015, the Court transferred the Texas Bankruptcy Case to this Court, commencing Case No. 8:15-bk-11397-SC ("Voluntary Case"). Pursuant to a stipulation between the Debtor and Petitioners, and a Court order thereon entered on May 1, 2015 (docket 57 in the Voluntary Case), the Voluntary Case was dismissed.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

37

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**Petition for Writ of Mandate in the San Diego Superior Court**

On December 30, 2013, the Debtor and the Dunham Funds entered into the Contribution Agreement which gave the Dunham Funds 8% Cumulative Preferred Stock, Series B, the terms of which were set forth in the "Articles Supplementary." The Articles Supplementary provide that where dividends are not paid and are in arrears by more than sixty days or where redemption payments are not made, the Series B shareholders (i.e., Dunham Funds) are entitled to vote for the election of a number of directors of the Debtor ("Preferred Directors"). On January 30, 2015, the Dunham Funds submitted a written request to the Board for a special meeting of the Series B shareholders to appoint the Preferred Directors as provided under the Articles Supplementary but the Board failed to call the meeting.

On February 23, 2015, Petitioners filed a Verified Petition for (1) Writ of Mandate to Compel American Spectrum Realty, Inc. to Hold a Special Meeting of its Series B Shareholders to Appoint the Preferred Directors and (2) Declaratory Relief against American Spectrum Realty, Inc., William J. Carden, David B. Wheless, Kenneth B. White, and Patrick D. Barrett ("Writ Petition") in the San Diego County Superior Court, commencing Case No. 37-2015-00006188-CU-WM-CTL.

On March 10, 2015, Petitioners filed an Ex Parte Application for Writ of Mandate or, in the Alternative, for an Order to Show Cause as to Why the Writ Should Not Issue ("Ex Parte Application"). Originally, the Ex Parte Application was scheduled for hearing on March 12, 2015 at 9:00 a.m. The Ex Parte Application was continued once upon request of Debtor's state court counsel and once by the state court to April 3, 2015.

At the continued hearing held on April 3, 2015, the state court granted relief requested by the Ex Parte Application. Petitioners submitted a proposed judgment on the Writ Petition and a proposed Writ of Mandate on April 6, 2015 which directs the respondents to notice and hold the Special Meeting within ten business days of entry of judgment. On April 14, 2015, the state court entered its Judgment Granting Peremptory Writ of Mandate and its Peremptory Writ of Mandate ("Writ of Mandate"). The Writ of Mandate required the Debtor to call a special meeting of the Series B shareholders to appoint the preferred directors within ten business days

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

38

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  of entry of the Writ of Mandate.  Unfortunately, Petitioners were unable to obtain a copy of the

2  entered Writ of Mandate until approximately May 6, 2015.

3         The Dunham Funds believe they have claims for rescission of the Contribution

4  Agreement and the Dunham Funds Settlement Agreement based upon fraud in the inducement

5  and failure of consideration pursuant to California Civil Code Section 1689.  In particular, the

6  Dunham Funds claim that the Debtor's CEO made material false representations regarding the

7  Debtor's ability to perform under the Contribution Agreement and the Dunham Funds Settlement

8  Agreement and that material facts regarding the condition of the Debtor and its ability to perform

9  were not disclosed and further, that the Dunham Funds did not receive the approximate

10  $22,124,140.55 to be paid in connection with redeeming the remaining stock under the Dunham

11  Funds Settlement Agreement.  As such, the Dunham Funds essentially exchanged real property

12  for worthless paper.  Since the parties are unable to be restored to their status quo, the Dunham

13  Funds argue they are entitled to a claim for damages against the Debtor in the amount of

14  $22,124,140.55.

15         The Dunham Funds and the Debtor have proposed to resolve their disputes with respect

16  to the Dunham General Unsecured Claim, the Subordination Adversary Action, the Transfer, and

17  any other avoidance actions which could be brought against the Dunham Funds as described in

18  detail at Section IV.D.5. below.  The Dunham Funds Settlement is subject to Court approval

19  through confirmation of the Plan.  The Debtor and the Committee believe that resolution with the

20  Dunham Funds is in the best interest of the Estate.

21        **Petitioners' Discovery Motion**

22         On April 21, 2015, Petitioners filed with the Court that certain Motion: (1) To Compel

23  William J. Carden's Deposition Attendance and Production of Documents, or in the alternative

24  Issuance of a Protective Order Setting Dates and Times of Deposition and Production of

25  Documents; and (2) For Order to Show Cause Why William J. Carden Should Not Be Held in

26  Contempt ("Discovery Motion") (docket 86).  The Discovery Motion was withdrawn on May 27,

27  2015.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**<u>Entry of the Order for Relief and Termination of the Interim Trustee</u>**

The Petitioners and Debtor entered into the Order for Relief Stipulation to resolve certain pending disputes including the (i) involuntary Chapter 11 petition, (ii) the Discovery Motion and (iii) the appointment of the Interim Trustee.  On April 29, 2015 the Petitioners filed their Motion for Order for Relief (docket 102), seeking a Court order approving the Order for Relief Stipulation.  The Motion for Order for Relief was granted pursuant to the Order for Relief entered by the Court on May 1, 2015 (docket 112).  Pursuant to the Order for Relief and Order for Relief Stipulation, (i) the Order for Relief under Chapter 11 in the Involuntary Bankruptcy Case was entered on May 1, 2015, (ii) the Interim Trustee's appointment in the Involuntary Bankruptcy Case was terminated, (iii) the operational control of the Estate was transferred to J. Michael Issa as the Debtor's Chief Restructuring Officer, and (iv) a Special Meeting of the Series B Shareholders took place at which time five additional directors were appointed to the Debtor's Board of Directors, with William J. Carden being allowed as one of the Directors.

**<u>Filing of Schedules</u>**

On June 3, 2015, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs.

**<u>Employment of Professionals</u>**

The Professionals in this Case include the following:

- Dennis Connolly, the former Interim Trustee.
- Alston & Bird LLP, counsel for the former Interim Trustee.
- Navigant, financial advisor for the former Interim Trustee.
- Winthrop Couchot PC, general insolvency counsel for the Debtor.
- J. Michael Issa, Chief Restructuring Officer for the Debtor.
- Polsinelli PC, Debtor's special counsel for the Alliant Action (defined below).
- Levene, Neale, Bender, Yoo & Brill L.L.P, attorneys for the Committee.

On October 6, 2015 the Debtor filed its *Amended Motion for Entry of an Order Approving the Engagement Agreement Between the Debtor and GlassRatner Advisory & Capital Group LLC to Assist the Chief Restructuring Officer* (docket 252) ("Amended Engagement

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

40

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  Agreement Motion").    On December 14, 2015, the Court entered an order on the Amended

2  Engagement Agreement Motion (docket 301) whereby the Court approved the employment of

3  Mr. Issa as CRO effective as of May 1, 2015 but denied the Amended Engagement Agreement

4  Motion with respect to the request to employ GlassRatner Advisory and Capital Group, LLC to

5  assist the CRO but without prejudice to GlassRatner seeking employment at a later date.

6       The Debtor expects to file a motion to employ Lynn Pinker Cox Hurst as its special

7  counsel in the Debtor D&O Action.

8       **Bar Date To File Proofs of Claim**

9       On June 30, 2015, the Debtor filed its *Motion for Order Fixing Bar Date for Filing Proof*

10  *of Claim* (docket 192) ("Bar Date Motion"), requesting that the Court set a general claims bar

11  date in the Case which is sixty days after service of the Debtor's notice of the Bar Date.    The

12  Bar Date Motion was granted pursuant to the Court order entered on July 23, 2015 (docket 207).

13  The Bar Date for filing Proofs of Claim in this Case was October 7, 2015.

14       **Meeting of Creditors**

15       The initial meeting of creditors pursuant to Bankruptcy Code section 341(a) took place

16  on  June 5, 2015.

17       **Borrowing Motions**

18       On June 12, 2015, the Debtor filed its *Motion for Order Approving Secured Financing*

19  *Pursuant to Section 364(c)(1) and (2)* (docket 160) ("First Borrowing Motion"), seeking

20  approval for the Debtor, along with its affiliates, ASDP and ASRM, to collectively borrow

21  $500,000 from Gleicher with repayment of the loan having a priority over other Administrative

22  Claims of the Estate, secured by a lien on property of the Estate that is not otherwise subject to a

23  lien.  In light of the Debtor's additional cash needs during the budgeted four month period, the

24  First Borrowing Motion also requested approval of further advances from the Gleicher of up to

25  $350,000.  The Debtor asserted that the proposed financing was necessary as the Debtor lacked

26  sufficient working capital to pay critical expenses, including insurance, UST Fees and other

27  necessary administrative expenses. In addition, the Debtor's subsidiaries, including ASDP and

28  ASRM, which provide the Debtor with its sole source of revenue, were also in critical need of

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

41

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    operating cash to fund their business operations including payroll, rent, and insurance. Without

2    the immediate ability to pay these costs and expenses, (i) the value of the Debtor's primary assets

3    (interests its subsidiaries) would be impaired significantly, (ii) the Debtor's insurance would be

4    canceled and/or non-renewed, (iii) the Debtor would be unable to pay UST fees, and (iv) the

5    foregoing would likely have resulted in the dismissal of the Debtor's case or conversion to a

6    Chapter 7.  Pursuant to Court order entered on June 18, 2015 (docket 179), the First Borrowing

7    Motion was denied.

8         In order to address the Court's concerns raised at the hearing on the First Borrowing

9    Motion, the Debtor, ASDP, ASRM and their lender, Gleicher, materially revised the proposed

10   loan terms and on June 19, 2015, the Debtor filed its *Emergency Motion for Order Approving*

11   *Unsecured Superpriority Loan Pursuant to 11 U.S.C. §364(c)* (docket 180) ("Second Borrowing

12   Motion").  The material revisions made to the loan terms included the following:  (i) the loan

13   would no longer be secured by assets of the Debtor or ASRM.  Rather, the loan would be secured

14   only by junior-priority deeds of trust encumbering two real properties owned by ASDP; (i) the

15   proposed loan would be unsecured as to the Debtor but would be made on a superpriority basis

16   pursuant to 11 U.S.C. §364(c)(1); (iii) the maturity date for the loan would be extended from

17   December 31, 2015 to March 31, 2016; (iv) the Debtor would be entitled to written notice of any

18   default and would have five business days to cure any such default; (v) in the event of any

19   default by the Debtor, Gleicher would be required to obtain a further order of the Court prior to

20   exercising its right and remedies under the loan; and (vi) there was no longer a proposed Security

21   Agreement associated with the loan, and therefore the warranties and representations contained

22   in the Security Agreement had been removed.  Pursuant to Court order entered on July 1, 2015

23   (docket 194) the Second Borrowing Motion was approved.

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

42

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**Declaratory Relief Action**

On July 21, 2015, the Debtor and three of its subsidiaries[7] commenced the Declaratory Relief Action by filing a Complaint for Declaratory and Injunctive Relief, which was amended on July 22, 2015,[8] against the following defendants: River Oaks Self Storage TIC 1, LP; River Oaks Self Storage TIC 2, LP; River Oaks Self Storage TIC 3, LP; River Oaks Self Storage TIC 4, LP; Attic Self Storage-Laredo, LP; Attic Space Blanco Self Storage Acquisitions LLC; San Antonio Grissom Road Self Storage TIC 1, LP; San Antonio Grissom Road Self Storage TIC 2, LP; San Antonio Grissom Road Self Storage TIC 3, LP; Houston South Mason Self Storage TIC 1, LP;  Houston South Mason Self Storage TIC 2, LP; Houston South Mason Self Storage TIC 3; LP, Houston South Mason Self Storage TIC 4, LP; Houston South Mason Self Storage TIC 5, LP;  Houston South Mason Self Storage TIC 6, LP; Evergreen Realty Property Management LLC; Ft. Worth Northwest Self Storage LP, LS Storage Investments, LP;   Folly Road Investments LLC; San Antonio Self-Storage III, LLC; Riverside Center Commerce Park II, LP; Evergreen Nashville Storage LLC; Drennan Equity Pineville LLC; 2525 E Interstate 10, LP; Inwood Storage LLC; Kleinwood Storage LLC; SC Investment Holdings LLC; AQQ Florida LLC; Sabo Road Acquisitions, LP; Strongsville TIC 1, LLC; Strongsville TIC 2, LLC; Strongsville TIC 3, LLC; Strongsville TIC 4, LLC;  Strongsville TIC 5, LLC; Strongsville TIC 6, LLC;   Strongsville TIC 7, LLC; Strongsville TIC 8, LLC; Strongsville TIC 9, LLC; Strongsville TIC 10, LLC; Strongsville TIC 11, LLC; Strongsville TIC 12, LLC; Strongsville TIC 13, LLC; Strongsville TIC 14, LLC; Strongsville TIC 15, LLC; Strongsville TIC 16, LLC; Strongsville TIC 17, LLC; Strongsville TIC 18, LLC; Strongsville TIC 19, LLC; Strongsville TIC 20, LLC; Strongsville TIC 21, LLC; Strongsville TIC 22, LLC; Strongsville TIC 23, LLC; and Denair Manor Apartments, LP (Adversary Proceeding Case No. 8:15-ap-01308-SC). Briefly, prior to the Petition Date, the Debtor had entered into various management agreements

---

[7]     The other Plaintiffs in the Declaratory Relief Action are (i) American Spectrum Realty Management, LLC; (ii) American Spectrum Self-Storage Management, LLC; and (iii) American Spectrum Management Group, Inc.

[8]     The First Amended Complaint for Declaratory and Injunctive Relief filed on July 22, 2015 removed eight of the original Defendants.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

43

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  with each of the Defendants.    After the Petition Date, four of the Defendants attempted to

2  terminate the management agreements.    The Debtor has filed the Declaratory Relief Action to

3  seek among other things, a determination that the Plaintiffs are entitled to an injunction barring

4  the Defendants in the Declaratory Relief Action and their agents and successors from taking any

5  action to terminate or modify the respective management agreement with the Debtor.    The

6  plaintiffs in the Declaratory Relief Action have either settled, dismissed, or taken the default as

7  to all of the Defendants.

8  ## **Gus Anthony Eppolito, Jr. Stay Motion**

9  On September 15, 2015, Gus Anthony Eppolito, Jr., filed a Motion for Relief From Stay

10  (Action in Non-Bankruptcy Forum) (docket 229) ("Eppolito Stay Motion") seeking relief from

11  stay to pursue his alleged claims for wrongful termination of employment for refusing to commit

12  an illegal act (securities fraud), pending the 234th Civil District Court of Harris County, Texas,

13  Case No. 2014-11428.    Mr. Eppolito is the Debtor's former Chief Financial Officer.    Mr.

14  Eppolito seeks recovery only from applicable insurance and waives any deficiency or other claim

15  against the Debtor or property of the Debtor's Estate.    The Eppolito Stay Motion was granted

16  pursuant to Court order entered on October 22, 2015 (docket 267).

17  ## **Motion to Enforce the Stay**

18  On September 21, 2015, the Debtor, ASROP, ASRM and ASR 2620-2630 Fountainview

19  GP, LLC jointly filed a *Motion (1) To Enforce The Automatic Stay; (2) For Order Requiring*

20  *Accounting Of Funds Held In Segregated Account; And (3) For Production Of Documents*

21  *Pursuant To F.R.B.P. 2004* (docket 233) ("Enforce Stay Motion") seeking following relief:

22  1.    Determining that an action pending in the District Court of Harris County, Texas

23  ("Texas State Court"), filed by ASR 2620-2630 Fountainview, LP, Fountain View Park Plaza,

24  LLC and ASRP Investments, LLC (collectively, Plaintiffs") against the Debtor and the other

25  Movants, entitled *ASR 2620 Fountainview LP, et.al. v. American Spectrum Realty, Inc., et.al.*,

26  Case No. 2013-25806 ("Texas Action"), is subject to the automatic stay, and that all post-petition

27  proceedings against the Debtor in the Texas Action are void ab initio;

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

44

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

2.      Ordering that the Debtor be provided with an accounting of all funds disbursed from, and currently held in, a certain segregated account established pursuant to an order of the Texas State Court ("Segregated Account") and that no further disbursements be made from the Segregated Account pending further order of the Bankruptcy Court;

3.      Ordering the production to the Debtor of all bank statements, records and documents concerning or related to the Segregated Account, pursuant to F.R.B.P. 2004.

An opposition to the Enforce Stay Motion was filed by the Plaintiffs in the Texas Action asserting, among other things, that (i) the Plaintiffs had not received notice of the Debtor's bankruptcy filing at the time Plaintiffs' actions in the Texas Action were taken, (ii) the Texas Action had already been abated as result of the Debtor's bankruptcy filing thereby rendering the Enforce Stay Motion moot, and (iii) that the hearing on the Enforce Stay Motion should be continued to be heard concurrent with the Opposition Parties Motion for Relief From Stay.

The Enforce Stay Motion was granted in part as to the motion for relief from stay but denied as to the request for an accounting of funds pursuant to Court order entered on November 10, 2015  (docket 287).

**Plan Exclusivity Motion**

On August 28, 2015 the Debtor filed its *Motion for Order Extending Exclusive Periods to (1) File Chapter 11 Plan and (2) Solicit Acceptances Thereto* ("Exclusivity Motion") (docket 224).  The Exclusivity Motion was granted pursuant to Court order entered on September 25, 2015 (docket 239) which provided that the (i) time within which the Debtor must file its chapter 11 plan pursuant to 11 U.S.C. § 1121(b) and (c)(2) was extended to and including December 9, 2015, and (ii) the time within which the Debtor has to solicit acceptances to a plan pursuant to 11 U.S.C. § 1121(c)(3) was extended to and including February 8, 2016.

Pursuant to an order entered on December 9, 2015 (docket 297), the Court extended the deadline for the Debtor to file a plan up to and including January 11, 2016.

**Compromise Motion re Commerce Distribution Center**

On December 23, 2015, the Debtor filed its *Motion for Order Approving Compromise of Controversy Re Commerce Distribution Center ("CDC Compromise Motion")* (docket 305)

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

45

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  seeking Court approval of a certain *Stipulation to Terminate Debtor's and Debtor's Affiliates*

2  *Management Rights in and to Commerce Distribution Center* ("CDC Stipulation").  Under the

3  CDC Stipulation, (i) certain affiliates of the Debtor are being paid fair and valuable consideration

4  for certain management rights that they are agreeing to terminate pursuant to the Commerce

5  Stipulation, and (ii) the Debtor and certain affiliates are receiving releases of any claims that

6  could be asserted against them by Commerce Distribution Center in accordance with the terms

7  and conditions of the CDC Stipulation, to the benefit of the Debtor.

8      An objection to the CDC Compromise Motion was filed by U.S. Bank, as Trustee, in

9  Trust for the Comm 2013-CCRE9 Mortgage Commercial Pass-Through Certificates, successor

10  in interest to UBS Real Estate Securities, Inc., by and through Midland Loan Services, a Division

11  of PNC Bank, National Association, solely in its capacity as Special Servicer ("U.S. Bank"),

12  asserting among other things, that the CDC Stipulation would trigger events of default under

13  loan documents of which it was the lender and would entitle U.S. Bank to pursue and implement

14  all the remedies resulting therefrom in accordance with the applicable loan documents.

15      The CDC Compromise Motion was approved pursuant to Court order entered on

16  February 24. 2016 with certain modifications as set forth in the approval order (docket 392).

17      **Compromise Motion Re Sabatassos and Galardi Claims**

18      On December 24, 2015, the Debtor filed its *Motion for Order Approving Compromise of*

19  *Controversy Re Sabatassos and Galardi Claims* ("Sabatassos/Galardi Compromise Motion")

20  (docket 308), seeking Court approval of a certain *Settlement Agreement* by and among the

21  Debtor and ASROP on one hand, and Kurt Sabatasso and Donna Sabatasso ("Sabatassos"),

22  Teresa Hinkel ("Hinkel") as executor of the John N. Galardi Estate ("Galardi Estate"), Hinkel as

23  trustee of the John N. Galardi Trust established September 30, 2009, as amended, and the

24  Galardi Group, Inc. (collectively, "Galardi Parties"), on the other hand.   The Settlement

25  Agreement was necessary as (i) the primary asset of the Debtor's Estate is its approximately 94%

26  partnership interest in ASROP, which owns equity interests in a number of special purpose

27  entities ("SPEs"), which in turn own real properties.  At the direction of the Debtor, ASROP was

28  attempting to cause SPEs to sell real properties in order to fund the Plan.  However, in order for

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

46

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

the Debtor to received distributions from ASROP, claims against ASROP needed to be resolved.[9]   The Settlement Agreement, provided for an extinguishment and release of approximately $2,705,834 in claims disputed by the Debtor and for the right to satisfy the Galardi Parties' undisputed claims at a 75% discount.  By the Settlement Agreement, the Debtor resolved $2,441,339 in claims for a total settlement payment in the amount of $610,334.75. The Settlement Agreement produced, therefore, a substantial reduction in claims against the Estate. Furthermore, by satisfying the claims, the Debtor as able to forego the time consuming and expensive litigation necessary to resolve such claim.   The Sabatassos/Galardi Compromise Motion was approved by Court order entered on January 21, 2016 (docket 356).

### Alliant Insurance Service, Inc. Action

On January 20, 2016, the Debtor filed its *Adversary Complaint for Negligence, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Professional Negligence and Unjust Enrichment* (docket 348), thereby commencing the adversary proceeding styled *American Spectrum Realty, Inc., v. Alliant Insurance Services, Inc.*,  Adversary Case No. 8:16-ap-01020-SC ("Alliant Action").  The facts surrounding the Debtor's claims in the Alliant Action include that (i) on or before September 2012, the Debtor obtain director and officer ("D&O") insurance coverage through Alliant Insurance Services, Inc. ("Alliant"),  (ii) prior to obtaining the D&O policy, Alliant was provided with an updated list of the Debtor's subsidiary entities that required D&O coverage, including ASROP, ASR 2620-2630 Fountainview, LP ("Fountainview Partnership") and ASR 2620-2630 Fountainview GP, LLC ("Fountainview General Partner"), (iii) despite being advised of the Debtor's subsidiary entities, including ASROP, Fountainview Partnership and Fountainview General Partner, Alliant failed to obtain the requested D&O insurance coverage, resulting in the Debtor and its subsidiaries being denied insurance coverage and being exposed to significant liability arising from the costs of defense related to pending litigation in Texas.

---

[9]     The Galardi Parties asserted against ASROP a claim of $1,702,11.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  Alliant has filed its answer in the Alliant Action.  A status conference hearing in the

2  Alliant Action is scheduled for April 7, 2016.

3  **Appointment of Committee**

4  Pursuant to an Appointment and Notice of Appointment of Committee of Creditors

5  Holding Unsecured Claims filed on January 21, 2016 (docket 355), the UST appointed the

6  Committee.

7  **Petrochem Development I, LLC and Dansk ASR Investments, LLC Compromise**

8  **Motion**

9  On February 2, 2016, the Debtor filed its *Motion for Order Approving Debtor's*

10  *Compromise of Controversy With Petrochem Development I, LLC and Dansk ASR Investments,*

11  *LLC* ("Dansk/Petrochem Compromise Motion") (docket 367), seeking approval of a certain

12  *Settlement Agreement* by and among the Debtor and affiliates of the Debtor, ASROP, AQQ

13  Florida, LLC ("AQQ Florida") and AQQ San Antonio Self-Storage, LLC ("AQQ San Antonio")

14  (collectively, "ASR Parties"), on one hand, and Petrochem Development I, LLC ("Petrochem"),

15  Dansk ASR Investments LLC ("Dansk") and Tampa/Ocala/Sabo, LLC ("Tampa/Ocala LLC")

16  (collectively, "Dansk/Petrochem Parties").  The Settlement Agreement resolves, to the benefit of

17  the Debtor and the Debtor's creditors, a number of transfers to third parties that the Debtor

18  asserts were fraudulent. On December 31, 2014 ("Transfer Date"), AQQ Florida transferred two

19  real properties to Tampa/Ocala LLC: that real property commonly known as Tampa Self-Storage

20  located at 1008 Skipper Road, Tampa, Florida ("Tampa Property") and that real property

21  commonly known as Ocala Self-Storage located at 2853 S. Pine Ave., Ocala, Florida ("Ocala

22  Property"). Also on the Transfer Date, another affiliate of the Debtor, American Spectrum

23  Investments, LLC, a Delaware limited liability company ("ASI"), transferred to Tampa/Ocala

24  LLC the 55% limited partnership interest ("SRA Partnership Interest") held by ASI in Sabo Road

25  Acquisitions, LP, which owns that real property commonly known as Sabo (A-Plus) Self Storage

26  located at 10801 Sabo Road, Houston, Texas ("Sabo Road Property"). The Debtor asserts that

27  these transfers were fraudulent transfers and, accordingly, are avoidable. Pursuant to the

28  Settlement Agreement, in lieu of expending significant time and resources litigating the validity

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

48

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

of these transfers, the Debtor has agreed not to oppose the transfers of the Tampa Property and the Ocala Property to Tampa/Ocala LLC in exchange for Tampa/Ocala LLC's agreement to avoid the transfer of the SRA Partnership Interest (the SRA Partnership Interest had an estimated value of not less than $1.4 million).  The Settlement Agreement provides for the extinguishment and release of approximately $3,149,920 in claims asserted by Dansk and Petrochem. The Settlement Agreement will produce, therefore, a substantial reduction in claims against the estate, without the need to expend significant time and resources litigating the validity of such claims.  The Dansk/Petrochem Compromise Motion was approved by the Court.

### William J. Carden and Store It Reit, Inc. Compromise Motion

On February 18, 2016, the Debtor filed its *Motion for Order Approving Debtor's Compromise of Controversy With William J. Carden and Store It Reit, Inc.* ("Carden Compromise Motion") (docket 382), seeking Court approval of a certain *Settlement Agreement* by and among the Debtor and affiliates of the Debtor, ASROP, AQQ Houston South Mason Self-Storage, LLC and American Spectrum Realty Advisors LLC (collectively, "ASR Parties"), on one hand, and William J. Carden ("Carden") and Store It REIT, Inc. (collectively, "Carden Parties"), on the other hand.  The Settlement Agreement provides for the resolution of a number of disputes between the ASR Parties and the Carden Parties. Pursuant to the Settlement Agreement, the ASR Parties or their affiliates will (a) avoid the Carden lien encumbering the South Mason Property Interest (capitalized terms in this paragraph have the meaning set forth in the Carden Compromise Motion, docket 382), resulting in the preservation of value in such asset in an estimated amount of approximately $350,000; (b) obtain payment and release of the Bammelbelt Judgment against ASROP and the Debtor and the withdrawal of the Bammelbelt Amended Claim in the amount of approximately $331,349; (c) obtain the benefit of a payment of $90,000 toward the payment of the Texas Tax Claims; and (d) obtain a potentially very substantial amount of Sales Commissions and proceeds from the sale of the Shared Proceeds Properties. The Debtor obtains such benefits pursuant to the Settlement Agreement without the need to expend the significant amount of funds of the Debtor's estate that would be incurred in

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

49

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

litigation of the Debtor's disputes with the Carden Parties.  The Carden Compromise Motion was approved by the Court.

### Sale Motion – Encinitas Property

On March 10, 2016, the Debtor filed its *Motion for Order: (1) Authorizing the Sale of Real Property Free and Clear of Liens and Interests Pursuant to 11 U.S.C. Section 363(f); (2) Authorizing Payment of Brokerage Fee and Secured Claims From the Sale Proceeds* (Encinitas Property Sale Motion") (docket 438), seeking approval to cause Encinitas Property[10] owned by American Spectrum Dunham Properties, LLC to be sold to Torrey Pines Development Group LLC for $895,000.  As the secured debt encumbering the Encinitas Property was estimated at approximately $562,500, even taking into account the costs of the sale including brokerage commissions, the Debtor believed that there was equity in the Encinitas Property.  Furthermore, the sale would result in the substantial reduction of an administrative claim against the Estate, rather than have the Encinitas Property lost through a foreclosure sale.  The Encinitas Property Sale Motion was approved by Court order entered on April 1, 2016 (docket 597).

### Stipulation For Relief From Stay to File Action In Non-Bankruptcy Forum

On March 14, 2016, Petitioners filed its *Emergency Motion for an Order Approving Stipulation for Relief From the Automatic Stay Under 11 U.S.C. §362 to Initiate Action in Non-Bankruptcy Forum* ("Petitioners' Stay Motion") (docket 449).  The Petitioners and as well as Asset Managers, Inc. ("AMI"), Dunham & Associates Investment Counsel, Inc. ("DAIC"), Dunham & Associates Holdings, Inc. ("DAH") (Dunham Funds, AMI, DAIC, and DAH are collectively referred to herein as "Dunham") believe they have claims[11] against the Debtor's officers and directors which may be covered by the Debtor's insurance, including any directors'

---

[10]   Encinitas Property means the Real property located at 461 Ocean View Avenue, Encinitas, California 92024 consisting of approximately 2.99 acres of vacant land.

[11]   Claims for, *inter alia*, fraud based upon misrepresentation of material facts, fraud by concealment of material facts, fraud by promise without intent to perform, fraud by negligent misrepresentation, Unfair Competition under California Business & Professions Code Section 17200 et seq., Securities Fraud under California Corporations Code Section 25401, alter ego liability, rescission in connection with the Original Transaction and the Second Transaction based upon fraud in the inducement and failure of consideration pursuant to California Civil Code Section 1689 (collectively, the "Claims").

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

50

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

and officers' liability policies.  The Debtor is a party to the contracts giving rise to these claims and Debtor seeks to rescind these contracts.  Thus, Dunham seeks relief from the automatic stay for the sole purpose to file any complaint or other pleadings to initiate an action or arbitration to assert any claims against the Debtor, including any of its subsidiaries or affiliates.

The Debtor and the Committee have stipulated to such modification of the automatic stay pursuant to a *Stipulation for Relief From Automatic Stay to Initiate Action in Non-Bankruptcy Forum* ("Stay Stipulation") annexed to the Petitioners' Stay Motion.  Approval of the Stay Stipulation is in the best interest of the Estate because pursuant to the proposed Plan, any recovery (whether by Dunham or by the Estate) on the claims to be pursued against the Debtor's officers and directors must be contributed to the Estate and distributed pursuant to the terms of the proposed Plan.  As such, the claims that are the subject of the Stay Stipulation must be preserved to benefit the creditors of the Estate.

### Committee Standing Motion

On March 28, 2016, the Committee filed its *Motion for Authority to File an Adversary Proceeding Against D&A Daily Mortgage Fund III, L.P., D&A Semi-Annual Mortgage Fund III, L.P., and D&A Intermediate-Term Mortgage Fund III, L.P., or, Alternatively, Motion for Continuance of Deadline to Object to Claims* ("Standing Motion") (docket 537), seeking authority to file an adversary proceeding to seeking to obtain a judgment pursuant to Bankruptcy Code Section 510(b) that subordinates over $22 million of claims asserted against the Estate by the Dunham Funds[12] to the claims of general unsecured creditors (510(b) Adversary Action").  The Committee Standing Motion was resolved pursuant to that certain stipulation between the Debtor and the Committee (docket 575) and Court order entered on March 30, 2016 (docket 583) whereby the Debtor granted the Committee to file the 510(b) Adversary Action.

On April 8, 2016, the Committee filed an action in the Bankruptcy Court against the Dunham Funds for subordination, declaratory relief and objection to the Dunham General Unsecured Claim, commencing Adversary Case No. 8:16-ap-01101-SC ("Subordination

---

[12]   Dunham Funds means collectively D&A Daily Mortgage Fund III, L.P., D&A Semi-Annual Mortgage Fund III, L.P., and D&A Intermediate-Term Mortgage Fund III, L.P.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

51

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    Adversary Action"). If the Dunham Funds Settlement set forth herein is approved, the

2    Subordination Adversary Action will be dismissed with prejudice.

3    **Objections to Claims**

4    Pursuant to Court order entered on January 8, 2016 (docket 336), the deadline to file

5    objections to claims in this Case is April 7, 2016.  The Debtor and the Petitioners have, on an

6    ongoing basis, reviewed claims filed in the case and where appropriate filed multiple objections

7    to disputed claims on grounds including that the debt is not an obligation of the Debtor, the

8    claims are duplicative, the claims are contingent and unliquidated and other valid grounds.  In

9    order to reduce administrative costs, where possible, the Debtor has stipulated with some

10   Creditors to extend the deadline to file objections to their claims in order to allow the parties

11   time to explore possible settlement.

12   **2.    Other Legal Proceedings**

13   As of the Petition Date, the Debtor was involved the following nonbankruptcy legal

14   proceedings.

15   •    *American Spectrum Realty, Inc., v. Evergreen Realty*, pending in the

16   California Superior Court, Orange County, Case No. 2011-00480677.  This action was

17   stayed following the Chapter 7 bankruptcy filing of Evergreen Realty on or about August

18   21, 2014.

19   •    *American Spectrum Realty, Inc., et al., v. Dunham & Associates Holdings,*

20   *Inc., et al*, pending in the 333rd Judicial District Court of Harris County, Texas, Case No.

21   2014-24363.  A Suggestion of Bankruptcy as to the Debtor was filed. The Dunham Funds

22   have been dismissed and the remaining claims against the individuals have been resolved

23   through a mutual dismissal.  A motion to compromise will be filed shortly for court

24   approval of the settlement.

25   •    *American Spectrum Realty, Inc., et al., v. William H. McGrath and Darren*

26   *Kelley*, pending in the 55th Judicial District Court of Harris County, Texas, Case No.

27   2013-39530.  In this lawsuit, the Debtor alleges claims for conversion, theft,

28   misappropriation of trade secrets, tortious interference with prospective business

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

52

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

relationships, business disparagement and a claim pursuant to Chapter 143 of the Texas Civil Practice Remedies Code.  A counterclaim was filed, and the Debtor filed its answer. On October 14, 2013, William H. McGrath filed a bankruptcy.  This lawsuit has been settled and a motion to compromise will be filed shortly.

- *ASR 2020-2630 Fountainview LP;  Fountainview Park Plaza, LLC;  ASRP Investments, LLC v. ASR 2620-26320 Fountainview GP, LLC; American Spectrum Realty Operating Partnership LP; American Spectrum Realty, Inc.; American Spectrum Realty Management, LLC; James Leonard Hurn; Estate of John N. Galardi; Timothy R. Brown; Stacey F. Speier; Presley E. Werlein, III; Patrick D. Barrett; David Brownell Wheless; William Jake Carden*, pending in the 270th District Court of Harris County, Texas, Case No. 2013-25806.    This lawsuit involves claims for breach of contract and breach of fiduciary duties.

- *Bammelbelt, LP and Stava Partners, LLC v. American Spectrum Realty, Inc.; American Spectrum Realty Operating Partnership, LP; ASR 2620-2630 Fountainview, LP; and William Carden*, pending in the 125th Judicial District Court of Harris County, Texas, Case No. 2013-60712.  This lawsuit relates to a dispute with the seller of the property located at 2620-2630 Fountainview Drive, Houston, TX.   A Suggestion of Bankruptcy as to the Debtor was filed.  Plaintiffs' claims against ASROP and Carden were severed and a judgment entered. Carden has paid that judgment and plaintiffs executed a release of judgment as to him. There are still claims pending against ASROP and Carden by co-defendant ASR 2620-2630 Fountainview, L.P.

- *College Park Tic 5, LLC v. College Park Acquisition, LLC; American Spectrum Realty, Inc.,* pending in the California Superior Court, County of Orange, Civil Complex Division, Case No. 30-2012-00609632-CU-OR-CXC ("College Park Action").

- *Cynthia Gudde, Personal Representative and Administrator of the Estate of Cyrstal M. Gudde, Deceased v. American Spectrum Realty, Inc.; American Spectrum Realty Operating Partnership, LP; and American Spectrum Realty Management, LLC,* pending in the 127th Judicial District Court of Harris County, Texas, Case No. 2012-

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

53

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

49298-A.   In this lawsuit, a final judgment was entered on April 9, 2012 against Evergreen Realty Group, LLC dba Town Center Apartments (in Kansas) in the amount of $432,828.66 in damages and $41,309.50 in attorneys' fees.   A Writ of Garnishment against the Debtor, American Realty Operating Partnership, LP and American Spectrum Realty Management, LLC as to any monies otherwise payable to Evergreen Realty Group, LLC from the Debtor related entities.  This matter was non-suited with prejudice as to all American Spectrum related entities.

- *D&A Daily Mortgage Fund III, LP v. American Spectrum Realty, Inc., et al.*, pending in the California Superior Court, County of San Diego, Case No. 2015-00006188.  This lawsuit is a petition for writ of mandate requiring the Debtor to call a special meeting of the Debtor's Series B shareholders to appoint new directors. This lawsuit was resolved by a judgment in the petitioners' favor entered on April 14, 2015.

- *DTN Holdings, LLC v. American Spectrum Realty, Inc.,* pending in the 151st Judicial District Court of Harris County, Texas, Case No. 2012-07131.   This lawsuit asserts claims for breach of contract, breach of fiduciary duty, accounting and constructive trust.   The lawsuit was resolved by settlement prior to trial.   The parties submitted an Agreed Final Judgment, which was signed by the state court, that provides that the Debtor to pay $60,000 pursuant to specific terms.

- *GSMS 2004-GGI Phantom Road, LLC v. McDonnell Associates, LLC and American Spectrum Realty, Inc.,* pending in the Circuit Court of the County of St. Louis, State of Missouri, Division 5, Case No. 12DL-CC03562.   This lawsuit involves claims for breach of contract.  A Suggestion of Bankruptcy as to the Debtor was filed after judgment was entered on November 10, 2014. This matter is currently on appeal.

- *Houston SouthPro Restoration Services, Inc., v. American Spectrum Realty, Inc. ASR-Beltway Industrial, LP; American Spectrum Realty-Beltway Industrial, LLC; ASROP,* pending in the 127th Judicial District Court of Harris County, Texas, Case No. 2013-68919.  A Suggestion of Bankruptcy as to the Debtor was filed and the lawsuit is stayed.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

54

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

- *JVB Enterprises, Inc. v. American Spectrum Realty, Inc.; American Spectrum Realty Operating Partnership LP; American Spectrum Realty 11500 NW LP; American Spectrum Realty West Gray LLC; American Spectrum Realty Sam Houston I, Inc.; American Spectrum Realty Sam Houston, LP; ASR 5450 NW LP; ASR 2401 Fountainview LP; ASR 2401 Fountainview LLC; ASR 5850 San Filipe LP; American Spectrum Holdings (San Filipe) LLC; ASR 2855 Mangum LP; ASR 2855 Mangum LLC; Nooney Income Fund II, LLC; ASR Market Columbia LP; ASR-8 Centre LP; American Spectrum Reakty-8 Centre LLC; ASR 6420 Richmond Atrium LLC; Nooney Rider Trail LP; ASR NRT LLC; ASR 800 Sam Houston LP; ASR 800 Sam Houston LLC; ASR Washington LP; American Spectrum Holdings (Washington) LLC; 6340 Richmond Atrium LP; ASR Windrose Centre LP; and American Spectrum Realty-Windrose Center LLC*, pending in the 165th Judicial District Court of Harris County, Texas, Case No. 201174199.    On March 21, 2014 a Notice of Bankruptcy was filed as to several defendants including ASR-8 Centre, LP.  This matter is stayed.

- *Keeton Contract Services v. ASR-6420 Richmond Atrium and American Spectrum Realty, Inc.*, pending in the 281st Judicial District Court of Harris County, Texas, Case No. 2014-70471.  This lawsuit involves claims for breach of contract. A Suggestion of Bankruptcy as to ASRI was filed and this matter is currently stayed.

- *Kurt Sabatasso and Donna Sabatasso v. American Spectrum Realty, Inc. and John N. Galardi,* pending in the 80th Judicial District Court of Harris County, Texas, Case No. 2012-59293.  Judgment against the Debtor and the Co-Executors of the Galardi Estate for $1,000,0000 principal, $227,739.40 unpaid interest through April 23, 2014, additional interest of $260.27 per day from April 4, 2014 to date principal is paid in full, attorneys' fees of $225,000.  Awarded jointly and severally.  Charging Order entered on August 13, 2014.  For the second part of the cause, the parties are Galardi Estate as Cross-Plaintiff and American Spectrum Realty, Inc. as Cross-Defendant. Galardi filed cross-claims on January 24, 2014.  Settlement was reached on October 7, 2014.  The

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

55

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    Debtor agreed to judgment for the principal amount of $240,000, to be paid $25,000

2    upfront and $10,000 monthly thereafter (subject to attorneys' fees invoice).

3        •    *New West Realty, Inc. v. American Spectrum Realty, Inc., et al.,* pending in

4    the California Superior Court, County of Orange, Case No. 2011-00439047.  This lawsuit

5    involves claims for breach of contract and an amount owing by ASRM to New West

6    Realty, Inc.  ASRM's ultimate parent is the Debtor and as such, the Debtor is named in

7    the lawsuit.  The parties are negotiating a settlement of this action.

8        •    *NextEra Retail of Texas, LP v. American Spectrum Realty, Inc.,* pending in

9    the 164th Judicial District Court of Harris County, Texas, Case No. 2011-22531. This

10   lawsuit involves a vendor dispute which was settled by the Court in favor of NextEra in

11   the amount of $2.8 million.   A   receiver has been appointed following entry of the

12   judgment in favor of NextEra. This judgment has been paid in full and the receivership

13   dissolved on February 20, 2014.*Paul Cagle, Inc. (dba The Kings) v. American Spectrum*

14   *Realty, Inc., ASROP;  ASR-Beltway Industrial, LP;  American Spectrum Realty-Beltway*

15   *Industrial, LLC* pending in the 333rd Judicial District Court of Harris County, Texas,

16   Case No. 2014-09017.  This lawsuit involves claims for breach of contract. A Suggestion

17   of Bankruptcy has been filed for ASRI and this matter is stayed.

18       •    *PPC Irvine Center Investments, Inc. v. American Spectrum Realty*

19   *Management, LLC;  Seventy Seven, LLC;  American Spectrum Realty Operating*

20   *Partnership, LP; and American Spectrum Realty, Inc.,* pending in the 417th Judicial

21   District of Collin County, Texas, Case No. 417-01968-2014.  This lawsuit arises from a

22   judgment obtained against the defendants in the California Superior Court, County of

23   Orange Case No. 30-2012-00595567-CU-BC-CJC.  Petition for Foreign Judgment filed

24   May 22, 2014 as to the Debtor, American Spectrum Realty Management, LLC; Seventy

25   Seven, LLC and American Spectrum Realty Operating Partnership, LP in the amount of

26   $300,000.  On October 10, 2014, the plaintiff filed a Post-Judgment Motion for Turnover

27   and Appointment of Receiver.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

56

1   •   *Preferred Income Partners IV, LLC v. ASR 2401 Fountaiview, LP;*

2   *American Spectrum Realty Operating Partnership, LP; ASR 2401 Fountainview, LLC;*

3   *William J. Carden; American Spectrum Realty, Inc.; Patrick D. Barrett; David B.*

4   *Sheless; James L. Hurn; American Spectrum Beltway, LLC and AST Washington, LP,*

5   pending in the 44th Judicial District Court of Dallas County, Texas, Case No. DC-14-

6   02281. This lawsuit includes claims for breach of contract, breach of guaranty, common

7   law fraud, fraud by nondisclosure.  On September 30, 2014, ASR Fountainview, LP and

8   ASR Fountainview, LLC filed bankruptcy which imposed the automatic stay as to those

9   entities.  This matter was mediated; however, plaintiff refuses to comply with the terms

10   of the agreement.  It has a April 11, 2016 trial setting with a motion to enforce the

11   settlement agreement to be filed.

12   •   *Thomas Spano vs. American Spectrum Realty, Inc.; American Spectrum*

13   *Realty Operating Partnership, LP; American Spectrum Realty Management, LLC;*

14   *American Spectrum Management Group, Inc.; American Spectrum Asset Co.; Bill*

15   *Dhaklovitz; Evergreen Development LLC; Evergreen Realty Group LLC; Evergreen*

16   *Realty Advisors, Inc.; Evergreen Real Property Management, LLC; Luke vs. McCarthy,*

17   *Real Property Systems, Inc.; Michael Palmer, Dixon & 51st Acquisition, LLC,* pending

18   in the United States District Court for the District of New Jersey, Trenton Division, Case

19   No. 3:14-cv-05639-MAS-LHG. This lawsuit was dismissed on March 9, 2015.

20   •   *Tremaine Enterprises v. American Spectrum Realty, Inc.,* pending in the

21   United States District Court for the Southern District of Texas, Houston Division, Case

22   No. H-14-3574. This matter was administratively closed on April 22, 2015.

23   •   *GSMS 2004-GG2 Phantom Road, LLC vs. American Spectrum Realty, Inc.*

24   *and McDonnell Associates, LLC,* pending in the Missouri Court of Appeals, Eastern

25   District, Case No. ED102601.  This lawsuit is the result of a deficiency related to a

26   foreclosed property.  This is the appellate proceeding of the GSMS lawsuit mentioned

27   above.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

57

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

- *Paul Perkins v. American Spectrum Realty, Inc.,* pending in the Superior Court for Orange County, Cause No. 2013-00677989.

- *D&A Daily Mortgage Fund III, L.P., et. al. v. American Spectrum Realty, Inc., et. al.,* pending in the Superior Court for Orange County, Case No. 30-2016-00841191.   This lawsuit alleges, inter alia, declaratory relief for rescission, breach of fiduciary duty, securities fraud, and fraud, against the Debtor, certain of its affiliates and certain of its officers and directors. The case is stayed pursuant to the Stay Stipulation.

- *American Spectrum Realty, Inc., et. al. v. William J. Carden, et.al.,* pending in Harris County, Texas.  The Debtor commenced this litigation on or about April 4, 2016 against certain of its officers and directors on claims of negligence, breach of fiduciary duty, waste and unjust enrichment ("Debtor D&O Action").

The filing of the Debtor's Chapter 11 petition invoked an automatic stay pursuant to Section 362 of the Bankruptcy Code which effectively stays any litigation pending against the Debtor on the Petition Date, and any litigation that could have been filed against the Debtor prior to the Petition Date.  All Creditors have been stayed from enforcing any pre-petition Claims they may have against the Debtor.

In certain circumstances and only with Court approval, creditors can obtain relief from stay to proceed with their claims against the Debtor.  This could be done for example for the purposes of liquidating the claim amount against the Debtor.

**F.    Procedures Implemented to Resolve Financial Problems**

Prior to and after the Petition Date the Debtor has worked to reduce its expenses and increase profits.  The Debtor also re-constituted the Board and employed Mr. Issa as Chief Restructuring Officer in order to avoid further losses from the mismanagement of the Debtor by Mr. Carden.  Mr. Issa has been working diligently through all the assets and the various disputes referenced herein in order to reach settlements or resolutions with various parties to maximize the value of the Debtor's interests in the assets set forth herein.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

58

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**G.     Debtor's Current Financial Condition**

The Debtor's Bankruptcy Schedules (docket 146) disclose its assets and liabilities as of the Petition Date.  A copy of the Schedules and any amendments thereto is on file and may be reviewed at the Bankruptcy Court's Clerk's Office during normal business hours.   During the bankruptcy case, the Debtor's total current income and expenses has been detailed in monthly operating reports submitted to the Office of the United States Trustee and filed with the Court and may be reviewed at the Bankruptcy Court's Clerk's Office during normal business hours.

The Debtor anticipates that Plan payments to Creditors will be derived from business revenues as set forth in the projections attached to the Disclosure Statement as **Exhibit 2**.

**IV.     SUMMARY OF THE PLAN**

The following is a summary of the Plan and is qualified in its entirety by the full text of the Plan.  The terms of the Plan will be controlling on the Creditors and all other parties in interest in the event that the Plan is confirmed.  Therefore, all Creditors are strongly urged to read the Plan carefully, in its entirety, rather than relying on this summary.

**A.     Overview**

As required by the Bankruptcy Code, the Plan classifies Claims in various classes according to their right to priority.  The Plan states whether each class of Claims is impaired or unimpaired.  The Plan provides the treatment each class will receive.  With respect to each class, the Debtor and Petitioners have  not reviewed the proofs of claim, if any, filed by Creditors.  The Debtor and the Petitioners reserve the right to object to any of the filed Claims on any reasonable grounds.

**B.     Unclassified Claims**

Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following Claims in a class and the treatment of such claims is set forth below.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1        1.    **Administrative Expenses**

2        Administrative expenses are Claims for costs or expenses of administering the Debtor's

3    Chapter 11 case which are allowed under Code Section 507(a)(2).

4        Gap Claims are Claims arising in the ordinary course of business or financial affairs of

5    the Debtor after the commencement of the bankruptcy case but before the earlier of the

6    appointment of a trustee or the Order for Relief, shall be determined as of the date such Claim

7    arises, and shall be allowed under subsection (a), (b) or (c) of Code Section 502, the same as if

8    such Claim had arisen before the Petition Date and are entitled to priority in payment under Code

9    Section 507(a)(3).

10       The Code requires that all Administrative Claims and Gap Claims be paid on the

11   Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

12       Except to the extent that the holder of a particular Allowed Administrative Claim or Gap

13   Claim agrees to a different treatment thereof, each Claim will be paid in full, in Cash, on the later

14   of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such

15   Administrative Claim becomes a Final Order.  Any holder of an Administrative Claim or Gap

16   Claim is required to file a request for payment of its Administrative Claim or Gap Claim, except

17   that any governmental unit holding an Administrative Claim for post-petition taxes and/or

18   interest and penalties related to such taxes that are of the kind described in Bankruptcy Code

19   Sections 503(b)(1)(B) and 503(b)(1)(C), shall not be required to file an Administrative Claim as

20   a condition of its being an Allowed Administrative Claim.  **Requests for payment of**

21   **Administrative Claims or Gap Claims must be filed not later than thirty days after the**

22   **Effective Date**, and will be paid on or before the fifth Business Day after the order allowing such

23   Administrative Claim becomes a Final Order.  **Any failure by the holder of an Administrative**

24   **Claim or Gap Claim to file a request for payment of its Claim within thirty days after the**

25   **Effective Date will forever bar such holder of an Administrative Claim or Gap Claim from**

26   **asserting its Administrative Claim or Gap Claim against the Estate**.

27       The following chart lists all of Debtor's estimated Section 507(a)(2) Administrative

28   Claims and 507(a)(3) Gap Claims and their treatment under the Plan:

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Name | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|---|---|---|
| Winthrop Couchot Insolvency counsel for the Debtor<br><br>507(a)(2) Claim: $100,000.00<br><br>507(a)(3) Claim (Gap Claim): The Firm was paid $97,180.39 by a non-debtor affiliate of the Debtor for its Class 2 Priority Non-Tax Claim (Gap Claim), and so on the Effective Date, it is estimated that there will be no balance due on this 507(a)(3) Claim (Gap Claim.) | $1,500,000.00[13] | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Dennis Connolly Interim Trustee<br><br>503(b) (Administrative Claim):<br>Pursuant to Court order entered on July 23, 2015 (docket 208), was awarded fees of $67,388.00 and reimbursement of expenses of $1,274.90.  Claimant also filed Proof Claim #74 for $85,451.90 which the Debtor disputes. | $68,662.90 | As the holder of an Allowed Administrative Claim pursuant to a Court order entered on July 23, 2015, any unpaid amounts shall be paid in full, in cash on the Effective Date. |

[13]    This is just an estimate and absent resolution, the Dunham Funds plan to object to the amount of fees and costs incurred.  Winthrop Couchot contends that its Sections 503 and 507 claims are valid, and reserves the right to assert the full amount of its claims under Sections 503 and 507.The total amount payable to Winthrop Couchot will be determined at a later date subject to Bankruptcy Court approval in accordance with the procedures set forth below regarding allowance of Administrative Claims.

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Name | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|---|---|---|
| Alston & Bird LLP Counsel for the Interim Trustee<br><br>503(b) (Administrative Claim):<br>Pursuant to Court order entered on July 23, 2015 (docket 208), was awarded fees of $34,150.52 and reimbursement of expenses of $20.13. Claimant also filed Proof of Claim #73 for $77,702.73 which the Debtor disputes. | $34,170.65 | As the holder of an Allowed Administrative Claim pursuant to a Court order entered on July 23, 2015, any unpaid amounts shall be paid in full, in cash on the Effective Date. |
| Navigant Financial advisor for the former Interim Trustee<br><br>503(b) (Administrative Claim):<br>Pursuant to Court order entered on July 23, 2015 (docket 208), was awarded fees of $28,525.00 and reimbursement of expenses of $2,583.57. Claimant also filed Proof of Claim #75 for $62,617.14, which the Debtor disputes. | $31,108.57 | As the holder of an Allowed Administrative Claim pursuant to a Court order entered on July 23, 2015, any unpaid amounts shall be paid in full, in cash on the Effective Date. |
| J. Michael Issa, CRO | $140,000.00<br><br>Plus, Mr. Issa may be entitled to a bonus upon achievement of a positive result for this Estate, in an amount as may be awarded by the Debtor's Board of Directors and subject to the Court's review and final approval. | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| GlassRatner Advisory and Capital Group, LLC | $0.00<br><br>Mr. Issa attempted to employ GlassRatner but its employment was not approved without prejudice to seeking employment at a later date. If GlassRatner's employment is approved at a later date, it may have an administrative claim subject to Bankruptcy Court approval. | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Name | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|---|---|---|
| Mark Gleicher, Trustee of the Mark Gleicher Trust<br><br>Court order entered on July 1, 2015 (docket 194),approving Debtor's motion (docket 160) for approval of post-petition unsecured super priority loan. | $500,000 | This Administrative Claim has priority over all other Administrative Claims pursuant to 11 U.S.C. 364(c)(1), provided that it shall be subordinate to reasonable fees and costs of professionals employed by the Estate, including the Debtor's counsel and the CRO.<br>In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Dunham Funds<br><br>For fees incurred related to filing the involuntary petition, prosecution of same, claims objections, plan preparation and general administration in the Estate. | $350,000.00 | To be paid in full, in Cash, within 6 months of the Effective Date but only after all other Administrative Claims and the First General Unsecured Distribution has been paid. |
| Dunham Funds<br><br>For advances to be made toward the D&O Action. | $150,000.00 | To be paid from first funds recovered from any Post-Confirmation Estate Claims. |
| Levene, Neale, Bender, Yoo & Brill LLP<br><br>Counsel to the Committee | $180,000.00 | Any unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Cigna Health and Life Insurance Company<br>Claim #22 in the total amount of $136,265.52, asserting a Priority Non-Tax Claim of $95,353 under 507(a)(5) (contributions to employee benefit plan within 180 days of petition date) and Gap Claim of $40,911.88 under 507(a)(3). | $40,911.88 | In the event that this Administrative Claim is allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| DLA Piper LLP (US)<br>Claim #51 in the total amount of $6,723, asserting a Gap Claim under 502(f) | $6,723 | In the event that this Administrative Claim is allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

63

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Name | Total Estimated Required to Be Paid on the Effective Date | Treatment |
|---|---|---|
| Proof of Claim filed by Earthlink on April 5, 2016 as Claim No. 239 in the amount of $191,460.82 | $.00 | This is not a valid Administrative Claim and the Debtor will file an objection to the allowance of this Administrative Claim. In the event it is Allowed, it will be paid in full on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Proof of Claim filed by Commerce Distribution Center LLC on March 29, 2016 as Claim No. 177 in the amount of $436,188.72 | $.00 | This is not a valid Administrative Claim and the Debtor will file an objection to the allowance of this Administrative Claim. In the event it is Allowed, it will be paid in full on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Proof of Claim filed by Equity International Services LLC dba Sage Insurance Servicing on June 12, 2015 as Claim No. 12 in the amount of $19,828.39 | $.00 | This is not a valid Administrative Claim and the Debtor will file an objection to the allowance of this Administrative Claim. In the event it is Allowed, it will be paid in full on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Clerk, Bankruptcy Court Fees | $200 | Paid in full on the Effective Date |
| Unpaid United States Trustee Fees | $500 | The United States Trustee Quarterly Fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date. |
| Total | $3,002,277 | |

The Court must rule on all professional fees listed in the chart above before the fees will be owed. For all fees except the Clerk's Office fees and the United States Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. The Interim Trustee, his counsel and his financial advisor, have already done so and an order entering allowing their fee and costs as set forth above. As such, no further fee application will be required by those professionals. Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

64

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1      The last day to file Administrative Claims and Gap Claims (except for professional fees

2 and expenses) is thirty days after the Effective Date.  All Administrative Claimants (other than

3 professionals employed by the Estate) must provide at least sixty (60) days for parties to object

4 to the Administrative Claim after the date of service of the Administrative Claim on the Court

5 and all creditors.  Unless otherwise agreed, Allowed Administrative Claims and Allowed Gap

6 Claims will be paid on the later of the Effective Date or five business days after the entry of a

7 non-appealable order allowing the Administrative Claim or Gap Claim.  As indicated above, it is

8 anticipated that the Debtor will need to pay approximately $3,002,277 in Administrative Claims

9 and Gap Claims on the Effective Date of the Plan.  As indicated elsewhere in the Disclosure

10 Statement, the Debtor will have sufficient Cash on the Effective Date to make such payment.

11 The source of this Cash will be from the Cash on hand.

12    **2.**     **Priority Tax Claims**

13      Priority tax claims are certain unsecured income, employment and other taxes described

14 by Code Section 507(a)(8).  Except to the extent that the holder of a particular Allowed Priority

15 Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an

16 Allowed Priority Tax Claim receive on account of such Claim regular installment payments -

17         i.     of a total value, as of the Effective Date of the Plan, equal to the

18 allowed amount of such Claim;

19         ii.     over a period ending not later than five years after the Petition Date

20 under Section 301, 302 or 303; and

21         iii.     in a manner not less favorable than the most favored nonpriority

22 Unsecured Claim provided for by the Plan (other than Cash payments made to a class of

23 creditors under Section 1122(b)).

24      The following chart lists the Section 507(a)(8) Priority Tax Claims:

| Description | Amount |
| --- | --- |
| Alabama Department of Revenue<br><br>Scheduled Claim: $.00 (Disputed) | $.00 |

**SHULMAN HODGES &**
**BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

65

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Description | Amount |
|---|---|
| County of Orange<br><br>Scheduled Claim: $1,298.46 (Disputed)<br>Scheduled Claim: $2,495.24 (Disputed)<br>Proof of Claim # 3 in the total amount of $1,795.61 asserting a Priority Tax Claim of $1,795.61 and a General Unsecured Claim of $.00. (A duplicate claim was filed in the Voluntary Case) | $1,795.61 |
| County of Orange – Tax Collector<br><br>Scheduled Claim: $2,495.24 (Disputed)<br>Proof of Claim #3 in the total amount of $1,795.61 asserting a Priority Tax Claim of $1,795.61 and a General Unsecured Claim of $0.00. | $1,795.61 |
| Employment Development Department<br><br>Scheduled Claim: $41,768.95 (Disputed)<br>(listed on Schedule E and Schedule D)<br>Proof of Claim # 15 in the total amount of $69,194.56 asserting a Priority Tax Claim of $53,021.04 and a General Unsecured Claim of $69,194.56. | $53,021.04 |
| Florida Department of Revnue<br><br>Scheduled Claim: $1,872.59 (Disputed)<br>No Proof of Claim filed. | $.00 |
| Franchise Tax Board<br><br>Scheduled Claim: $912.11 (Disputed)<br>(listed on Schedule E and Schedule D)<br>Scheduled Claim: $353,000 (Disputed)<br>Proof of Claim #11 in the total amount of $382,581.96 asserting a Priority Tax Claim of $316,192.86  and a General Unsecured Claim of $66,389.10 . (A duplicate claim was filed in the Voluntary Case) | $316,192.86 |
| Internal Revenue Service<br><br>Scheduled Claim: $.00 (Disputed)<br>Proof of Claim #7  in the total amount of $43,071.42 asserting a Priority Tax Claim of $31,980.03 and a General Unsecured Claim of $11,091.39.  (A duplicate claim was filed in the Voluntary Case) | $31,980.03 |
| Kansas Department of Revenue<br><br>Scheduled Claim: $7,813.13 (Disputed)<br>No Proof of Claim Filed | $.00 |
| Missouri Department of Revenue<br><br>Scheduled Claim: $2,844.02 (Disputed)<br>No Proof of Claim filed. | $.00 |
| Ohio Bureau of Workers' Compensation<br><br>Scheduled Claim: $95 (Disputed)<br>Proof of Claim #12 filed in Voluntary Case  in the total amount of $15,132.55, asserting a  Priority Tax Claim of $15,132.55 and a General Unsecured Claim of $00. | $15,132.55 |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Description | Amount |
|---|---|
| Ohio Department of Taxation<br><br>Scheduled Claim: $811.87 (Disputed)<br>No Proof of Claim filed. | $.00 |
| San Diego County Treasurer and Tax Collector<br><br>Scheduled Claim: $87,096.48 (Disputed)<br>No Proof of Claim filed. | $.00 |
| Santa Cruz County Treasurer and Tax Collector<br><br>Scheduled Claim: $55,835.64 (Disputed)<br>No Proof of Claim filed. | $.00 |
| Securities and Exchange Commission<br><br>Scheduled Claim: $.00 (Disputed)<br>No Proof of Claim filed. | $.00 |
| State Board of Equalization (California)<br><br>Scheduled Claim: $2,131.08 (Disputed)<br>No Proof of Claim filed. | $.00 |
| State of California<br><br>Scheduled Claim: $2,131.08 (Disputed)<br>No Proof of Claim filed. | $.00 |
| State of Delaware<br><br>Scheduled Claim: $300 (Disputed)<br>No Proof of Claim filed. | $.00 |
| Treasurer of State of Ohio<br><br>Scheduled Claim: $2,769.53 (Disputed)<br>No Proof of Claim filed. | $.00 |
| Indiana Department of Revenue<br><br>Not Scheduled.<br>Proof of Claim #5 filed in the Voluntary Case on April 21, 2015 in the total amount of $86,687.34, asserting a Secured Tax Claim of $42,987.34 and a Priority Tax Claim of $43,700. | $43,700 |
| Total PriorityTax Claims | $463,617.70 |

<u>Treatment - Calculation of the monthly payments for Priority Tax Claims</u>.    Allowed

Section 507(a)(8) Priority Tax Claims, will be paid in **quarterly installment payments** such that

they are paid in full within no later than two years of the Petition Date, with payments to

commence with first monies available after all Administrative Claims are paid in full, and will

include annual interest as applicable under nonbankruptcy law as of the month of May 1, 2016.

For example, any sums owed to the Internal Revenue Service will include interest calculated at

the rate required by the Internal Revenue Code and amounts owed to the Franchise Tax Board

and the Employment Development Department will include interest calculated at the rate

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

67

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    required by Cal. Rev. & Tax. Code §4103.  Alternatively, the Allowed Claim amount may be

2    paid in full on the Effective Date.

3    **C.**      **Classified Claims**

4          **1.**      **Class 1 – Class of Secured Claims**

5          Secured Claims are Claims secured by liens on Estate property.  The following chart lists

6    all classes containing Debtor's prepetition Secured Claims and their treatment under the Plan:

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-A | Secured Claim of Bank of Houston<br><br>Scheduled Claim:  $.00 (Disputed)<br>No Proof of Claim filed.<br><br>Nature of Lien and Collateral description:<br>Texas UCC financing statement 70026952374 filed 8/8/2007<br><br>Priority:<br>None (Claim is Disputed)<br><br>Insider of the Debtor:<br>No<br><br>Estimated Value of Collateral:<br>$.00 (Claim is Disputed) | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim and any liens created by the UCC financing statements filed against the Debtor on the grounds that the Debtor believes that the Claim has been satisfied and Bank of Houston filed no Proof of Claim.  No funds shall be distributed to Bank of Houston, and pursuant to Code Section 1141I, as of the Effective Date, all property of the Estate shall be free and clear of any and all liens of the Bank of Houston. |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-B | Secured Claim of Icon Bank of Texas, N.A. <br><br> Scheduled Claim:  $.00 (Disputed) No Proof of Claim filed. <br><br> Nature of Lien and Collateral description: Delaware UCC financing statement 2012 2195933 filed 6/7/2012 <br><br> Maryland UCC statement 00000181435698 filed 12/21/2011 <br><br> Delaware UCC financing statement 2011 4362755 filed 11/14/2011 <br><br> Maryland UCC financing statement 00000181432394 filed 11/3/2011 <br><br> Delaware UCC financing statement 4243484 filed 11/3/2011 <br><br> Texas UCC financing statement 100014053276 filed 5/17/2010 <br><br> Priority: None (Claim is Disputed) <br><br> Insider of the Debtor: No <br><br> Estimated Value of Collateral: $.00 (Claim is Disputed) | No <br><br> The Claimant in  this class is  not entitled to vote on the Plan. | Debtor disputes this Claim and any liens created by the UCC financing statements filed against the Debtor on the grounds that the Debtor believes that the Claim has been satisfied and Icon Bank of Texas, N.A. filed no Proof of Claim.  No funds shall be distributed to Icon Bank of Texas, N.A, and pursuant to Code Section 1141I, as of the Effective Date, all property of the Estate shall be free and clear of any and all liens of the Icon Bank of Texas, N.A.. |
| 1-C | Internal Revenue Service Scheduled Claim: $351,229.21 (Disputed) | Yes. <br><br> The Claimant in  this class is  entitled to vote on the Plan. | Debtor disputes this Claim.  If it is determined that this Creditor has an Allowed Secured Claim of $351,229.21, this Claim shall be treated as an Allowed Priority Tax Claim  as follows: quarterly installment payments such that they are paid in full within no later than two years of the Petition Date, with payments to commence with first monies available after all Administrative Claims are paid in full, and  will include annual interest calculated at the rate required by the Internal Revenue Code as of May 1, 2016. |

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

69

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-D | Harris County Clerk<br>Scheduled Claim: $764 (Disputed)<br><br>Harris County, Texas Mike Sullivan, Tax Assessor-Collector<br>Scheduled Claim: $286.78 (Disputed)<br><br>Proof of Claim #4 in the total amount of $10,457.43 asserting a Secured Tax Claim of $10,457.43 and a General Unsecured Claim of $.00.<br>**Secured Claim (Ad Valorem Taxes)** | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim.  If it is determined that this Creditor has an Allowed Secured Claim of $10,457.43, this Claim shall be treated as an Allowed Priority Tax Claim  as follows: quarterly installment payments such that they are paid in full within no later than two years of the Petition Date, with payments to commence with first monies available after all Administrative Claims are paid in full, and  will include annual interest calculated at the rate required by applicable non-bankruptcy law as of May 1, 2016. |
| 1-E | State Comptroller (Texas)<br><br>Scheduled Claim: $1,151.28 (Disputed)<br><br>Proof of Claim #10 (as amended) in the total amount of $30,699.95, asserting a Secured Claim by Ch 113 Lien. The Claim includes tax of $.00, penalty of $27,775.12 and interest of $2,924.83. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim.  If it is determined that this Creditor has an Allowed Secured Claim of $30,699.95, this Claim shall be treated as an Allowed Priority Tax Claim  as follows: quarterly installment payments such that they are paid in full within no later than two years of the Petition Date, with payments to commence with first monies available after all Administrative Claims are paid in full, and  will include annual interest calculated at the rate required by applicable non-bankruptcy law as of May 1, 2016. |
| 1-F | Secured Claim of Indiana Department of Revenue<br><br>Not Scheduled.<br>Proof of Claim #5 filed in the Voluntary Case on April 21, 2015 in the total amount of $86,687.34, asserting a Secured Tax Claim of $42,987.34 and a Priority Tax Claim of $43,700. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim.  If it is determined that this Creditor has an Allowed Secured Claim of $42,987.34, this Claim shall be treated as an Allowed Priority Tax Claim  as follows: quarterly installment payments such that they are paid in full within no later than two years of the Petition Date, with payments to commence with first monies available after all Administrative Claims are paid in full, and  will include annual interest calculated at the rate required by applicable non-bankruptcy law as of May 1, 2016. |
| 1-G | Secured Claim of Casa Bandera Investors, LLC<br><br>Proof of Claim #216 in the total amount of $66,141.22, asserting a Secured Claim under a judgment lien against all ownership interest in subsidiary American Spectrum Realty Management, LLC and any proceeds therefrom. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as the underlying debt is an obligation of a subsidiary of the Debtor. This Creditor will receive payment from the non-Debtor entity which is liable to the Creditor. This Creditor may receive no distribution under the Plan.<br><br>In the event the Creditor has an Allowed Secured Claim, it shall be paid the amount of its Allowed Secured Claim over five quarterly monthly installments commencing on the Effective Date. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

70

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-H | Secured Claim of Casa Bandera TIC 13, LLC<br><br>Proof of Claim #218 in the total amount of $112,360.39, asserting a Secured Claim under judgment lien against all ownership interest in a subsidiary of the Debtor (American Spectrum Realty Management, LLC) and any proceeds therefrom. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as the underlying debt is an obligation of a subsidiary of the Debtor. This Creditor may receive payment from the non-Debtor entity which is liable to the Creditor. This Creditor will receive no distribution under the Plan.<br><br>In the event the Creditor has an Allowed Secured Claim, it shall be paid the amount of its Allowed Secured Claim over five quarterly monthly installments commencing on the Effective Date. |
| 1-I | Secured Claim of Crown Energy Services, Inc. and Crown Building Maintenance, Inc.<br><br>Proof of Claim #124 in the total amount of $283,923.25, asserting a Secured Claim under a certain Security Agreement between the Creditor and subsidiaries of the Debtor (American Spectrum Management Group, Inc. and Seventy Seven, LLC) and a Stipulated Judgment with American Spectrum Management Group, Inc., Seventy Seven, LLC and the Debtor) | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as a Secured Claim. This creditor has a security interest in subsidiaries of the Debtor but only an unsecured Stipulated Judgment against the Debtor.   As such, this Creditor may receive payment from the non-Debtor entity which is liable to the Creditor and to the extent it is not paid in full, this Creditor will be treated as a General Unsecured Creditor.<br><br>In the event the Creditor has an Allowed Secured Claim, it shall be paid the amount of its Allowed Secured Claim over five quarterly monthly installments commencing on the Effective Date. |
| 1-J | Secured Claim of First Insurance Funding Corp.<br><br>Proof of Claim #169 in the total amount of $4,300.66, asserting a Secured Claim under Cal.Fin.Code Section 18591 pursuant to a Commercial Premium Finance Agreement entered into by a subsidiary of the Debtor (American Spectrum Risk and Insurance Services, LLC). | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as the underlying debt is an obligation of a subsidiary of the Debtor. This Creditor may receive payment from the non-Debtor entity which is liable to the Creditor. This Creditor will receive no distribution under the Plan.<br><br>In the event the Creditor has an Allowed Secured Claim, it shall be paid the amount of its Allowed Secured Claim on the Effective Date. |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

71

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Class No. | Description | Impaired (Y.N) | Treatment |
|---|---|---|---|
| 1-K | Secured Claim of Riverside County Tax Collector<br><br>Proof of Claims #224 and 235, each in the total amount of $110,114.77 appear to be duplicate claims. Each of the Proofs of Claim assert a Secured Claim under by a statutory lien under California law against parcels of land located in Riverside County, California owned by a non-debtor third party. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as the underlying debt is an obligation of a non-debtor third party. This Creditor may receive payment from the non-Debtor entity which is liable to the Creditor. This Creditor will receive no distribution under the Plan.<br><br>If it is determined that this Creditor has an Allowed Secured Claim, this Claim shall be treated as an Allowed Priority Tax Claim as follows: quarterly installment payments such that they are paid in full within no later than two years of the Petition Date, with payments to commence with first monies available after all Administrative Claims are paid in full, and will include annual interest calculated at the rate required by applicable non-bankruptcy law as of May 1, 2016. |
| 1-L | Secured Claim of PPC Irvine Center Investment, LLC<br><br>Proof of Claim #219 in the total amount of $300,000, asserting a Secured Claim under the filing of a judgment lien. The Debtor believes the judgment lien is recorded against a subsidiary of the Debtor. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as the underlying debt is an obligation of a non debtor third party and as such, argues this Claimant should receive no distribution under the Plan.<br><br>To resolve this dispute, Claimant in this Class will receive the sum of 25% of its Allowed Claim amount to be paid within 120 days of the Effective Date in full satisfaction of its Claim. |
| 1-M | Secured Claim of William J. Carden<br><br>Claim #182 in the total amount of $300,000 plus interest, asserting a Secured Claim under an Equity Interest Pledge Agreement. | Yes.<br><br>The Claimant in this class is entitled to vote on the Plan. | Debtor disputes this Claim as the underlying debt is an obligation of a non-debtor third party. This Creditor may receive payment from the non-Debtor entity which is liable to the Creditor. This Creditor will receive no distribution under the Plan.<br><br>In the event the Creditor has an Allowed Secured Claim, it shall be paid the amount of its Allowed Secured Claim over five quarterly monthly installments commencing on the Effective Date. |

## 2.    **Class 2 – Classes of Priority Non-Tax Claims**

Certain Priority Non-Tax Claims that are referred to in Code Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), and 507(a)(7) are required to be placed in classes. These types of Claims are entitled to priority treatment as follows: the Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of Priority Non-Tax Claims may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**The following chart lists the Code Section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) Priority Non-Tax Claims. The Debtor is still reviewing whether these claims should be allowed and reserve right to object as to both allowance and amount and/or assert offset rights. To the extent these claims are Allowed, they will be paid in full on the Effective Date up to the maximum allowed amount of $12,475.**

| Priority Non-Tax Claim | Code Section | Amount |
|---|---|---|
| Renee Ahola<br>Claim #14 in the total amount of $14,416.25, asserting a Priority Non-Tax Claim of $12,475 and a General Unsecured Claim of $1,941.25. | 507(a)(4) | $12,475 |
| Stanley D. Pula<br>Claim #55, asserting a Priority Non-Tax Claim of $12,840, which exceeds the statutory limit of $12,475. Under the Plan, if the Claim is Allowed, the Priority Non-Tax Claim classification will be deemed reduced to the statutory limit of $12,475, with the balance of $365 to be treated as a General Unsecured Claim. | 507(a)(4) | $12,475 |
| Quentin E. Thompson<br>Claim #57, in the total amount of $106,774.14, asserting a Priority Non-Tax Claim of $11,725 (which is under the statutory limit of $12,475 – Claimant appears to have used an outdated proof of claim form) and a General Unsecured Claim of $95,049.14. Under the Plan, if the Claim is Allowed, the Priority Non-Tax Claim classification will be deemed increased to the statutory limit of $12,475, with the balance of $94,299.14 to be treated as a General Unsecured Claim. | 507(a)(4) | $12,475 |
| James L. Hurn<br>Claim #60 in the total amount of $41,500, asserting a Priority Non-Tax Claim of $12,475 and a General Unsecured Claim of $29,025. | 507(a)(4) | $12,475 |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

73

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Priority Non-Tax Claim | Code Section | Amount |
|---|---|---|
| Angelina Kingerski Claim #67in the total amount of $15,725, asserting a Priority Non-Tax Claim of $11,725 (which is under the statutory limit of $12,475 – Claimant appears to have used an outdated proof of claim form) and a General Unsecured Claim of $4,000. Under the Plan, if the Claim is Allowed, the Priority Non-Tax Claim classification will be deemed increased to the statutory limit of $12,475, with the balance of $3,250 to be treated as a General Unsecured Claim. | 507(a)(4) | $12,475 |
| Quest Personnel Resources, Inc. Claim #162 in the total amount of $13,254.95, asserting a Priority Non-Tax Claim of $6,331.28 and a General Unsecured Claim of $6,923.67 | 507(a)(4) | $6,331.28 |
| Cigna Health and Life Insurance Company Claim #22 in the total amount of $136,265.52, asserting a Priority Non-Tax Claim of $95,353 under 507(a)(5) (contributions to employee benefit plan within 180 days of petition date) and Gap Claim of $40,911.88 under 507(a)(3). | 507(a)(5) | $95,353 |
| William J. Carden Claim #186 in the total amount of $75,000, asserting a Priority Non-Tax Claim of $12,475 and a General Unsecured Claim of $62,525. | 507(a)(4) | $12,475 |
| | Total | $176,534.28 |

3.    **Class 3 - General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies the Plan's treatment of the classes of Claims containing all of Debtor's General Unsecured Claims. **The total General Unsecured Claims in this Case is approximately $94,061,591.12, which includes Disputed Claims.** See **Exhibit 3** to the Disclosure Statement for additional information about each General Unsecured Claim.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3-A | General Unsecured Against the Debtor<br><br>Total General Unsecured Claims filed in the case: $94,061,591.12, of which includes Disputed Claims. The Debtor and the Petitioners believe that the Allowed General Unsecured Claims will total approximately $5 million to $15 million. | Yes Impaired; claims in this class are entitled to vote on the Plan. | Creditors in this Class whose claims are Allowed Claims shall receive a) a lump sum payment equal to the lesser of 5% of their Allowed Claim or a Pro Rata Share of the sum of $600,000 within 6 months of the Effective Date ("First General Unsecured Distribution") Allowed General Unsecured Claims and the Dunham Funds will then share in the Liquidating Trust Assets 50% to 50% provided that Allowed General Unsecured Claims total no more than $14 million. If Allowed General Unsecured Claims are higher than $14 million, the Dunham General Unsecured Claim is capped at $14 million and General Unsecured Creditors and the Dunham Funds will share pro rata in all Liquidating Trust Assets. Once Allowed General Unsecured Claims have been paid 22.5% of their Allowed Claims, then thereafter the Dunham Funds shall receive 2/3 of all distributions and Allowed General Unsecured Creditors shall receive 1/3 of all distributions from the Liquidating Trust. |
| 3-B | General Unsecured Claims of Dunham Funds<br><br>Proof of Claim Nos. 64, 65, and 66 totaling $22,124,140.55 | Yes. Creditors in this Class are entitled to vote on the Plan. | Creditors in this Class will share in the Liquidating Trust Assets 50% to 50% provided that Allowed General Unsecured Claims total no more than $14 million. If Allowed General Unsecured Claims are higher than $14 million, the Dunham General Unsecured Claim is capped at $14 million and General Unsecured Creditors and the Dunham Funds will share pro rata in all Liquidating Trust Assets. Once Allowed General Unsecured Claims have been paid 22.5% of their Allowed Claims, then thereafter the Dunham Funds shall receive 2/3 of all distributions and Allowed General Unsecured Creditors shall receive 1/3 of all distributions from the Liquidating Trust. |
| 3-C | Subordinated Claims for Non-Compensatory Penalties | Yes. Creditors in this Class are entitled to vote on the Plan. | Creditors in this Class include any claims for non-compensatory penalties under Section 726(a)(4). Creditors in this Class will be subordinated and only paid if all Allowed General Unsecured Claims are paid in full. In such event, Creditors in this Class will receive a Pro Rata Share of any remaining Liquidating Trust Assets. |

### 4.    Class 4 – Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are the interest holders. The following chart identifies the Plan's treatment of the class of Interest Holders:

| Class | Description | Impaired | Treatment |
|---|---|---|---|

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| 4-A | Common Stock Holders | | Yes but not entitled to vote. | All common stock interests will be cancelled and eliminated. |
|---|---|---|---|---|
| | Interest Holder | Percentage | | |
| | William J. Carden | 33.3% | | |
| | Estate of John N. Galardi | 16.5% | | |
| | Cynthia L. Galardi | 5.4% | | |
| | D Brownell Wheless | <1% | | |
| | Patrick D. Barrett | <1% | | |
| | Other common stockholders | 57.2% | | |
| 4-B | Series A Preferred Stock Holders | | Yes but not entitled to vote. | All preferred stock will be cancelled and eliminated. |
| | Interest Holder | Percentage | | |
| | | | | |
| 4-C | Series B Preferred Stock Holders | | Yes.  Entitled to vote. | All preferred stock will be cancelled and eliminated. Creditors in Class 4-C and will receive a General Unsecured Claim as provided above. |
| | Interest Holder | Percentage | | |
| | D&A Daily Mortgage Fund III, L.P. | 6.23% | | |
| | D&A Semi-Annual Mortgage Fund III, L.P. | 32.20% | | |
| | D&A Intermediate-Term Mortgage Fund III, L.P. | 61.57% | | |
| 4-D | Series C Preferred Stock Holders | | Yes but not entitled to vote. | All preferred stock will be cancelled and eliminated. |
| | Interest Holder | Percentage | | |
| | | | | |

**Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent it becomes an Allowed Claim.  Any Proof of Claim filed which differs from the Scheduled amount is deemed to be a Disputed Claim.**

**D.**    **Means of Effectuating the Plan**

    **1.**    **Summary of Distributions Under the Plan**

The Plan is a liquidation plan accomplished through the orderly liquidation of the Debtor's assets.   The Liquidating Trustee will make   payments under the Plan from the Liquidating Trust. The Liquidating Trustee, with oversight and the consent of the Oversight Committee, will liquidate the assets of the Debtor over the course of 12 to 18 months after the Effective Date as reflected in Exhibit 2.  Proceeds derived from Post-Confirmation Estate Claims will also provide funds for payment to Creditors.

All  Allowed Administrative Claims, Allowed Gap Claims, and Allowed Priority Claims will be paid in full.  The amount of Cash needed on the Effective Date to pay such claims is set forth in  Exhibit  2  to  the  Disclosure  Statement;  however,  that  amount  may  be  reduced  after Claims analysis and objections are completed.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

76

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

The cash needed on the Effective Date will be funded by Net Operating Income and Net Sale Proceeds and if necessary, from funds to be provided by the Dunham Funds.   In the event there are not sufficient funds in the Estate to timely pay all Administrative Claims and the First General Unsecured Distribution under the terms discussed herein, the Dunham Funds will advance the funds necessary to make such payments and will be reimbursed when funds are available.   Therefore, the Debtor has sufficient resources to meet its obligations based on its projected future income.  The Liquidating Trustee will make all Distributions pursuant to the provisions of the Plan.

### 2.    Dissolution of the Debtor.

On the Effective Date, and except to the limited extent required to effect those certain Distributions that are contemplated hereunder to be made by the Debtor on or about the Effective Date, the Debtor shall be deemed dissolved for all purposes, in every jurisdiction in which it is incorporated and/or has ever done business, without the necessity for any other or further order of this or any other court, or any other action(s) to be taken by or on behalf of the Debtor, or any payments of any filing fees or undertakings or other amounts or obligations or procedural requirements that may be required in connection with a corporate dissolution outside of bankruptcy.  All of the Debtor's stock shall be deemed to be cancelled, with all legal, equitable, and contractual rights thereof to be extinguished, automatically and immediately as of the Effective Date.

### 3.    The Liquidating Trust.

The Liquidating Trust will be established, as of the Effective Date, for the benefit of all Beneficiaries. The Liquidating Trust Agreement shall be executed by the Debtor and by the Liquidating Trustee, which signatures shall be effective as of the Effective Date.   The Liquidating Trust shall be a grantor trust established for the primary purpose of liquidating the Liquidating Trust Assets on behalf of the Beneficiaries in accordance with U.S. Treasury Regulations section 301.7701-4(d). The Liquidating Trust will be organized for the purpose of identifying, recovering, preserving, monitoring, liquidating and disposing of the Liquidating Trust Assets in a manner designed to maximize the value, which may take into consideration the

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

77

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

net present value, at a reasonable discount rate, of the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business. For federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Beneficiaries) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries, followed by a transfer by such Beneficiaries to the Liquidating Trust, and the Beneficiaries shall be treated as the grantors and owners thereof.

On the Effective Date and except as otherwise provided in this Plan, the Debtor shall be deemed to have transferred all of the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trustee shall identify, recover, preserve, monitor, receive, liquidate and distribute the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement and this Plan, subject to the Confirmation Order.

As soon as practicable after the Effective Date, the Liquidating Trustee shall apprise the Beneficiaries of the estimate of the value of the Assets vested in the Liquidating Trust. Such estimate of value shall be used consistently by all parties for all federal income tax purposes. The purpose of the estimated valuation is to comply with the general criteria for obtaining an IRS ruling that an entity created pursuant to a confirmed chapter 11 plan will be classified as a grantor trust.  Any dispute regarding the estimated valuation of the Liquidating Trust Assets shall be resolved exclusively by the Bankruptcy Court. For the avoidance of doubt, the Liquidating Trustee is not required to seek or obtain any such IRS ruling.

The Liquidating Trust is not a successor of the Debtor and, except as expressly provided herein, shall not have liability for any Claim, right or action of any third party that is based on any theory of successor liability or similar legal theory or doctrine. To the extent there are any inconsistencies between the Liquidating Trust Agreement and the Confirmation Order, or the Plan and the Confirmation Order, the terms of the Confirmation Order shall be controlling. In the event of any inconsistency between the Liquidating Trust Agreement and the Plan, the Plan shall be controlling.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

78

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

## 4.    The Liquidating Trustee.

The Liquidating Trustee shall administer the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, and shall perform all of the obligations of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall, for all purposes be the authorized representative of the Liquidating Trust. The Liquidating Trustee shall serve without bond for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided herein and in the Liquidating Trust Agreement.

a) Appointment.

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

b) Term.

Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust.

c) Powers and Duties.

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement which shall include, but not be limited to, the powers of a debtor-in-possession under Bankruptcy Code Sections 1107 and 1108. The Liquidating Trustee's actions shall be governed by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan and the Liquidating Trust Agreement, take all actions necessary to wind down the affairs of the Debtor as required by or consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, and, to the extent applicable, foreign and/or local, tax returns. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized, empowered and directed to take all actions the

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

79

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    Liquidating Trustee determines are necessary to comply with the Plan and exercise and fulfill the

2    duties and obligations arising thereunder.

3    The Liquidating Trustee shall exercise reasonable business judgment in determining

4    whether to prosecute, settle or take action regarding any claims of the Estate, including but not

5    limited to the Post-Confirmation Estate Claims.  The Liquidating Trustee may compromise or

6    settle any all claims of the Estate, including but not limited to Post-Confirmation Estate Claims

7    without further notice, hearing or Court order.

8    The Liquidating Trustee shall be responsible for all actions necessary to maintain and

9    maximize the affairs of the Estate.  The duties of the Liquidating Trustee include preparing and

10    filing the post-confirmation status reports with the Office of the United States Trustee and paying

11    all post-confirmation quarterly fees of the Office of the United States Trustee until the

12    bankruptcy case is dismissed or a final decree has been entered, whichever occurs first.

13    d) Fees and Expenses.

14    The Liquidating Trustee will be compensated in the amount of $20,000 per month plus

15    costs plus a potential bonus upon achievement of a positive result for this Estate, in an amount as

16    may be awarded by the Oversight Committee and subject to the Court's review and final

17    approval.

18    e) Retention of Professionals and Compensation Procedure.

19    On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement,

20    the Liquidating Trustee may engage such professionals and experts as the Liquidating Trustee

21    deems necessary and appropriate to assist the Liquidating Trustee in carrying out the provisions

22    of the Plan and the Liquidating Trust Agreement.  The amount of fees that professionals

23    employed by the Liquidating Trustee incur, other than as related to the D&O Action or the

24    Debtor D&O Action, shall be capped at $200,000.

25    f) Investment Powers.

26    The powers of the Liquidating Trustee to invest any Cash that is held by the Liquidating

27    Trust, other than those powers reasonably necessary to maintain the value of the assets and to

28    further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

80

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills. The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

g) Vesting of Assets.

On the Effective Date and except for the Cash necessary for the Debtor to pay all Effective Date Payments, all of the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement.

**5.    Dunham Funds Settlement**

As described above, the Plan incorporates a settlement of the Dunham General Unsecured Claim, the Transfer, and the Subordination Adversary Action.  The Committee approves of the settlement proposed herein.  The settlement is described as follows:

a) Payment of Sabatasso Settlement.  Dunham Funds will advance the monies necessary to pay the Sabatasso Settlement.  Dunham Funds will have first priority for payment and will be repaid such sums with the first funds available in the Estate, prior to payment of any Allowed Claims.

b) Guaranteed Distribution to General Unsecured Creditors with Allowed Claims. Allowed General Unsecured Creditors will receive the lesser of 5% of their Allowed Claim or a Pro Rata Share (not including the Dunham General Unsecured Claim) of $600,000 to be paid from the Debtor's Net Operating Income and Net Sale Proceeds within 6 months of the Effective Date.  To the extent that there are insufficient unencumbered funds in the Post-Confirmation Estate to pay all Allowed Administrative Claims and to make the First General Unsecured Creditor Distribution, the Dunham Funds will provide the funds necessary to pay all Allowed Administrative Claims in full

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

81

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    and to make the First General Unsecured Creditor Distribution.  The Dunham Funds will

2    be reimbursed without interest for any sums it is required to pay with first monies into the

3    Post-Confirmation Estate after the First General Unsecured Creditor Distribution is made.

4         c) Advance for Attorneys' Fees and Costs.  The Dunham Funds will advance the

5    hourly portion of litigation fees to be incurred in the prosecution of any D&O Action

6    capped at $150,000 plus all costs of litigation to the extent the Estate does not have

7    resources to make payment of these fees and expenses.  The Dunham Funds will be

8    reimbursed without interest for any such litigation fees or costs it is required to advance

9    after all Administrative Claims are paid in full and the First General Unsecured Creditor

10   Distribution is made.

11        d) Dunham Funds Allowed Claim amount.  The Dunham Funds will share in the

12   Liquidating Trust Assets 50% to 50% with Allowed General Unsecured Creditors

13   provided that Allowed General Unsecured Claims total no more than $14 million.   If

14   Allowed General Unsecured Claims are higher than $14 million, the Dunham General

15   Unsecured Claim is  capped at $14 million and General Unsecured Creditors and the

16   Dunham Funds will share pro rata in all Liquidating Trust Assets. Once Allowed General

17   Unsecured Claims have been paid 22.5% of their Allowed Claims, then thereafter the

18   Dunham Funds  shall receive 2/3 of all distributions and Allowed General Unsecured

19   Creditors shall receive 1/3 of all distributions from the Liquidating Trust.

20        e) Advance for Effective Date Payments.  To the extent there are insufficient

21   unencumbered funds in the Estate on the Effective Date in order to make all payments,

22   the Dunham Funds will provide the funds necessary to make such payments.   In

23   exchange, the Dunham Funds will be reimbursed for any monies lent with first monies

24   available in the Estate.

25        f) Upon Bankruptcy Court approval of the settlement, the Subordination

26   Adversary Action shall be dismissed with prejudice.

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

6.    **Basis for Settlement with the Dunham Funds**

In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the Court must consider the following factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*A & C Properties*, 784 F.2d at 1381; *Woodson*, 839 F.2d at 620.  All such factors are present here.

a.    **Probability of Success**

As to the subordination of the Dunham General Unsecured Claim, the Committee and the Debtor assert that since the Dunham Funds received stock under the Transactions, the plain language of Section 510(b) ("purchase or sale of securities") applies such that the Dunham General Unsecured Claim must be subordinated and only paid if all Allowed General Unsecured Claims are first paid in full.  The Debtor further asserts that the Dunham Funds are judicially estopped from arguing the Transactions did not involve the purchase or sale of securities based on certain statements made in a state court proceeding by the Dunham Funds.  The Dunham Funds argue, on the other hand that the Transactions did not involve the purchase or sale of securities but rather, involved the sale of real estate in exchange for repayment on fixed terms and on a fixed schedule and that it was the intent of the parties for the Transactions to be a debt instrument.  Further, a securities claim under California law is not limited to the purchase of stock for the purpose of acquiring an equity interest.  Pursuant to Cal. Corps. Code §25017(a), the Dunham Funds contend that the transfer of stock as collateral to secure a payment obligation comes within the ambit of California's securities law because such transfer affects the rights, preferences, privileges, or restrictions of or on outstanding securities.   As such, the Dunham Funds argues it is not contradictory for it to make claims under California's securities law but at the same time, the Dunham Funds Claims not be subordinated under Section 510(b).

The Ninth Circuit seems to apply the language of Section 510(b) broadly but this is a very fact specific question and it is very difficult to know how the Court would rule.  As such,

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

83

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  the Debtor is uncertain whether it would prevail in subordinating the Dunham General

2  Unsecured Claim.

3          As to the avoidance claims, the Debtor asserts the Transfer was a preferential transfer

4  under Section 547 or a fraudulent transfer under Section 548.   The Transfer occurred more than

5  90 days before the Petition Date so the Dunham Funds must be an insider in order for the

6  Transfer to be avoidable as a preference.   The Debtor asserts the Dunham Funds is an insider

7  because it was given rights to vote for directors in the event of a default under the Transactions

8  and because the Dunham Funds now sit on the Debtor's Board.   The Dunham Funds assert, on

9  the other hand, that it is not an insider because it does not fit the definition of insider in Section

10 101(31), did not sit on the Board at the time of the Transfer as required under Section 547, and

11 that a potential to become an insider at a later date is not sufficient to make one an insider for

12 purposes of Section 547.   Since the Dunham Funds is not an insider, the Transfer cannot be a

13 preference.   As to the Transfer being a fraudulent transfer, the Debtor asserts the Dunham Funds

14 received valuable property in exchange for stock that was worthless under the Pre-Petition

15 Settlement but, as the Dunham Funds assert, if the stock was worthless when it was returned to

16 the Debtor, it was also worthless when the Dunham Funds received it just six months prior under

17 the Contribution Agreement.   Further, the Pre-Petition Settlement was just an unwinding of a

18 previous transaction and as such, is not avoidable.

19         Finally, the Debtor and the Committee assert that by virtue of broad general releases in

20 the Dunham Funds Settlement Agreement, the Dunham Funds released any claims against the

21 Debtor or its officers or directors for anything related to the transactions between the parties.

22 The Dunham Funds argue the Dunham Funds Settlement Agreement and the Contribution

23 Agreement can be rescinded by virtue of there being no consideration given for the Agreements

24 in that the Dunham Funds contributed valuable real estate and received a promise to be repaid

25 collateralized by worthless stock.

26                    **b.  Difficulties in Collection**

27         This factor is not an issue here because it deals with the allowance and resolution of the

28 Dunham Funds Claims.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

84

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

### c.   The Complexity, Expense, Inconvenience and Delay of Litigation

If the settlement is not approved, litigation will be very expensive. If the Debtor continued to litigate the disputes, it would incur a significant amount of time and money, including engaging in discovery, attending trial and possibly responding to appeals.

Not only that, the litigation is very complex, both factually and legally.  This is not just a simple issue of the language of Section 510(b) but rather, covers securities law, corporate law, and bankruptcy law.  The intent of the parties would have to be investigated, thus requiring the depositions of many witnesses.  Debtor expects that fees and costs litigating this matter could be $250,000 or more given the complexity of the facts surrounding the transactions at issue, the number of witnesses and likely discovery.

The Debtor has estimated that total allowed claims of unsecured creditors not including the Dunham Claims are approximately $7.0 million to $15.0 million.  Assuming this lower number is correct and if the Debtor did not prevail in litigation, the Dunham Claims would be $22 million compared to approximately $7 million for other unsecured creditors, which would result in a pro-rata share of approximately 75% for the Dunham General Unsecured Claim. Under the settlement, unsecured creditors (other than the Dunham Claims) receive at least 5% and then get 50% of the dollars disbursed after that until they receive 22.5%, which provides a much better pro rata share for unsecured creditors.

Finally, if the parties are forced to litigate this matter, the Debtor expects it would take at least 3 months (if resolved by summary adjudication) to one year to resolve and possibly much longer than that if appeals are taken into account.  Pursuant to the settlement, though, unsecured creditors are guaranteed a recovery within six months of the Effective Date, funds are provided to ensure the administrative solvency of the Estate, and costly litigation is avoided.

### d.   The Interests of Creditors

Finally, the advantageous settlement avoids the risk and cost of litigation and allows the Estate to preserve resources by reducing litigation costs and at the same time enhancing the value of the Estate by ensuring the Estate has the funds available to make Effective Date payments so

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

85

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1   that it may confirm a plan and also to fund the Sabatasso Settlement which confers a large
2   benefit to the unsecured creditors.

3       The benefit of the settlement far outweighs the risk and expense of litigation.  If a
4   settlement is not reached, the Petitioning Creditors will assert their own claims against the
5   Debtor and its officers and directors which claims they believe are much stronger than the
6   Estate's claims.  If the Petitioning Creditors are correct, any funds the Estate obtained from the
7   D&O Action would be shared pro rata with the Petitioning Creditors.   Further, the Petitioning
8   Creditors would not cap their administrative claim in the case which they expect would be well
9   over $500,000.   The total fees and costs incurred by the Petitioning Creditors to date are in
10  excess of $500,000 and is only expected to go higher.   These fees may be allowed as
11  administrative claims against the estate pursuant to section 503(b)(1) and (3). The Petitioning
12  Creditors have incurred attorneys' fees and costs which provided real value to the Estate by, *inter
13  alia*, filing the involuntary petition in order to prevent the dissipation of the Debtor's assets and
14  mismanagement and self-dealing by the Debtor's principal, removing the Chapter 11 trustee
15  which saved the Estate $100,000 a week in fees and expenses by the trustee and his
16  professionals, arranging the debtor in possession loan, getting Mr. Issa appointed to act as an
17  independent fiduciary in the best interest of creditors, taking the laboring oar on drafting the Plan
18  and Disclosure Statement, and analyzing claims to be made against the Debtor's officers and
19  directors.

20      Most importantly, the Petitioning Creditors are guaranteeing the unsecured creditors a
21  recovery in this Case.  The Petitioning Creditors contend that without the proposed settlement,
22  litigation over the hotly disputed issues in this Case will likely cost the Estate over $1 million or
23  more which would likely result in an administratively insolvent Case and no recovery to
24  unsecured creditors.  The settlement, however, guarantees unsecured creditors a recovery in this
25  Case.  In other words, the Petitioning Creditors are partially subordinating their claims which
26  they would not agree to absent the settlement.

27      Given the disputes summarized above, the Debtor believes that resolution with the
28  Dunham Funds is in the best interest of the Estate as it will greatly reduce the cost of litigation.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

86

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

In addition, the Dunham Funds have greatly benefitted the Estate by commencing the involuntary case to create the environment for full visibility and fair and equal treatment for all creditors in the midst of allegations against the Debtor of severe mismanagement and fraud; in assisting the Debtor in this Case, including but not limited to, drafting pleadings and negotiating with the Debtor's principals to enter the Order for Relief and to reconstitute the Board; in arranging for the post-petition financing by Gleicher on terms that the Debtor would not have been able to obtain without the help of the Dunham Funds; in providing the funding necessary to pay the Sabatasso Settlement which will be reimbursed without interest with first funds available; and in providing funding necessary for the prosecution of any D&O Action and to make the First General Unsecured Distribution if necessary and which funds will be reimbursed, assuming there are funds available, without interest.  The parties recognize the risk and cost of litigation if a settlement is not reached, as well as recognize the benefit to be inferred by the Petitioning Creditors by: 1) funding the first $150,000 in legal fees in pursuing the D&O Action, 2) agreeing to share the proceeds of any recovery in the D&O Action with the Estate, 3) capping their administrative claim in this Case (which totals at least $500,000), 4) partially subordinating their claims so as to guarantee the unsecured creditors a recovery of 5% up to $600,000, and 5) avoiding expensive litigation which could cost the Estate substantial fees in administrative expenses, or possibly more.  Further, if litigation ensues over the Dunham Funds claims, it will delay payments to Creditors because sufficient funds will have to be held in the Claim Reserve in the event that the Dunham General Unsecured Claim is allowed in full.  Given the large amount of the Dunham General Unsecured Claim, this could likely result in there not being any funds, or very little funds, available to pay Allowed General Unsecured Claims until the litigation is resolved which could take a considerable period of time.

Given the disputes summarized above, the Debtor and the Committee believe that resolution with the Dunham Funds is in the best interest of the Estate.

**E.    Post-Confirmation Management**

The Debtor has agreed to serve as the Disbursing Agent for purposes of making all Distributions that are due on the Effective Date under the Plan. The Liquidating Trustee, J.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

87

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    Michael Issa who is currently serving as the Chief Restructuring Officer, as the Disbursing

2    Agent under the Plan, is responsible for making any Distributions under the Plan on behalf of the

3    Liquidating Trust under the terms discussed above.

4    **F.**     **Employment and Compensation of Professionals**

5        In carrying out the duties under the Plan, the Liquidating Trustee shall use the services of

6    professionals deemed to be appropriate. The total of all professional fees for post-confirmation

7    services shall be capped at $200,000 other than fees related to the D&O Action and the Debtor

8    D&O Action. Except as set forth herein to the contrary, any professional employed by the Debtor

9    or the Liquidating Trustee in this bankruptcy case after the confirmation of the Plan seeking

10    payment of its post-confirmation fees and costs will be entitled to seek payment of such fees and

11    costs without the need for any further order of the Bankruptcy Court.

12        In the event the Dunham Funds Settlement is approved, the D&O Action and the Debtor

13    D&O Action will be consolidated and it may make sense for the Liquidating Trustee to employ

14    one law firm.  The Liquidating Trustee, in his discretion, may employ SHB or another law firm

15    as his counsel in prosecuting any D&O Action if he believes it makes sense strategically and

16    economically and if all conflicts are waived by the necessary parties.     If the Liquidating

17    Trustee, in his sole discretion, decides to employ SHB, SHB will request compensation in part on

18    a contingency basis and in part on an hourly basis.  The Dunham Funds will advance all hourly

19    fees incurred by SHB in the prosecution of any D&O Action up to the amount of $150,000 plus

20    all costs of litigation to the extent the Estate does not have resources to make payment of these

21    fees and expenses.   The Dunham Funds will be reimbursed without interest for any such

22    litigation fees or costs it is required to advance from the litigation proceeds.

23    **G.**     **Risk Factors**

24        The proposed Plan has the following risks:

25        1.      The financial projections contained in this Disclosure Statement are based on

26    assumptions described therein.  However, the Plan and the financial projections are subject to

27    certain risk factors which cannot reasonably be determined   at this time.  The risk factors

28    discussed below assume confirmation and consummation of the Plan and the transactions

**SHULMAN HODGES &**
**BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

88

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

contemplated by the Plan, and do not include matters, other than risks pertaining to the ability of the Debtor to fund the Plan and to pay Creditors, that could prevent confirmation or consummation.  Prior to voting on the Plan, each holder of an impaired Claim should carefully consider the risk factors enumerated or referred to below as well as all of the information contained in the Disclosure Statement, the Plan, and the exhibits hereto and thereto.

2.      The amount of debt owed to subsidiaries of the Debtor could be greater than the funds available to pay such amounts.  If funds are not available to pay all debt at the subsidiary level, there will be  no monies available to flow to the Debtor.  The Debtor is advised that the debt at the subsidiary level is substantial and includes claims for non-payment, claims based on misconduct by the Debtor and/or the subsidiary, and guarantees of debt to the Debtor.  If there are insufficient funds available to pay claims at the subsidiary level, there will not be funds available for the Debtor and no recovery to Creditors of the Debtor.

3.      If the Plan is not confirmed and consummated, there can be no assurance that the holders of Secured Claims will not foreclose on the assets of the Estate, that the bankruptcy case will continue rather than be converted into a liquidation, or that any alternative plan of reorganization would be on terms as favorable to the holders of the impaired Claims as the terms of the Plan.  If a foreclosure, liquidation, or protracted reorganization were to occur, there is a substantial risk that there would be little, if any, value available for distribution to the holders of Claims (other than Secured Claims).

4.      The estimate of the Distributions which will be made to the holders of Allowed Claims represents a projection of future events based upon certain assumptions made by the Debtor regarding the sales from operation of the its business, which at time such sales may be seasonal, and which vary historically from year to year.   If sales are less than projected by the Debtor, the Distribution to Creditors could be impacted, perhaps substantially.  Further, given the difficult economic climate and uncertain pricing of supplies, materials, goods and other commodities, the projected figures could ultimately go down.

///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

89

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

5.    The amount due to some Claimants has not been liquidated and is disputed. Some of the amounts due are subject to pending litigation or are subject to payment by parties other than the Debtor. These factors could impact the distribution to Creditors.

6.    The Debtor intends to object to any proof of claim that may be filed against the Estate related to the claims asserted by disputed Creditors including the Bank of Houston and Icon Bank of Texas, N.A. The Debtor does not believe that there will be any Allowed Claim against the Estate in favor of Bank of Houston and/or Icon Bank of Texas, N.A. However, the outcome of any Disputed Claims asserted against the Estate are unknown at this time and the outcome could impact the funds available for distribution to Creditors.

7.    The amount that will be recovered from prosecution of Post-Confirmation Estate Claims is unknown and speculative. The Liquidating Trustee has not commenced investigation of such claims or any defenses to such claims. There is also risk inherent in any litigation and potential fees and costs that would be incurred to pursue such claims.

8.    By reason of the uncertainties inherent in the predictions of future events, the actual Distributions which will be made to the holders of Allowed Claims may well be different from those projected, and such difference may well be material and adverse to the interest of Creditors.

9.    The Debtor is advised that the IRS asserts that ASRM, a wholly owned subsidiary of ASROP, owes trust fund payroll taxes in the total amount of (including interest and penalties) of $791,742.14. The IRS has not filed a proof of claim in the Case and the Debtor does not believe it is liable for such sums, but in the event the IRS asserts the Debtor is liable, it could affect the Debtor's ability to make distributions discussed herein and in any event, if ASRM must pay these taxes, it will affect the Debtor because before the Debtor receives any funds upstream as a result of its interest in ASRM, ASRM will have to pay such sum.

The risk factors discussed herein assume confirmation and consummation of the Plan and the transactions contemplated by the Plan, and do not include matters, other than risks pertaining to the ability of the Debtor to fund the Plan and to pay Creditors, that could prevent confirmation or consummation. Prior to voting on the Plan, each holder of an impaired Claim should carefully

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

90

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

consider the risk factors enumerated or referred to below as well as all of the information contained in this Disclosure Statement, the Plan, and the exhibits hereto and thereto.

**H.      Post-Confirmation Estate Claims**

The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the expense of the Estate), any and all Claims and causes of action which constitute property of the Estate, whether or not such Claims or causes of action are the subject of litigation pending as of the Effective Date (collectively, the "Post-Confirmation Estate Claims"), shall be vested solely in the Liquidating Trustee as of the Effective Date.  From and after the Effective Date, the Liquidating Trustee shall have the sole right to enforce, file, prosecute, collect, or settle, any Post-Confirmation Estate Claims.

Any litigation based upon Post-Confirmation Estate Claims will be filed no later than two years after the Effective Date, or within any applicable limitations period, or within such additional period of time as the Bankruptcy Court may allow upon motion of the Liquidating Trustee, after such notice as the Bankruptcy Court may deem appropriate.  In the event that litigation based upon any Post-Confirmation Estate Claim is not timely commenced, such Post-Confirmation Estate Claim will be deemed forever waived by the Estate and neither the Debtor, Liquidating Trustee nor any other party-in-interest will have the right to pursue the same; provided, however, that any such Post-Confirmation Estate Claim, may be utilized as a defense against or offset to any Claim or cause of action which may be brought against the Estate.

Notwithstanding the rights of the Liquidating Trustee with respect to Post-Confirmation Estate Claims, nothing in the Plan will require the Liquidating Trustee to prosecute or litigate any such matters, all of which may be decided by the Liquidating Trustee in his sole discretion.

THE DEBTOR AND THE PETITIONERS HAVE NOT FULLY REVIEWED WHETHER POST-CONFIRMATION ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION, WHETHER OR NOT THERE ARE ANY AVOIDANCE ACTIONS WHICH MAY BE BROUGHT AFTER THE EFFECTIVE DATE.  THIS INVESTIGATION IS ON-GOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE, AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

91

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR POST-CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT, A POST-CONFIRMATION ESTATE CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN.

## I.    Objections to Claims

The right to litigate, resolve, and settle objections to Claims (at the expense of the Estates), whether or not the subject of litigation as of the Effective Date, will be vested solely in the Liquidating Trustee as of the Effective Date.  From and after the Effective Date, the Liquidating Trustee shall have the sole right to file, prosecute, litigate, and settle any objections to Claims, whether or not any such objection is pending as of the Effective Date.

Notwithstanding that the Liquidating Trustee shall have the right to file, litigate, prosecute, and settle objections to Claims on behalf of the Estate, nothing contained herein will be deemed to obligate the Liquidating Trustee to take any such actions, all of which will be determined in the Liquidating Trustee's sole discretion.

**Any Claims listed as Disputed in the Plan and Disclosure Statement and the exhibits attached thereto will be subject to claims objections proceedings.  HOWEVER, THE DEBTOR AND THE PETITIONERS HAVE NOT FULLY REVIEWED THE CLAIMS OR DETERMINED WHETHER OBJECTIONS TO CLAIMS EXIST.    THIS INVESTIGATION IS ONGOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE.  CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE TERMS OF THE PLAN SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR OBJECTION TO CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR DISCLOSURE STATEMENT, AN OBJECTION TO CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AFTER THE EFFECTIVE DATE.**

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

92

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**J.      Pending Disputed General Unsecured Claims as of the Date of Distribution**

        In the event that any objection to any General Unsecured Claim should be pending as of the date on which a Distribution is owed to the holder of such General Unsecured Claim, no Distribution will be made on account of such disputed General Unsecured Claim until such Disputed Claim has been determined and allowed by a Final Order.  In the event that a Disputed Claim is allowed by a Final Order, within five Business Days after such Disputed Claim is allowed by such Final Order, such Allowed General Unsecured Claim will be paid to the extent of the Distributions previously made on account of Allowed General Unsecured Claims in the same Class.  Further Distributions, if any, on account of such Allowed General Unsecured Claim will be paid directly to the holder of such Allowed General Unsecured Claim, in an aggregate amount not to exceed the amount of the General Unsecured Claim allowed by the Final Order.

**K.      Setoff, Recoupment, and Other Rights**

        Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trustee may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the Distributions to be made pursuant to the Plan on account of any claims that Debtor or the Estate may have against the entity holding an Allowed Claim; provided, however, that neither the failure to effect such a  setoff or recoupment, nor the allowance of any Claim against Debtor, nor any partial or full payment during the Case or after the Effective Date in respect of any Allowed Claim, shall constitute a waiver or release by Debtor or the Estate of any claim that they may possess against such holder.

**L.      Unclaimed Distributions**

        Distributions to holders of Allowed Claims will be made either:  (a) at the addresses set forth in the Proof of Claim filed by the Creditor; or (b) at the address set forth in any written notice of address change delivered to the Debtor or the Liquidating Trustee after the date on which any related Proof of Claim was filed; or (c) at the address reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been filed by the Creditor and neither the Debtor nor the Liquidating Trustee have received a written notice of a change of address.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

93

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

The Liquidating Trustee shall not be required to perform any investigation or inquiry as to the proper address for such Creditor if the address stated in any Proof of Claim filed by the Creditor, written notice of change of address filed by the Creditor, or in the Schedules is incorrect.

Any Unclaimed Distribution provided for under the Plan (which will include: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; or (c) checks which remain un-negotiated for a period of ninety days, will be retained and utilized by the Liquidating Trustee.

Following the earlier to occur of: (a) two (2) years after a Distribution becomes an Unclaimed Distribution, or (b) ninety days after the making of the Final Distribution under the Plan (collectively, the "Unclaimed Distribution Holding Period"), such Unclaimed Distribution will become property of the Disbursement Fund, free and clear of any restrictions thereon, and the holders of Allowed Claims otherwise entitled to such Unclaimed Distributions will cease to be entitled thereto and their Claims based thereon will be deemed discharged, waived, and forever barred.

Pursuant to Bankruptcy Code Section 347, in the event that Unclaimed Distributions remaining in the Disbursement Fund after five years from the date of entry of the Confirmation Order are less than $5,000, such Unclaimed Distributions shall revert to the Liquidating Trustee as additional compensation.    In the event that Unclaimed Distributions remaining in the Disbursement Fund after five years from the date of entry of the Confirmation Order are $5,001 or more, after payment of all costs of administration of the Plan including payment of Allowed Administrative Claims, Allowed Priority Claims and/or Allowed Secured Claims, such Unclaimed Distributions shall be distributed on a pro rata basis to Allowed General Unsecured Claims over the amount of $10,000.00.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

94

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

M.      **Other Provisions of the Plan**

    1.      **Executory Contracts and Unexpired Leases**

        a.      **Assumptions**

The following are the unexpired leases and executory contracts that are to be **assumed** as obligations of the Estate under the Plan:

| Name of Other Parties to Lease or Contract | Description of Lease or Contract |
|---|---|
| **ASR, West Gray, L.P.** | **Lease for the Debtor's business premises located at 12000 Westheimer Road, #230, Houston, TX 77077.   The lease expires on February 28, 2018.** |

        b.      **General Assumption Procedures**

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

Any monetary defaults under each executory contract or unexpired lease to be assumed under the Plan will be satisfied, pursuant to Section 365 of the Bankruptcy Code, in either of the following ways: (1) by payment of the default amount in quarterly cash installments commencing on the Effective Date and continuing for one year; or (2) by payment of the default amount on such other terms as agreed to by the Debtor and the non-debtor parties to such executory contract or unexpired lease.

In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption (or assumption and assignment) of the executory contract or unexpired lease to be assumed, the Debtor will pay any undisputed cure amount when such payments otherwise are due under the

**SHULMAN HODGES &
BASTIAN LLP**
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

95

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

Plan, and the disputed amounts will be paid following the entry of a Final Order resolving the dispute and approving assumption.

### c.    Rejections

On the Confirmation Date, except for any executory contract or unexpired lease specifically assumed or rejected pursuant to a prior order of the Bankruptcy Court or assumed pursuant to the Plan, each executory contract or unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code.    Therefore, rejections include but are not limited to the following:

| Name of  Other Parties to Lease or Contract | Description of Lease or Contract |
| --- | --- |
| **None** | **Not Applicable** |

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of the Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY DAYS FROM THE CONFIRMATION DATE.  Any Claim based on the rejection of a contract or lease will be barred if the proof of Claim is not timely filed, unless the Court later orders otherwise.

Proofs of Claim for any Claims arising by reason of any rejection of executory contracts or unexpired leases pursuant to the Plan shall be filed and served upon the Liquidating Trustee and counsel for the Liquidating Trustee within thirty days after the Confirmation Date.  In the event that any such Proof of Claim is not filed and served as set forth herein, such Claim will be deemed conclusively to be waived and will be forever barred in the Case, without further notice.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

96

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1   Any Claim timely asserted hereunder arising out of the rejection of an executory contract or

2   unexpired lease will be deemed to be a General Unsecured Claim under the Plan, but will not

3   automatically become an Allowed Claim.

4        **2.**    **Changes In Rates Subject To Regulatory Commission Approval**

5        The Debtor is not subject to governmental regulatory commission approval of rates.  The

6   Debtor us not regulated by a governmental commission.

7        **3.**    **Retention of Jurisdiction**

8        Until this Plan has been fully consummated, the Bankruptcy Court shall retain

9   jurisdiction to the extent provided by law, including, but not limited to, the following purposes:

10       1.    The classification, allowance, disallowance, or estimation of the Claim of any

11   Claimant and the re-examination of Claims which have been allowed for the purposes of

12   determining acceptance of the Plan at the time of the Confirmation Hearing and the

13   determination of such objections as may be filed to Claims.  The failure by the Debtor to object

14   to or to examine any Claim for the purpose of determining acceptance of this Plan shall not be

15   deemed to be a waiver of the right of Debtor or the Liquidating Trustee to object to or to re-

16   examine the Claim, in whole or in part, at a later date.

17       2.    Except as otherwise provided herein, the determination of all questions and

18   disputes regarding title to the assets of Debtor or the Estate, and the determination of all causes

19   of action, controversies, disputes, or conflicts, whether or not subject to any action pending as of

20   the Confirmation Date, in which the Debtor is a party.

21       3.    The correction of any defect, the curing of any omission, or the reconciliation of

22   any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the

23   purposes and intent of the Plan.

24       4.    The resolution of any motions, adversary proceedings, contested or litigated

25   matters that may be pending on the Effective Date.

26       5.    The modification of the Plan after confirmation pursuant to the Bankruptcy Code

27   and the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification

28   of this Plan even after the Plan has been substantially consummated.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

97

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

6.      The enforcement and interpretation of the terms and conditions of the Plan or the Confirmation Order, and the determination of such matters, and the making of such orders consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

7.      The determination, either before or after the closing of this bankruptcy case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the Debtor's or the Estate's entitlement, if any, to tax attributes which may have been property of the Estate, either before or after the closing of this bankruptcy case.

8.      The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

9.      The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the Debtor or the Liquidating Trustee and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

10.      The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the bankruptcy case.

11.      The determination of the validity, extent, or priority of any liens and security interests against the Liquidating Trust Assets.

12.      The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtor or the Estate whether such action or proceeding is brought before or after the Effective Date.

13.      The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estate.

14.      The determination of all questions and disputes regarding collection of assets of Debtor or the Estate as of the Confirmation Date.

15.      The entry of an order concluding and terminating the bankruptcy case.

16.      To interpret and implement the terms of the Liquidating Trust Agreement.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

98

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

17.     Such other matters to the extent provided by law.

**N.     Tax Consequences of the Plan**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under section 1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of its chapter 11 case in contemplation of the Plan but prior to the Effective Date, and all transfers to and by the Liquidating Trustee. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on Debtor's tax liability.

The following are the tax consequences which the Plan will have on the Debtor's tax liability:

DUE TO THE UNSETTLED AND COMPLEX NATURE OF SOME OF THE TAX ISSUES, AS WELL AS THE POSSIBILITY THAT DEVELOPMENTS SUBSEQUENT TO THE DATE HEREOF COULD AFFECT THE TAX CONSEQUENCES OF THE PLAN, THE FOLLOWING DISCUSSION SHOULD NOT BE REGARDED AS DEFINITIVE OR AS COVERING ALL POSSIBLE TAX CONSEQUENCES.    ADDITIONALLY, THIS SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR CREDITOR OR HOLDER OF AN EQUITY INTEREST IN LIGHT OF ITS INDIVIDUAL CIRCUMSTANCES OR TO

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

99

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

CERTAIN CREDITORS AND HOLDERS OF EQUITY INTERESTS SUBJECT TO SPECIAL TREATMENT UNDER THE FEDERAL INCOME TAX LAWS (FOR EXAMPLE, LIFE INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, FOREIGN CORPORATIONS AND INDIVIDUALS WHO ARE NOT CITIZENS OR RESIDENTS OF THE UNITED STATES).

THIS SUMMARY DOES NOT DISCUSS ANY ASPECT OF STATE, LOCAL OR FOREIGN TAXATION.  HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE, LOCAL, AND FOREIGN) TO THEM OF THE PLAN.

This summary is based upon the laws, regulations, rulings, and decisions in effect on the date hereof and upon certain proposed and temporary regulations, all of which are subject to change (possibly with retroactive effect) by legislation, administrative action or judicial decision. Moreover, due to a lack of definitive judicial or administrative authority and interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein.  No rulings have been or are expected to be requested from the IRS or any state tax agency concerning any of the tax matters described herein.  There can be no assurance that the IRS or any state tax agency will not challenge the positions taken by the Debtor with respect to any of the issues addressed herein or that a court of competent jurisdiction would not sustain such a challenge.

The amount of tax liabilities, if any, will be affected by any deductions the Debtor will be entitled to during the year.  Thus, at this time, the Debtor cannot estimate the amount of tax liabilities that will be incurred.

## V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtor

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

100

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays Creditors at least as much as Creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

**A.     Who May Vote Or Object**

      **1.     Who May Object To Confirmation Of The Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

      **2.     Who May Vote To Accept The Plan**

A Creditor has a right to vote for or against the Plan if that Creditor has a Claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

      **3.     What Is An Allowed Claim**

As noted above, a Creditor or interest holder must first have an Allowed Claim or interest to have the right to vote. Generally, any proof of Claim or interest will be allowed, unless a party in interest brings a motion objecting to the Claim. When an objection to a Claim or interest is filed, the Creditor or interest holder holding the Claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes.

**THE BAR DATE FOR FILING A PROOF CLAIM IN THIS BANKRUPTCY CASE WAS OCTOBER 7, 2015**. A Creditor may have an Allowed Claim even if a proof of Claim was not timely filed. A Claim is deemed allowed if (1) it is scheduled on the Debtor's Schedules and such Claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the Claim.

      **4.     What Is An Impaired Claim**

As noted above, an Allowed Claim only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

101

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

rights of the members of that class.   For example, a class comprised of general unsecured Creditors is impaired if the Plan fails to pay the members of that class 100% of what they are owed.  In this case, the following Classes are impaired under the Plan:

- Class 1-A, Bank of Houston.
- Class 1-B, Icon Bank of Texas, N.A.
- Class 1-C, Internal Revenue Service.
- Class 1-D, Harris County Clerk.
- Class 1-E, State Comptroller (Texas).
- Class 1-F, Indiana Department of Revenue,
- Class 1-G, Casa Bandera Investors, LLC.
- Class 1-H, Casa Bandera TIC 13, LLC.
- Class 1-I, Crown Energy Services, Inc. and Crown Building Maintenance, Inc.
- Class 1-J, First Insurance Funding Corp.
- Class 1-K, Riverside County Tax Collector.
- Class 1-L, PPC Irvine Center Investment, LLC.
- Class 1-M,  William J. Carden.
- Class 3-A, General Unsecured Claims.
- Class 3-B, General Unsecured Claims of the Dunham Funds.
- Class 3-C, General Unsecured Claims for Non-Compensatory Penalties.
- Class 4-C, Series-B Preferred Stock Holders.

Parties who dispute the Debtor's characterization of their Claim as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized their Claim.

### 5.    Who Is Not Entitled To Vote

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired classes; (3) Claims entitled to priority pursuant to Code Sections 507(a)(2), 507(a)(3), and 507(a)(8); and (4) Claims in classes that do not receive or retain any value under the Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

102

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  The following Classes are each unimpaired and are not entitled to vote on the Plan:

Claims entitled to priority pursuant to Code Sections 507(a)(2), 507(a)(3), and (a)(8) are not entitled to vote because such Claims are not placed in classes and they are required to receive certain treatment specified by the Code.

Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  This would include Classes 4-A, 4-B, and 4-D.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**6.**     **Who Can Vote In More Than One Class**

A Creditor whose Claim has been allowed in part as a secured Claim and in part as an General Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the unsecured Claim.

**7.**     **Votes Necessary To Confirm The Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless that Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**8.**     **Votes Necessary For A Class To Accept The Plan**

A class of Claims is considered to have accepted the Plan when more than one-half in number and at least two-thirds in dollar amount of the Claims which actually voted, voted in favor of the Plan.   Holders of Claims or Interests that fail to timely vote will be deemed to vote in favor of the Plan.  Further, if no votes are cast in a particular Class, the Class will be deemed to have accepted the Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

103

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

### 9.    Treatment Of Non-Accepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code.  The process by which non-accepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on non-accepting classes of Claims if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. Section 1129(b) and applicable case law.

If an impaired class votes against the Plan, confirmation of the Plan is still possible (cramdown) so long as the Plan is fair and equitable and the non-consenting class is afforded certain treatment defined by the Code.  That certain treatment may be very broadly defined as giving a claimant the "full value" of his claim.  Such value is determined by the Court and balanced against the treatment afforded the dissenting class of Creditors.  If the latter is equal to or greater than the former, the Plan may be confirmed despite the objection of that dissenting class, depending upon the treatment of junior claims.  In particular, senior claims must be satisfied in full prior to payment of junior claims, unless the holder of senior claims agree to different treatment.  This principle, commonly known as the "absolute priority rule," applies only in cases when a class of unsecured claims is impaired and does not accept the Plan.  In that event, the absolute priority rule does not apply to all classes of unsecured claims, but only to the dissenting class and classes junior to the dissenting class.

### 10.    Request For Confirmation Despite Nonacceptance by Impaired Class(es)

The Debtor will ask the Court to confirm the Plan by cramdown on impaired Classes if such Classes do not vote to accept the Plan.

## B.    Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a Claimant is in an impaired class and that Claimant does not vote to accept the Plan, then that Claimant must receive or retain under the Plan

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

104

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  property of a value not less than the amount that such holder would receive or retain if the

2  Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code.

3        In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 trustee.  Secured

4  Creditors are paid first from the sales proceeds of properties on which the secured Creditor has a

5  lien.   Administrative Claims are paid next.   Next, unsecured Creditors are paid from any

6  remaining sales proceeds, according to their rights to priority.   Unsecured Creditors with the

7  same priority share in proportion to the amount of their Allowed Claim in relationship to the

8  amount of total allowed unsecured Claims.

9        For the Court to be able to confirm the Plan, the Court must find that all Creditors who do

10  not accept the Plan will receive at least as much under the Plan as such holders would receive

11  under a Chapter 7 liquidation.  The Debtor maintains that this requirement is met here for the

12  following reasons:

13        1.      In a Chapter 7 case, a trustee is appointed and entitled to compensation from the

14  bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed,

15  10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not

16  in excess of $1 million, and 3% on all amounts over $1 million.   In this Case the trustee's

17  compensation and expenses is estimated to equal at least $255,000 (based on disbursements of

18  $5,000,000).  However, through the Plan, no trustee's compensation will be incurred.

19        2.      In addition, because the Chapter 7 trustee will replace the Professionals currently

20  employed by the Estate, the Chapter 7 trustee's new professionals will burden the Estate with

21  substantial fees to become familiar with the issues of this case. Although these fees are difficult

22  to estimate, they could result in additional administrative expenses of approximately $250,000

23  more to assist the Trustee in pursuit of the litigation claims of the Estate.   Based upon the

24  foregoing, the estimate for liquidation analysis for the Chapter 7 administrative expenses has

25  been conservatively estimated at $505,000 (Trustee's compensation and expenses plus the

26  compensation and expenses of his professionals).

27        3.      In a Chapter 7, the full amount of senior Secured Claims would have to be paid

28  before payment to the junior Unsecured Claims.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

105

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

Under the Best Interests Test, all that is required is for Creditors to receive as much as they would under Chapter 7 of the Bankruptcy Code.   Here, the Debtor believes the Best Interests Test has been met in that under the Plan, Creditors will receive as much as they would receive under a Chapter 7 liquidation.   Moreover, as set forth in the liquidation analysis below, under a Chapter 7 Liquidation, the funds available for Creditors would be less than under the Plan.

Below is a demonstration, in balance sheet format, that all Creditors will receive at least as much under the Plan as such Creditor would receive under a Chapter 7 liquidation.   The information regarding value of the assets has been provided by the Debtor based on its familiarity with the assets.

## ASSETS VALUED AT LIQUIDATION VALUES

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
| --- | --- |
| Cash on Hand  (estimated in DIP Accounts on January 1, 2016) | $40,000 |
| Interests in ASROP and subsidiaries<br>Liquidation Value reflects a 25% reduction of the estimated value of $5,000,000 which represents the lower range of the estimated net value of assets owned by ASROP and subsidiaries | $3,750,000 |
| Management advisory fees receivable<br>Liquidation Value reflects a 30% reduction in the total receivables of $100,000 | $70,000 |
| Proceeds from the sale of 2620/2630 Fountainview property held in Court Registry until resolution of litigation.<br>Scheduled value of $1,377,000.<br>Liquidation value reflects the a reduction of 70% due to the litigation impacting the proceeds but it could be worth $0 | $413,100 |
| Proof of Claim for $3,200,000 filed against ASR 2401 Fountainview, LP bankruptcy estate for unpaid advances. | $0 |
| Claims against affiliates<br>Liquidation Value reflects a 100% reduction of full amount owed of $433,987.26, as such value is already reflected in the $3,750,000 value for interest in ASROP and subsidiaries listed above | $0 |
| Intercompany obligations<br>Scheduled for Unknown Value | $Unknown |
| Possible claims against the Debtor's Directors and Officers insurance policy<br>Scheduled for Unknown Value | $Unknown |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| Litigation claims pending lawsuits in which the Debtor is a plaintiff or cross-claimant Scheduled for Unknown Value | $Unknown |
| Recovery From Post Confirmation Estate Claims | $Unknown |
| **Total Assets At Liquidation Value[14]** | $4,273,100 |
| **LESS LIABILITIES IN CHAPTER 7 CASE** | $.00 |
| Less recovery for Secured Creditors (Includes Disputed Claims) Secured Claims filed in the case total $1,706,314.22 but the Debtor and the Petitioners believe the Allowed Secured Claims will total approximately $500,000 to $1,500,000. | ($1,500,000.00) |
| Less Chapter 7 trustee's fees and expenses | ($505,000.00) |
| Less Chapter 11 Administrative Expenses and Gap Claim (Chapter 11 professionals, Clerk of the Court Fees and United States Trustee Quarterly Fees) | ($3,002,277.00) |
| Less Priority Non-Tax Claims (Includes Disputed Claims) | ($176,534.28) |
| Less Priority Tax Claims (Includes Disputed Claims) | ($463,617.70) |
| **(1) Balance for unsecured Claims** | $0 |
| **(2) Total amount of Unsecured Claims** (includes Disputed claims)Unsecured Claims filed total $94,061,591.12 but the Debtor and the Petitioners believe the Allowed General Unsecured Claims will total approximately $5 million to $15 million | $94,061,591.12 |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:[15]** | 0 % |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:** | **5% plus additional recoveries** |

Below is a demonstration, in tabular format, that all Creditors will receive at least as much under the Plan as such Creditor would receive under a Chapter 7 liquidation.

---

[14]  A liquidation value for recovery from any Post-Confirmation Estate Claims or other litigation is not included because given the nature and cost of such litigation, it is too difficult and speculative to estimate the benefit to the Estate.

[15]  Note: If this percentage is greater than the amount to be paid to the unsecured Creditors on a "present value basis" under the Plan, the Plan is not confirmable unless the Debtor obtains acceptance by every Creditor in an impaired class.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

107

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

| Claims and Classes | Payout Percentage Under the Plan | Payout Percentage in a Chapter 7 Liquidation |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | 100% | 73% |
| Classes 1-A though 1-M (Secured Claims) | 100% | 100% |
| Class 2 Priority Non-Tax Claims | 100% | 100% |
| Class 3-A General Unsecured Class | 5% | 0% |

Creditors receive more favorable treatment under the Plan. In a Chapter 7, the process of liquidating the assets would be prolonged due to the inherent nature of the Chapter 7 administrative procedures. As such, no distribution on Allowed Claims could be made until all litigation claims of the Estate had been reduced to cash and the Allowed Unsecured Claim of Creditors have been determined. Moreover, a Chapter 7 trustee could face difficulties in marketing and selling assets with which the trustee is not already familiar and in litigating against parties which the trustee is not already familiar. Payment to the holders of an Allowed General Unsecured Claims in Chapter 7 will likely take several years.

Under the Plan, holders of Allowed General Unsecured Claims will receive up to 5% of their Allowed Claim amount plus share in the distributions from the Liquidating Trust with the Dunham Funds as discussed herein. Thus, the holders of Allowed General Unsecured Claims are better off under the Plan than if this Case is converted to one under Chapter 7.

## C.    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses which are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied here by virtue of the cash on hand currently,

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

108

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1  funding from the financing provided by Gleicher as approved by the Court, and from the sale of

2  assets to be completed prior to the Effective Date.  To the extent the Estate does not have

3  sufficient funds to make all payments due on the Effective Date, the Dunham Funds will provide

4  the funds to do so subject to being repaid with first funds available into the Estate.

5      The second aspect considers whether the Debtor will have enough cash over the life of

6  the Plan to make the required Plan payments.  The Debtor contends it will have sufficient cash

7  over the life of the Plan to make the required payments as discussed above by virtue of the

8  Dunham Funds' willingness to subordinate its Allowed General Unsecured Claim until all other

9  Allowed General Unsecured Creditors receive at least 5% of their Allowed Claim or a Pro Rata

10  Share of $600,000, the Dunham Funds agreeing to fund the prosecution of any D&O Action, the

11  settlements to be reached with parties who have claims against the Debtor's subsidiaries, and

12  from the Debtor's Net Operating Income and Net Sale Proceeds after the Effective Date.

13  **D.    Exculpation**

14      The Exculpated Parties shall neither have, nor incur, any liability[16] to any entity for any

15  act taken or omitted to be taken in connection with, relating to, or arising out of, the Debtor's

16  Case, formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming,

17  or effecting the consummation of the Plan, the Disclosure Statement, the administration of the

18  Plan or the property to be distributed under the Plan or related to the issuance, distribution,

19  and/or sale of any security, or any contract, instrument, release, or other agreement or document

20  created or entered into in connection with the Plan; provided, however, that the foregoing shall

21  not affect the liability of any Person that otherwise would result from any such act or omission to

22  the extent such act or omission is determined by a Final Order to have constituted fraud, willful

23  misconduct, gross negligence, bad faith, self-dealing or breach of duty of loyalty.

24      **Notwithstanding the foregoing, nothing herein shall release the Post-Confirmation**

25  **Estate from its duties under the Plan.  This exculpation shall not apply to any claims**

26

27  [16]    Including liability arising under the Bankruptcy Code and non-bankruptcy law, and any
subordination, alter ego, indemnification or contribution theories of recovery, and interest

28  or other costs, penalties, legal, accounting and other professional fees and expenses, and
incidental, consequential and punitive damages payable to third parties.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**against Debtor's officers, directors, insiders or others arising from any act or omission in connection with, or arising out of their management of the Debtor prior to the Petition Date or since the Petition Date.**

**E.      Conditions Precedent to Confirmation**

Unless otherwise waived by the Debtor, conditions to confirmation of the Plan include entry of the Confirmation Order in a form acceptable to the Debtor that provides for, among other things, the following:  (1) Approval of all transactions, agreements and documents to be effected pursuant to the Plan; (2) Authorization of the Debtor to execute all documents reasonably necessary to effectuate the transfers contemplated by the Plan; and (3) a finding that the Plan complies with all applicable provisions of the Code including that the Plan was proposed in good faith.

**F.      Modification of the Plan**

The Debtor and the Petitioners may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Debtor, the Petitioners and/or the Liquidating Trustee may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Bankruptcy Court determines that a post-confirmation modification of the Plan is in the best interest of the Estate and the Creditors, even after substantial consummation of the Plan, then, notwithstanding the provisions of Section 1127(b) of the Bankruptcy Code, the Bankruptcy Court may authorize such modification of the Plan, after notice and a hearing, in such manner and under such conditions, as the Bankruptcy Court deems appropriate.

**G.      Post-Confirmation Status Reports**

Within 120 days of the entry of the order confirming the Plan, the Liquidating Trustee shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured Creditors, and those parties who have requested

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

110

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

special notice.   Further status reports shall be filed every 120 days and served on the same entities.

**H.     Post-Confirmation Conversion/Dismissal**

A Creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**I.     Termination of the Board and the Committee and Appointment of Oversight Committee**

Upon the Effective Date, the Board and the Committee shall be deemed to be dissolved with respect to the Debtor and its respective members shall be released and discharged from all further authority, duties, responsibilities and obligations related to the Case and under the Bankruptcy Code, except as otherwise provided by this Plan.  Upon the Effective Date, the Oversight Committee will be formed.  The Oversight Committee may monitor performance under the Plan, the administration of the Liquidating Trust and other duties by the Liquidating Trustee and may interact with the Liquidating Trustee to provide input and recommendations with respect to the administration of the Estate under the Plan.  The Liquidating Trustee shall use reasonable efforts to communicate with the Oversight Committee and seek its input in the administration of the Estate, but shall not be required to follow any recommendations or input received.  The Oversight Committee will not be compensated for their time or expenses and shall not be allowed to retain Professionals at the expense of the Estate.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

111

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

1    **J.    Substantial Consummation**

2        The Plan will be deemed substantially consummated under Bankruptcy Code sections

3    1101 and 1127(b) when the First General Unsecured Distribution is made.

4    **K.    Recommendation and Conclusion**

5        The Debtor believes that Plan confirmation and implementation are preferable to any

6    feasible alternative.   The Debtor urges parties who hold impaired Claims to vote to accept the

7    Plan by checking the box marked "accept" on their ballots and then to return the ballots as

8    directed in the Plan and Disclosure Statement.

9

10    Dated: April 18, 2016

11

12                                     **AMERICAN SPECTRUM REALTY, INC.**

13

14                                     J. Michael Issa
                                       Chief Restructuring Officer with Full Authority of
15                                     Chief Executive Officer

16    **SHULMAN HODGES & BASTIAN LLP**

17    /s/ James C. Bastian, Jr.

18    James C. Bastian, Jr.
      Attorneys for Petitioning Creditors D&A Daily
19    Mortgage Fund III, L.P.; D&A Semi-Annual Mortgage
      Fund III, L.P.; and D&A Intermediate-Term
20    Mortgage Fund III, L.P.

21    **WINTHROP COUCHOT P.C.**

22

23    Robert E. Opera
      Attorneys for American Spectrum Realty, Inc.,
24    the Debtor and Debtor in Possession

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

112

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

**J.     Substantial Consummation**

The Plan will be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b) when the First General Unsecured Distribution is made.

**K.     Recommendation and Conclusion**

The Debtor believes that Plan confirmation and implementation are preferable to any feasible alternative.  The Debtor urges parties who hold impaired Claims to vote to accept the Plan by checking the box marked "accept" on their ballots and then to return the ballots as directed in the Plan and Disclosure Statement.

Dated: April 18, 2016

AMERICAN SPECTRUM REALTY, INC.

J. Michael Issa
Chief Restructuring Officer with Full Authority of
Chief Executive Officer

**SHULMAN HODGES & BASTIAN LLP**

/s/ James C. Bastian, Jr.

James C. Bastian, Jr.
Attorneys for Petitioning Creditors D&A Daily
Mortgage Fund III, L.P.; D&A Semi-Annual Mortgage
Fund III, L.P.; and D&A Intermediate-Term
Mortgage Fund III, L.P.

**WINTHROP COUCHOT P.C.**

Robert E. Opera
Attorneys for American Spectrum Realty, Inc.,
the Debtor and Debtor in Possession

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA  92618

112

4936-001/16
Second Amended DS re American Spectrum Realty Inc clean-FILE COPY.docx

# EXHIBITS TO DISCLOSURE STATEMENT

**1      HISTORICAL FINANCIAL STATEMENT**

**2      PROJECTION FOR LIFE OF THE PLAN**

**3      UNSECURED CLAIMS**

**4      LIQUIDATING TRUST AGREEMENT**

# EXHIBIT 1

## Historical Financial Statements

American Spectrum Realty, Inc. and Operating Subsidiaries
## Combined Income Statement
Period = Jan 2015-Dec 2015
UNAUDITED

| | asmg | asri | asris | asrit | asrop | Total |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| THIRD PARTY MANAGMENT/LEASING REVENUE | | | | | | |
| Corporate Income - Misc | -21,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | -21,000.00 |
| TOTAL RENTAL REVENUE | -21,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | -21,000.00 |
| MISC PROPERTY INCOME | | | | | | |
| TOTAL MISC PROPERTY INCOME | -155,806.90 | 0.00 | -986.62 | -1,179.73 | 0.00 | -157,973.25 |
| TOTAL RENTAL REVENUE/PROPERTY INCOME | -176,806.90 | 0.00 | -986.62 | -1,179.73 | 0.00 | -178,973.25 |
| THIRD PARTY MGT/LEASING REVENUE | | | | | | |
| MANAGEMENT INCOME | | | | | | |
| TOTAL MANAGEMENT INCOME | -1,120,758.58 | 0.00 | 0.00 | 0.00 | 0.00 | -1,120,758.58 |
| INVESTMENT INCOME | | | | | | |
| TOTAL INVESTMENT INCOME | -58,309.48 | 0.00 | 0.00 | 0.00 | 0.00 | -58,309.48 |
| INSURANCE INCOME | | | | | | |
| TOTAL INSURANCE INCOME | 1,471.39 | 0.00 | -447,937.29 | 0.00 | 0.00 | -446,465.90 |
| TOTAL THIRD PARTY MANAGMENT/LEASING REVEI | -1,177,596.67 | 0.00 | -447,937.29 | 0.00 | 0.00 | -1,625,533.96 |
| Total Technology Income | 0.00 | 0.00 | 0.00 | -110,172.98 | 0.00 | -110,172.98 |
| **TOTAL INCOME** | **-1,354,403.57** | **0.00** | **-448,923.91** | **-111,352.71** | **0.00** | **-1,914,680.19** |
| **OPERATING EXPENSE** | | | | | | |
| REPAIR & MAINT (REIMB) | | | | | | |
| R&M Maintenance Supplies | 36.08 | 0.00 | 0.00 | 0.00 | 0.00 | 36.08 |
| TOTAL REPAIR & MAINT (REIMB) | 36.08 | 0.00 | 0.00 | 0.00 | 0.00 | 36.08 |
| UTILITIES (REIMB) | | | | | | |
| Sewer/Water | 65.98 | 0.00 | 0.00 | 0.00 | 0.00 | 65.98 |
| TOTAL UTILITIES (REIMB) | 65.98 | 0.00 | 0.00 | 0.00 | 0.00 | 65.98 |
| GENERAL & ADMIN (REIMB) | | | | | | |
| TOTAL GENERAL & ADMIN (REIMB) | 11,479.19 | 0.00 | 0.00 | 0.00 | 0.00 | 11,479.19 |
| TOTAL COMMON AREA EXPENSES (REIMBURSABLE | 11,581.25 | 0.00 | 0.00 | 0.00 | 0.00 | 11,581.25 |
| OTHER EXPENSES (NON-REIMBURSABLE) | | | | | | |
| REPAIR & MAINTENANCE | | | | | | |
| TOTAL REPAIR & MAINT | 6,012.75 | 0.00 | 0.00 | 0.00 | 0.00 | 6,012.75 |
| UTILITIES | | | | | | |
| TOTAL UTILITIES | 1,951.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,951.74 |
| PAYROLL | | | | | | |
| SALARIES | | | | | | |
| TOTAL SALARIES | 968,931.02 | 0.00 | 24,124.80 | 2,700.00 | 0.00 | 995,755.82 |
| PAYROLL BENEFITS | | | | | | |
| TOTAL PAYROLL BENEFITS | 513,703.05 | 0.00 | 0.00 | 0.00 | 0.00 | 513,703.05 |
| OTHER PAYROLL EXPENSES | | | | | | |
| TOTAL OTHER PAYROLL EXPENSES | 5,593.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,593.00 |
| TOTAL PAYROLL | 1,488,227.07 | 0.00 | 24,124.80 | 2,700.00 | 0.00 | 1,515,051.87 |
| FIRE/SECURITY | | | | | | |
| TOTAL FIRE/SECURITY | 177.31 | 0.00 | 0.00 | 0.00 | 0.00 | 177.31 |
| MARKETING | | | | | | |
| TOTAL MARKETING | 14,105.77 | 0.00 | 0.00 | 0.00 | 0.00 | 14,105.77 |
| OFFICE/ADMIN | | | | | | |
| TOTAL OFFICE/ADMIN | 398,690.90 | 0.00 | 1,258.79 | 299,318.30 | 2,100.40 | 701,368.39 |
| TAXES | | | | | | |
| TOTAL TAXES | 31,402.93 | 0.00 | 0.00 | 0.00 | 2,758.70 | 34,161.63 |
| INSURANCE | | | | | | |
| TOTAL INSURANCE | 40,793.18 | 108,669.00 | 810,979.70 | 0.00 | 90,877.86 | 1,051,319.74 |
| TOTAL OTHER EXPENSES (NON-REIMBURSABLE) | 1,981,361.65 | 108,669.00 | 836,363.29 | 302,018.30 | 95,736.96 | 3,324,149.20 |
| TOTAL OPERATING EXPENSE | 1,992,942.90 | 108,669.00 | 836,363.29 | 302,018.30 | 95,736.96 | 3,335,730.45 |
| **NET OPERATING (INCOME) LOSS** | **638,539.33** | **108,669.00** | **387,439.38** | **190,665.59** | **95,736.96** | **1,421,050.26** |
| OTHER INCOME & EXPENSE | | | | | | |
| INTEREST & OTHER | | | | | | |
| INTEREST | | | | | | |
| Interest - Mortgage | 0.00 | 26,977.75 | 0.00 | 0.00 | 0.00 | 26,977.75 |
| TOTAL INTEREST | 0.00 | 26,977.75 | 0.00 | 0.00 | 0.00 | 26,977.75 |
| EXPENSE & OTHER | | | | | | |
| OTHER EXPENSES | | | | | | |
| TOTAL OTHER EXPENSES | 354,382.37 | 1,028,638.06 | 3,485.53 | 323.07 | 70,513.70 | 1,457,342.73 |
| PUBLIC COMPANY EXPENSES | | | | | | |
| TOTAL PUBLIC CO EXPENSES | 0.00 | 9,002.93 | 0.00 | 0.00 | 4,367.00 | 13,369.93 |
| GAIN/LOSS | | | | | | |
| Gain/Loss on Sale of Asset | 0.00 | 0.00 | 0.00 | 0.00 | -77,720.22 | -77,720.22 |
| TOTAL GAIN/LOSS | 0.00 | 0.00 | 0.00 | 0.00 | -77,720.22 | -77,720.22 |
| Impairment Reserves | | | | | | 32,650,920.26 |
| TOTAL IMPAIRMENT RESERVES | | | | | 32,650,920.26 | 32,650,920.26 |
| **TOTAL OTHER INCOME & EXPENSE** | **354,382.37** | **1,064,618.74** | **3,485.53** | **323.07** | **32,648,080.74** | **34,070,890.45** |
| **NET (INCOME) LOSS** | **992,921.70** | **1,173,287.74** | **390,924.91** | **190,988.66** | **32,743,817.70** | **35,491,940.71** |
| **Total** | **992,921.70** | **1,173,287.74** | **390,924.91** | **190,988.66** | **32,743,817.70** | **35,491,940.71** |

# Exhibit 1

American Spectrum Realty, Inc. (asri)
## Comparative Fair Value Balance Sheets
Period = Dec 2014 and Dec 2015
UNAUDITED

| | 2014 | 2015 | General Unsecured Claims - Disputed |
|---|---|---|---|
| **ASSETS** | | | |
| CASH AND CASH EQUIVALENTS | | | |
| Cash - Operating Account | 0.00 | 5,517.05 | |
| Cash - WFB DIP | 0.00 | 44,554.55 | |
| TOTAL CASH AND CASH EQUIVALENTS | 0.00 | 50,071.60 | |
| OTHER ASSETS | | | |
| Prepaid Expense-Other | 2,252.61 | 0.00 | |
| TOTAL PREPAID ASSETS, NET | 2,252.61 | 0.00 | |
| I/C - ASR CORPORATE | | | |
| TOTAL I/C - ASR CORPORATE | 11,637.97 | 454,431.40 | |
| TOTAL OTHER ASSETS | 13,890.58 | 454,431.40 | |
| INVESTMENTS OTHER | | | |
| Investment - OP Units | 10,163,718.99 | 7,503,718.99 | |
| TOTAL OTHER INVESTMENTS | 10,163,718.99 | 7,503,718.99 | |
| TOTAL INVESTMENT | 10,163,718.99 | 7,503,718.99 | |
| **TOTAL ASSETS** | **10,177,609.57** | **8,008,221.99** | |
| **LIABILITIES & EQUITY** | | | |
| LIABILITIES | | | |
| NOTES PAYABLE | 0.00 | 700,000.00 | |
| TOTAL NOTES PAYABLE | 0.00 | 700,000.00 | |
| OTHER LIABILITIES | | | |
| ACCRUED LIABILITIES | | | |
| Secured Liabilities | 0.00 | 1,414,000.00 | |
| Gap Claims | 0.00 | 324,250.00 | |
| Priority Liabilities | 0.00 | 694,000.00 | |
| General Unsecured Liabilities | 0.00 | 13,140,000.00 | 78,860,000.00 |
| Accrued Professional Fees | 0.00 | 986,676.16 | |
| Accrued Interest Expense - Notes | 30,676.63 | 30,676.63 | |
| TOTAL ACCRUED LIABILITIES | 30,676.63 | 16,589,602.79 | 78,860,000.00 |
| OTHER MISC LIABILITIES | | | |
| Long term liability Series B Pfd. | 20,071,240.88 | 0.00 | |
| Long term liability Series C Pfd. | 1,539,978.60 | 0.00 | |
| TOTAL OTHER MISC LIABILITIES | 21,611,219.48 | 0.00 | |
| TOTAL OTHER LIABILITIES | 21,641,896.11 | 17,289,602.79 | |
| **TOTAL LIABILITIES** | **21,641,896.11** | **17,289,602.79** | **78,860,000.00** |
| **EQUITY & MINORITY INTEREST** | | | |
| Minority Int Liability - OP | 249,184.26 | 249,184.26 | |
| **TOTAL MINORITY INTEREST** | **249,184.26** | **249,184.26** | |
| CAPITAL | | | |
| TOTAL CAPITAL | 23,075,463.81 | 23,075,763.81 | |
| TOTAL ADDITIONAL PAID IN CAPITAL | 31,646,120.25 | 31,646,120.25 | |
| RETAINED EARNINGS | | | |
| Retained Earnings - Prior | -12,895,024.97 | -13,154,204.04 | |
| Retained Earnings | 4,005,074.23 | -15,572,250.00 | -78,860,000.00 |
| Current Period Profit (Loss) | -57,545,104.12 | -35,525,876.13 | |
| TOTAL RETAINED EARNINGS | -66,435,054.86 | -64,252,330.17 | -78,860,000.00 |
| **TOTAL EQUITY** | **-11,713,470.80** | **-9,530,446.11** | |
| **TOTAL EQUITY & MINORITY INTERE** | **-11,464,286.54** | **-9,281,261.85** | **-78,860,000.00** |
| **TOTAL LIABILITIES & EQUITY** | **10,177,609.57** | **8,008,340.94** | **-78,860,000.00** |

# Exhibit 1

## <u>EXHIBIT 2</u>

## Financial Projections

ASR, Inc and Operating Subsidiaries
**Budgeted Income Statement ( 24 months)**
Period = Jan 2016 – September 2016
UNAUDITED

| | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **- INCOME** | | | | | | | | | | | | |
| - MISC PROPERTY INCOME | | | | | | | | | | | | |
| Miscellaneous Income | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 |
| TOTAL MISC PROPERTY INCOME | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 |
| TOTAL RENTAL REVENUE/PROPERTY INCOME | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 |
| - MANAGEMENT INCOME | | | | | | | | | | | | |
| Asset Management Fee Income | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 | 3,049.17 |
| Property Management Fee Revenue-Residential-Third Party | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 | 3,179.14 |
| Management Fee Revenue-Storage-Third Party | 32,555.19 | 32,555.19 | 28,055.19 | 28,055.19 | 28,055.19 | 28,055.19 | 23,255.19 | 23,255.19 | 23,255.19 | 23,255.19 | 23,255.19 | 23,255.19 |
| Management Termination Fee Revenue | 35,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Property Management Fee Revenue-Commercial-Third Party | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 15,134.57 | 500,000.00 |
| TOTAL MANAGEMENT INCOME | 88,918.07 | 53,918.07 | 49,418.07 | 49,418.07 | 49,418.07 | 49,418.07 | 44,618.07 | 44,618.07 | 44,618.07 | 44,618.07 | 44,618.07 | 544,618.07 |
| - INVESTMENT INCOME | | | | | | | | | | | | |
| Investment Income - Other | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| TOTAL INVESTMENT INCOME | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| - INSURANCE INCOME | | | | | | | | | | | | |
| Renters Insurance Income | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 |
| TOTAL INSURANCE INCOME | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 | 33,821.07 |
| TOTAL THIRD PARTY MANAGMENT/LEASING REVEN | 124,739.14 | 89,739.14 | 85,239.14 | 85,239.14 | 85,239.14 | 85,239.14 | 80,439.14 | 80,439.14 | 80,439.14 | 80,439.14 | 80,439.14 | 580,439.14 |
| Computer Support Charges - Storage | 11,983.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| MPLS Network - Telecommunications | 45,010.08 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 |
| Total Technology Income | 56,993.33 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 |
| **TOTAL INCOME** | **183,482.47** | **99,989.14** | **95,489.14** | **95,489.14** | **95,489.14** | **95,489.14** | **90,689.14** | **90,689.14** | **90,689.14** | **90,689.14** | **90,689.14** | **590,689.14** |
| | | | | | | | | | | | | |
| **- OPERATING EXPENSE** | | | | | | | | | | | | |
| - GENERAL & ADMIN (REIMB) | | | | | | | | | | | | |
| Postage & Delivery | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| Office Supplies | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 |
| TOTAL GENERAL & ADMIN (REIMB) | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 | 225.00 |
| - OTHER EXPENSES (NON-REIMBURSABLE) | | | | | | | | | | | | |
| - REPAIR & MAINTENANCE | | | | | | | | | | | | |
| Storage Rental (Furnishings) | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 |
| TOTAL REPAIR & MAINT | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 |
| - UTILITIES | | | | | | | | | | | | |
| Internet Service | 246.79 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| TOTAL UTILITIES | 246.79 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| - PAYROLL | | | | | | | | | | | | |
| - SALARIES | | | | | | | | | | | | |
| Payroll - General | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | 192,000.00 |
| Salary-On-site Charge | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 | -160,000.00 |
| Consulting Fees | 2,050.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 |
| Consulting Fees - IT | 2,000.00 | 2,000.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL SALARIES | 36,050.00 | 38,100.00 | 36,500.00 | 36,100.00 | 36,100.00 | 36,100.00 | 36,100.00 | 36,100.00 | 36,100.00 | 36,100.00 | 36,100.00 | 36,100.00 |
| - PAYROLL BENEFITS | | | | | | | | | | | | |
| Work Comp | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 | 1,818.58 |
| Health Insurance | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 | 23,391.44 |
| TOTAL PAYROLL BENEFITS | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 | 25,210.02 |
| TOTAL PAYROLL | 61,260.02 | 63,310.02 | 61,710.02 | 61,310.02 | 61,310.02 | 61,310.02 | 61,310.02 | 61,310.02 | 61,310.02 | 61,310.02 | 61,310.02 | 61,310.02 |
| - OFFICE/ADMIN | | | | | | | | | | | | |
| Rent - Houston | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 | 8,426.00 |
| Rent - Irvine | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 | 2,885.50 |
| Telephone/DSL | 19,500.00 | 15,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| TOTAL OFFICE/ADMIN | 30,811.50 | 26,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 | 21,311.50 |
| - TAXES | | | | | | | | | | | | |
| Taxes - Other | 0.00 | 0.00 | 3,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL TAXES | 0.00 | 0.00 | 3,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| - INSURANCE | | | | | | | | | | | | |
| Insurance – D&O/E&O | 0.00 | 0.00 | 0.00 | 55,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Insurance Program Expense | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 |
| TOTAL INSURANCE | 22,787.53 | 22,787.53 | 22,787.53 | 77,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 | 22,787.53 |
| TOTAL OTHER EXPENSES (NON-REIMBURSABLE) | 115,530.84 | 113,084.05 | 109,684.05 | 161,084.05 | 106,084.05 | 106,084.05 | 106,084.05 | 106,084.05 | 106,084.05 | 106,084.05 | 106,084.05 | 106,084.05 |
| **TOTAL OPERATING EXPENSE** | 115,755.84 | 113,309.05 | 109,909.05 | 161,309.05 | 106,309.05 | 106,309.05 | 106,309.05 | 106,309.05 | 106,309.05 | 106,309.05 | 106,309.05 | 106,309.05 |
| | | | | | | | | | | | | |
| **NET OPERATING INCOME (LOSS)** | **67,726.63** | **-13,319.91** | **-14,419.91** | **-65,819.91** | **-10,819.91** | **-10,819.91** | **-15,619.91** | **-15,619.91** | **-15,619.91** | **-15,619.91** | **-15,619.91** | **484,380.09** |
| - OTHER INCOME & EXPENSE | | | | | | | | | | | | |
| Proceeds from sale of assets | | 2,400,000.00 | | 260,000.00 | | 1,700,000.00 | | | | | | 1,000,000.00 |
| Avoidance Claims | | | | | | | | | | | | 1,000,000.00 |
| - OTHER INCOME | 0.00 | 2,400,000.00 | 0.00 | 260,000.00 | 0.00 | 1,700,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000,000.00 |
| - INTEREST & OTHER | | | | | | | | | | | | |
| - INTEREST | | | | | | | | | | | | |
| Interest - Mortgage | 4,666.66 | 4,666.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL INTEREST | 4,666.66 | 4,666.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| - OTHER EXPENSES | | | | | | | | | | | | |
| Bank Fee/Charges | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 |
| Broker of Record Fee | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Legal Fees – See Note 4 | 100,000.00 | 100,000.00 | 100,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | | | |
| Other Professional Services – See Note 5 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| TOTAL OTHER EXPENSES | 126,050.00 | 126,050.00 | 126,050.00 | 76,050.00 | 76,050.00 | 76,050.00 | 76,050.00 | 76,050.00 | 76,050.00 | 26,050.00 | 26,050.00 | 26,050.00 |
| - PUBLIC COMPANY EXPENSES | | | | | | | | | | | | |
| Transfer Agent Costs – See Note 6 | 1,073.00 | 1,073.00 | 1,073.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL PUBLIC CO EXPENSES | 1,073.00 | 1,073.00 | 1,073.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL OTHER INCOME & EXPENSE** | **-131,789.66** | **2,268,210.34** | **-127,123.00** | **183,950.00** | **-76,050.00** | **1,623,950.00** | **-76,050.00** | **-76,050.00** | **-76,050.00** | **-26,050.00** | **-26,050.00** | **1,973,950.00** |
| | | | | | | | | | | | | |
| **NET INCOME (LOSS)** | **-64,063.03** | **2,254,890.43** | **-141,542.91** | **118,130.09** | **-86,869.91** | **1,613,130.09** | **-91,669.91** | **-91,669.91** | **-91,669.91** | **-41,669.91** | **-41,669.91** | **2,458,330.09** |

SEE NOTES ON PAGE 2

# Exhibit 2

| Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Jun-17 | Jul-17 | Aug-17 | Sep-17 | 10/82017 | Nov-17 | Dec-17 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35,912.11 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35,912.11 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 36,590.04 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,149.68 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 316,862.28 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 535,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 181,614.84 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,108,216.84 |
| 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 6,000.00 |
| 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 6,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 405,852.84 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 405,852.84 |
| 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,541,069.68 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,983.25 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 138,510.08 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150,493.33 |
| **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **250.00** | **1,712,563.01** |
| 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 1,800.00 |
| 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 2,100.00 |
| 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 3,900.00 |
| 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 3,825.00 |
| 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 3,825.00 |
| 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 5,996.79 |
| 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 5,996.79 |
| 192,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 2,686,000.00 |
| -160,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2,080,000.00 |
| 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 0.00 | 71,150.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,400.00 |
| 34,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 681,550.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21,822.96 |
| 23,391.44 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 359,088.72 |
| 23,391.44 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 380,911.68 |
| 57,391.44 | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 1,062,461.68 |
| 8,426.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 137,038.00 |
| 2,885.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 37,511.50 |
| 10,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 150,000.00 |
| 21,311.50 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 324,549.50 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,200.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,200.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 273,450.36 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 328,450.36 |
| 79,377.94 | 30,675.00 | 30,675.00 | 30,675.00 | 30,675.00 | 30,675.00 | 25,675.00 | 25,675.00 | 25,675.00 | 25,675.00 | 25,675.00 | 25,675.00 | 1,728,483.33 |
| 79,377.94 | 30,775.00 | 30,775.00 | 30,775.00 | 30,775.00 | 30,775.00 | 25,775.00 | 25,775.00 | 25,775.00 | 25,775.00 | 25,775.00 | 25,775.00 | 1,732,383.33 |
| **-79,227.94** | **-30,525.00** | **-30,525.00** | **-30,525.00** | **-30,525.00** | **-30,525.00** | **-25,525.00** | **-25,525.00** | **-25,525.00** | **-25,525.00** | **-25,525.00** | **-25,525.00** | **-26,195.32** |
| | | | | | | | | | | | | 5,340,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9  1,000,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10  1,500,000.00 | 8,860,000.00 |
| | | | | | | | | | | | | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,333.32 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,333.32 |
| 1,050.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 16,400.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,000.00 |
| 20,000.00 | 20,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 380,000.00 |
| 21,050.00 | 20,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 1,056,400.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,219.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,219.00 |
| **-21,050.00** | **-20,250.00** | **-10,250.00** | **-10,250.00** | **-10,250.00** | **989,750.00** | **-10,250.00** | **-10,250.00** | **-10,250.00** | **-10,250.00** | **-10,250.00** | **1,489,750.00** | **6,428,952.32** |
| **-100,277.94** | **-50,775.00** | **-40,775.00** | **-40,775.00** | **-40,775.00** | **959,225.00** | **-35,775.00** | **-35,775.00** | **-35,775.00** | **-35,775.00** | **-35,775.00** | **1,464,225.00** | **7,764,852.36** |

**NOTES & ASSUMPTIONS**

1-Assumes DIP loan is repaid from sale of Loop 1604
2-Assumes sales of Centennial Park and Encinitas land close in April 2016
3-Assume saless of Sabo Rd and Houston S. Mason close in July 2016
4-Legal fees include bankruptcy counsel
5-Professional fees include CRO
6-Transfer agent costs stop upon effective date of Plan
7-Assumes sale of Verdugo property closes in December 2016
8-Assumes sale of management contracts and litigation recoveries close in December 2016
9-Assumes avoidance recoveries occur in June 2017
10-Assumes D&O recoveries occur in December 2017
11-Distributions and loan repayments are not reflected on this report.

# Exhibit 2

# EXHIBIT 3

# General Unsecured Claims

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| American Spectrum Realty Inc., a Maryland Co | | | | | | | | | | |
| Robert E Opera | $97,180.39 | | | | | $0.00 | $97,180.39 | $0.00 | $0.00 | |
| United States Trustee (SA) | | | | | | | | | | |
| Dennis Connoly, Trustee and Alston & Bird LLP | $123,503.53 | Disputed | Request for Payment of Admin Claim, Docket 134  Also see Claims 73 and 74 filed 9/25/2015 | 5/22/2015 | $186,120.67 | | $186,120.67 | | | |
| Navagant Consulting Inc | $62,617.14 | Disputed | See Docket 134, request for Payment of Admin Claim by Former Trustee  Also see Claim 75 filed 9/25/2015 | 5/22/2015 | $62,617.14 | | Duplicate | | | |
| D&A Daily Mortgage Fund III, LP D&A Intermediate-Term Mortgage Fund III, L P D&A Semi-Annual Mortgage Fund III, L P | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| D&A Intermediate-Term Mortgage Fund III, L P | | | 64 | 9/3/2015 | $13,621,894.97 | $0.00 | $0.00 | $0.00 | $13,621,894.97 | Financing claim |
| D&A Daily Mortgage Fund III, LP | | | 65 | 9/3/2015 | $1,379,000.49 | $0.00 | $0.00 | $0.00 | $1,379,000.49 | Financing claim |
| D&A Semi-Annual Mortgage Fund III, L P | | | 66 | 9/3/2015 | $7,123,245.09 | $0.00 | $0.00 | $0.00 | $7,123,245.09 | Financing claim |
| Kimberly A Walsh, Asst. Attorney General Texas Comptroller of Public Accounts | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Brian P Holmes Esq Gerson Law Firm APC | | | | | | | | | | |
| Jay M Sakalo Esq Bilzin Sumberg Baena Price & Axelrod LLP | | | | | | | | | | |
| INTERNAL REVENUE SERVICE | $351,229.21 | Disputed | 7 | Claim 7 filed 5/27/2015 filed in Case No. 8:15-bk-10721-SC for $43,071.42  Claim 4 filed 4/17/2015 filed in Case No. 8:15-bk-11397-SC, for $43,823.66 | $43,071.42 | $0.00 | | $31,980.03 | $11,091.39 | Schedule D indicates Texas tax liens filed 3/18/2014, filing number 140008517711. |
| Internal Revenue Service | | | | | | | | | | |
| Internal Revenue Service | | | | | | | | | | |
| Internal Revenue Service | | | | | | | | | | |
| Indiana Department of Revenue | | | 5 | Claim 5 filed 4/21/2015 in Case No. 8:15-bk-11397-SC | $86,687.34 | $42,987.34 | $0.00 | $43,700.00 | $0.00 | Claim filed in Case No. 8:15-bk-11397-SC. |
| U.S. Securities and Exchange Commission | | | | | | | | | | |
| U.S. Securities and Exchange Commission | | | | | | | | | | |
| Alston & Bird LLP | | | | | | | | | | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Employment Development Dept. | $41,768.95 | Disputed | 15 | 7/8/2015 | $69,194.56 | $0.00 | $0.00 | $53,021.04 | $16,173.52 | Scheduled D indicates California state tax lien filed 3/12/2014.  Listed on Schedule E as well for same amount.  Proof of Claim does not assert a Secured Classification. |
| Franchise Tax Board | | | | | | | | | | |
| Franchise Tax Board | $353,912.11 | Disputed | 11 | Claim 11 filed 6/3/2015 in Case No. 8:15-bk-10721-SC for $382,581.96; Amended 2/22/2015 for $383,401.95  Claim 6 filed 5/4/2915 in Case No. 8:15-bk-11397-SC for $386,814.96 | $383,401.95 | $0.00 | | $317,012.85 | $66,389.10 | Schedule D indicates California state tax lien filed 4/3/2014 for $912.11.  Listed on Schedule E twice: for $912.11 and $353,000. |
| Indiana Department of Revenue | | | 5 | Claim 5 filed 4/21/2015 in Case No. 8:15-bk-11397-SC | $86,687.34 | $42,987.34 | $0.00 | $43,700.00 | $0.00 | Claim filed in Case No. 8:15-bk-11397-SC. |
| Securities & Exchange Commission | | | | | | | | | | |
| 5850 Sierra Holdings, LLC | $426.92 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| A&E The Graphics Complex | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| A-1 Delivery Services, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| AP Gas & Electric Energy Solutions | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| APFS LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| AT&T | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| AT&T | $637.18 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| AT&T | $44.96 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| AT&T | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| AT&T Mobility | $15,940.98 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| AT&T Mobility II LLC | | | 19 | 7/15/2015 | $5,792.79 | $0.00 | $0.00 | $0.00 | $5,792.79 | |
| Absolute Copier Services Inc. | $0.00 | | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Advanced Office Services Imaging Plus | $496.44 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Alabama Department of Revenue | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Alexander's Mobility Services | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Allen Matkins Leck Gamble Mallory & Natsis LLP | $837,164.12 | Disputed | 79 | 9/29/2015 | $1,827,738.76 | $0.00 | $0.00 | $0.00 | $1,827,738.76 | Legal services for various entities |
| Alliant Insurance Services, Inc. | $26,959.50 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Alvin J Meyers | | | 25 | 7/28/2015 | $549,880.00 | $0.00 | $0.00 | $0.00 | $549,880.00 | Claim for investment in College Park TIC 24 |
| American Express | | | | | | | | | | |
| American Express Travel Related Services Company, Inc. | $28,437.44 | | 8 | 5/29/2015 | $39,932.63 | $0.00 | $0.00 | $0.00 | $39,932.63 | |
| American Spectrum | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Schedule F indicates intercompany obligations, unknown and subject to setoff. |
| American Spectrum Realty Mangement LLC | $2,125.14 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| American Spectrum Management Group Inc.-HRA | | | | | | | | | | |
| American Spectrum Mgmt Group-FSA | | | | | | | | | | |
| American Spectrum Realty Mgmt LLC | $229.81 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| American Spectrum REIT 1, Inc. | $41,254.26 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| American Spectrum Reality, Inc. | | | | | | | | | | |
| Anderson Commercial Plumbing | $417.50 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Andrew Taylor | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Angelina Kingerski | | | 67 | 9/4/2015 | $15,725.00 | $0.00 | $0.00 | $12,475.00 | $3,250.00 | Claim for wages.  Claimant appears to have used an outdated proof of claim form and only asserted $11,725 as a Priority Non-Tax Claim (should be increased to $12,475, and the General Unsecured Claim adjusted accordingly.) Under the Plan, if the Claim is allowed, the Priority Non-Tax Claim shall be increased to $12,475, with the balance of $3,250 to be treated as a General Unsecured Claim. |
| Angus Systems Group Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Argus Software, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Art Sign Works, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Assurant-American Bankers Insurance Co. | $60.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Atrium Irvine, LLC | $2,159.34 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| B & B Graphics | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| BAK Farms LTD an Iowa corporation | | | 36 | 7/28/2015 | $129,800.00 | $0.00 | $0.00 | $0.00 | $129,800.00 | Claim for investment in College Park TIC 23 LLC |
| Bammelbelt, L.P. and STAV4 Partners, LLC | $30,130.50 | Disputed | 9 | 5/29/2015 10/6/2015 (Amended) | $331,349.32 | $0.00 | $0.00 | $0.00 | $331,349.32 | Claim based on Settlement Agreement. Claim transferred to William J. Carden. |
| Bammelbelt, LP | | | | | | | | | | |
| Bank Of Houston | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Schedule D indicates Texas UCC financing statement filed 8/8/2007, filing number 70026952374.  Both Schedule D and F indicate amount owed of $.00. |
| Barry, Gardner & Kincannon, APC | $11,524.67 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Basden & IVIE/ Elizabeth Basden | | | | | | | | | | |
| Benedetto Bongiorno CPA, CRE | | | | | | | | | | |
| Bowne Printing | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | | |
| Breen's Florist | $45.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Brian P. Cweren/The Cweren Law Firm | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | | |
| Broad and Cassel Attorneys at Law | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Broadridge ICS, Inc. | $4,367.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Business Wire, A Corporation | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| C & S Janitorial Services, Inc. | $3,267.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| CFO Synergies | $5,337.50 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Casa Bandera Investors, LLC | | | 216 Withdrawn Per Docket 351 | 10/7/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | Asserts secured classification based on a Judgment against American Spectrum Realty Management, LLC and others. CLAIM WITHDRAWN |
| Casa Bandera TIC 13, LLC | | | 218 Withdrawn Per Docket 352 | 10/7/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | Asserts secured classification based on a Judgment against American Spectrum Realty Management, LLC and others. CLAIM WITHDRAWN |
| Chung Hun Song and Soonia Song | | | 39 | 7/28/2015 | $315,060.00 | $0.00 | $0.00 | $0.00 | $315,060.00 | Claim for investment in College Park TIC 20 LLC |
| CIGNA HealthCare | $242,551.54 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Cigna Health and Life Insurance Company | | | 22 | 7/27/2015 | $136,265.52 | $0.00 | $40,911.88 | $95,353.64 | | Asserts priority claim of $95,353 under 507(a)(5) (contributions to employee benefit plan within 180 days of petition date) and Gap Claim of $40,911.88 under 507(a)(3). |
| CIT | $1,751.66 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| CIT | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| CIT Finance LLC | | | 16 | 7/13/2015 | $40,841.13 | $0.00 | $0.00 | $0.00 | $40,841.13 | Equipment lease.  Lease contract is with American Spectrum Realty Management LLC |
| CT Corporation | $517.80 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Capstone Realty Partners, LLC | $208,373.00 | Disputed | 87 | 10/5/2015 | $176,675.00 | $0.00 | $0.00 | $0.00 | $176,675.00 | Services performer - consulting. |
| Carr, Riggs, & Ingram, LLC | $578,237.82 | Disputed | 9 | Claim 9 filed 5/11/2015 in Case No. 8:15-bk-11397-SC | $327,630.94 | $0.00 | $0.00 | $0.00 | $327,630.94 | |
| Christina Minshew Lewis/Lewis & Barnes | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Tremaine Enterprises Inc c/o Christopher Murray Diamond McCarthy LLP | | | 54 | 8/17/2015 | $75,000.00 | $0.00 | $0.00 | $0.00 | $75,000.00 | Claim states amount of "at least $75,000, full amount cannot be determined without discovery." Claim based on breach of contract and other causes of action related to Claimnts failure to be paid for its insurance claims consulting and appraisal services. Claims are against American Spectrum Realty, Inc. |
| CoStar Realty Information, Inc. | $15,654.99 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Coleman Grodin & Evall LLP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | |
| Comcast Corporation | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | |
| Computershare Inc | | | 61 | 8/24/2015 | $23,610.50 | $0.00 | $0.00 | $0.00 | $23,610.50 | Claims based on services performed (stock transfer agent) |
| Concentra/Occupational Health | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | |
| Corporation Service Company | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | |
| County of Orange | $1,298.46 | Disputed | 3 Amended 1/22/2016 | Claim 3 on 3/23/2015 in Case No. 8:15-bk-10721-SC (Amended 1/6/2016) Claim 2 on 3/26/2015 in Case No. 8:15-bk-11397-SC | $1,454.72 | $0.00 | | $1,454.72 | $0.00 | Business assessments for 2015 of $1,454.72. Asserts priority claim under Code Section 507(8)(a). |
| County of Orange | | | | | | | | | | |
| COX COMMUNICATIONS | $132.34 | Disputed | | | | $0.00 | | | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| COX COMMUNICATIONS | | | | | | | | | | |
| Craig A. Bernstein, Attorney | $800.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Crown Services | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Crown Energy Services, Inc. and Crown Building Maintenance, Inc. | | | 124 | 10/7/2015 | $283,923.25 | $283,923.25 | $0.00 | $0.00 | $0.00 | Asserts a secured claim arising under a Security Agreement and Stipulated Judgment between "American Spectrum Management Group, Inc. and Seventy Seven, LLC (collectively Debtors) and Crown Engergy Services, Inc. and Crown Building Maintenance, Inc. (collectively Secured Parties) |
| Cynthia Gudde, (Personal Representative and | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| D&A Intermediate Term Mrtg III | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| D&A Semi-Annual Mtg Fund III, LP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| D&S Properties LLC Attn Sebastian Monastero | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| DG3 North America, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| DTN Holdings, LLC | $5,250.00 | Disputed | 223 | 10/7/2015 | $54,661.23 | $0.00 | $0.00 | $0.00 | $54,661.23 | Claim based on Final Judgment in Cause No. 2012-07131, 151st Judicial District Court of Harris County, TX |
| Dahill Office Technology Corp | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Daniel Adam Sprin/Dentons US, LLP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Daniel John Sheridan/Stark & Stark | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Dansk ASR Investments LLC | | | 77 | 9/29/2015 and 9/30/2015 | $2,281,144.12 | $0.00 | $0.00 | $0.00 | $2,281,144.12 | Repayment of loan |
| Houston SouthPro Restoration Services, Inc. c/o D.J. Seidel | $0.00 | Disputed | 213 | 10/7/2015 | $22,105.46 | $0.00 | $0.00 | $0.00 | $22,105.46 | Contract claim - services performed. |
| JVB Enterprises, Inc. c/o D.J. Seidel | $0.00 | Disputed | 214 | 10/7/2015 | $74,708.83 | $0.00 | $0.00 | $0.00 | $74,708.83 | Claim based on sworn account, contract claim, services performed. |
| David Brownell Wheless | $43,429.59 | Disputed | 171 | 10/6/2015 | $57,430.00 | $0.00 | $0.00 | $0.00 | $57,430.00 | Claim based on services performed (board member compensation) |
| David Brownell Wheless | | | 172 | 10/6/2015 | $35,000.00 | $0.00 | $0.00 | $0.00 | $35,000.00 | Claim based on director indemnity |
| David Lawrence Rosenblatt | | | 41 | 7/29/2015 | $657,260.00 | $0.00 | $0.00 | $0.00 | $657,260.00 | Claim for investment in College Park TIC 18 LLC |
| Deutsche Bank Trust Company Americas at Trustee ** | | | 155 | 10/7/2015 | $1,933,855.15 | $0.00 | $0.00 | $0.00 | $1,933,855.15 | Loan guarantee related to promissory note between C-III Commerical Mortgage LLC (original lender) and Sabo Road Acquistions, LP (borrower). |
| Deutsche Bank Trust Company Americas at Trustee ** | | | 157 | 10/7/2015 | $2,906,465.33 | $0.00 | $0.00 | $0.00 | $2,906,465.33 | Loan guarantee related to promissory note between C-III Commerical Mortgage LLC (original lender) and Attic Self Storage-Blanco, L.P. and Attic Self Storage-Laredo, L.P. (borrower). |
| Deutsche Bank Trust Company Americas at Trustee ** | | | 160 | 10/7/2015 | $2,041,653.81 | $0.00 | $0.00 | $0.00 | $2,041,653.81 | Loan guarantee related to promissory note between C-III Commerical Mortgage LLC (original lender) and Sabo Road Acquistions, LP (borrower). |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Dinosaur Petroleum a California corporation | | | 32 | 7/28/2015 | $273,760.00 | $0.00 | $0.00 | $0.00 | $273,760.00 | Claim for investment in College Park TIC 6 LLC |
| Directory One, Inc. | $639.60 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| DLA Piper LLP (US) | | | 51 | 8/11/2015 | $6,723.00 | $0.00 | $0.00 | $6,723.00 | $0.00 | Asserts priority pursuant to Bankruptcy Code Section 502(f) (services rendered after the involuntary filing but before entry of the order for relief) (invoice dated 6/3/2015). Actual invoice not attached to the Proof of Claim. |
| DLA Piper LLP (US) | | | 52 | 8/11/2015 | $33,144.50 | $0.00 | $0.00 | $0.00 | $33,144.50 | Invoices dates 12/5/2014, 2/28/2015 and 3/31/2015.  Actual invoices not attached to the Proof of Claim. |
| Don Sumners, CPA, RTA | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Donovan & Watkins, LP | $45,453.94 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Douglas A. Daniels/Daniels & Gentle, LLP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| DreamHost PMB # 257 | $87.60 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Dunham Trust Company, Trustee of the Balgrosky Hinshaw Children's Trust | | | 69 | 9/15/2015 | $3,457,576.50 | $0.00 | $0.00 | $0.00 | $3,457,576.50 | Guarantee of loan made by claimant to American Dunham Properties LLC. |
| EEPB, P.C. | $55,500.00 | Disputed | 10 | Claim 10 filed 7/20/2015 in Case No. 8:15-bk-11397-SC | $55,500.00 | $0.00 | $0.00 | $0.00 | $55,500.00 | |
| Earth Link Business | $50,898.85 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Earthlink Business fdba DeltaCom | | | 1 | 3/18/2015 | $37,577.33 | $0.00 | $0.00 | $0.00 | $37,577.53 | Proof of Claim filed in Case No. 8:15-bk-11397-SC. |
| Earthlink Business fdba DeltaCom | | | 238 | 2/5/2016 | $54,954.31 | $0.00 | $0.00 | $0.00 | $54,954.31 | Proof of Claim Filed in Case No. 8:15-bk-10721-SC. |
| Earthlink Business fdba DeltaCom | | | 239 | 4/5/2016 | $191,460.82 | $0.00 | $0.00 | $191,460.82 | $0.00 | Asserts Administrative Expense Claim |
| Easterday Hunter Corporation dba Easterday Building Maintenance | $0.00 | Disputed | 21 | 7/28/2015 | $21,347.48 | $0.00 | $0.00 | $0.00 | $21,347.48 | Claim for judgment against American Spectrum Realty Management LLC and not the Debtor. |
| Edward Hernandez III/Holt Mynatt Martinez P. | $1,129,000.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Edward Jason Dennis/Lynn Tillotson, etc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Equity International Services | $9,244.01 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Equity International Services, LLC dba SAGE Insurance Servicing | | | 12 | 6/12/2015 | $19,828.39 | $0.00 | | $0.00 | $19,828.39 | |
| Evergreen Income & Growth REIT, Inc. | $15,663.19 | Disputed | 167 | 10/7/2015 | $138,000.00 | $0.00 | $0.00 | $0.00 | $138,000.00 | Claim based on promissory note - no copy of the note is attached.  Asserts $138,000 plus interest. |
| Evergreen International Funds, Ltd. | | | 161 | 10/7/2015 | $14,200.00 | $0.00 | $0.00 | $0.00 | $14,200.00 | Loan |
| The Faubus Firm, LLP (fka Faubus Keller, LLP) | $500,000.00 | Disputed | 227 | 10/7/2015 | $369,283.35 | $0.00 | $0.00 | $0.00 | $369,283.35 | Claim for legal services and expenses incurred on behalf of ASR, Inc. |
| FedEx | $2,137.33 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Federal Express Corporation | $2,090.83 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| First American Title Company, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| First Insurance Funding Corporation | $201,354.28 | Disputed | 169 | 10/6/2015 | $4,300.66 | $4,300.66 | $0.00 | $0.00 | $0.00 | Premium Finance Agreement.  Asserts secured claim pursuant to Cal. Fin. Code Section 18591. |
| First Insurance Funding Corporation | | | 170 | 10/6/2015 | $97,729.01 | $0.00 | $0.00 | $0.00 | $97,729.01 | Premium Finance Agreement.  Asserts priority for contribution to employee benefit plan under Section 507(a)(5) but does not state amount entitled to priority. |
| Florida Department of Revenue | $1,872.59 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed.  Listed on Schedule E and F for same amount. |
| Fred S Beaton Revocable Trust Dated March 30 1987 | | | 35 | 7/28/2015 | $601,800.00 | $0.00 | $0.00 | $0.00 | $601,800.00 | Claim for investment in College Park TIC 10 LLC |
| Foliofn Investments, Inc. | $10.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Ford & Harrison LLP | $3,835.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Foxborough Business Park | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| France Publications, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Fred Wahrlich/Munsch Hardt Kopf & Harr, P.C. | $240,000.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Frederick J Herbert III | $5,867.20 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Furniture R&R, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| G&C Technical Services, LLC | $250.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Gainer Donnelly & Desroches | $101,452.66 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Gainer Donnelly & Desroches | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Galardi Group Franchise & Leasing | $39,534.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Galardi Group, Inc. | | | 225 | 10/7/2015 | $39,534.00 | $0.00 | $0.00 | $0.00 | $39,534.00 | Unpaid rent under sublease for real property located at 7700 Irvine Center Drive, Irvine, CA |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Gary Langendoen | | | 217 | 10/7/2015 | $83,250.00 | $0.00 | $0.00 | $0.00 | $83,250.00 | Claim based on share of Creditor's distribution alleged to be taken by Debtor from partnership, Sabo Road Acquistions, LP. |
| George R. Anderson | $750.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| GoDaddy.com, Inc. | $434.75 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Great American Business Products | $19,717.63 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Greg McAndrews & Associates | $2,182.97 | Disputed | 84 | 10/5/2015 | $106,745.23 | $0.00 | $0.00 | $0.00 | $106,745.23 | Contract for services provided under letter agreement with American Spectrum Realty, Inc. |
| Gosselin Plaza Inc a New Hampshire corporation | | | 47 | 7/29/2015 | $633,660.00 | $0.00 | $0.00 | $0.00 | $633,660.00 | Claim for investment in College Park TIC 26 LLC |
| GSMS 2004-GG2 Phantom Road, L.L.C. a Missouri limited liability company | | | 85 | 10/5/2015 | $865,430.48 | $0.00 | $0.00 | $0.00 | $865,430.48 | Claim for money loaned, guaranty, final judgment. |
| Hallett & Perrin, P.C./ Bryan P. Stevens | | | | | | | | | | |
| Halo Branded Solutions, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Harris County Clerk, | | | | | | | | | | |
| Harris County Texas | $764.00 | Disputed | 4 | 3/24/2015 (Amended 3/2/2016 | $9,224.48 | $9,224.48 | | $0.00 | $0.00 | Secured Claim for Ad Valorem Taxes. |
| Harris County et al | | | | | | | | | | |
| Harvard Business Services, Inc. | $50.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Hertz Processing Services | $30.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Houston City Personnel & Temporaries | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Houston Fire Department | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Houston South Mason | $568.45 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Husch Blackwell LLP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| IES Systems, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| IR Solutions | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Icon Bank Of Texas, N.A. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Schedule D indicates multiple UCC financing statements filed. |
| ImageNet Consulting, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| J. Beverly/Dow Golub Remels & Beverly, LLP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| JM Landscaping | $900.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| James Driscoll | | | 31 | 7/28/2015 | $389,400.00 | $0.00 | $0.00 | $0.00 | $389,400.00 | Claim for investment in College Park TIC 2, LLC |
| James L. Hurn | $43,500.00 | | 60 | 8/24/2015 | $41,500.00 | $0.00 | $0.00 | $12,475.00 | $29,025.00 | |
| Jane Mercaldi | | | 23 | 7/28/2015 | $545,160.00 | $0.00 | $0.00 | $0.00 | $545,160.00 | Claims for investment in College Park TIC 22, LLC |
| Jason's Deli | $224.52 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Jeremy A. Roberts/Weycer, Kaplan, Pulaski & | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Jeremy Merrick Enterprises | $650.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Jerry Love CPA, LLC | $31,117.70 | Disputed | 53 | 8/11/2015 | $35,937.40 | $0.00 | $0.00 | $0.00 | $35,937.40 | |
| JPMCC 2006-LDP7 Office 2401, LLC a Texas limited liability company | | | 89 | 10/6/2015 | $664,703.93 | $0.00 | $0.00 | $0.00 | $664,703.93 | Claim for money loaned, guaranty. |
| Julie Bach | $8,048.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Julie A Renner | | | 43 | 7/29/2015 | $200,010.00 | $0.00 | $0.00 | $0.00 | $200,010.00 | Claim for investment in College Park TIC 13 LLC |
| Kansas Department of Revenue | $7,813.13 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Keegan, Linscott & Kenan, P.C. | $4,287.50 | Disputed | 49 | 8/3/2015 | $5,643.75 | $0.00 | $0.00 | $0.00 | $5,643.75 | Claim for accounting services billed to American Spectrum |
| Keeton Contract Services, Inc. | $0.00 | Disputed | 5 | 4/24/2015 | $279,316.91 | $0.00 | | $0.00 | $279,316.91 | |
| Keeton Contract Services, Inc. | | | | | | | | | | |
| Ken Wang | | | 38 | 7/28/2015 | $100,300.00 | $0.00 | $0.00 | $0.00 | $100,300.00 | Claim for investment in College Park TIC 25 LLC |
| Kenneth L Hackman | | | 29 | 7/28/2015 | $752,250.00 | $0.00 | $0.00 | $0.00 | $752,250.00 | Claim for investment in College Park TIC 14 LLC |
| Kenneth H White | | | 237 | 1/19/2016 | $35,000.00 | $0.00 | $0.00 | $0.00 | $35,000.00 | Claim for services performed as (i) Board of Director, (ii) Chairman Audit Committee, (ii) Chairman Investment Committee |
| Kurt Sabatasso and Donna Sabatasso | | | 165 | 10/6/2015 | $1,591,205.15 | $0.00 | $0.00 | $0.00 | $1,591,205.15 | Claim based on collection of judgment and post-judgment interest and attorneys' fees. |
| Law Offices of Daniel S. Levinson | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Law Offices of Kevin R Michaels PC | $4,491.22 | Disputed | 18 | 7/13/2015 | $7,610.43 | $0.00 | $0.00 | $0.00 | $7,610.43 | |
| Legalink, Inc. | $2,447.50 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Leslie S. Akins/Leslie Schwaebe Akins, A Law | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| LexisNexis | $2,000.00 | Disputed | 3 | 4/7/2015, Filed in Case No. 8:15-bk-11397-SC | $2,400.00 | $0.00 | $0.00 | $0.00 | $2,400.00 | Fixed Price Agreement is with American Spectrum Risk and Insurance Services LLC and the invoices are billed to American Spectrum Real Estates Services LLC. |
| Life Insurance Company of North America Cigna Companies | | | 20 | 7/22/2015 | $21,175.70 | $0.00 | $0.00 | $0.00 | $21,175.70 | |
| Lincoln Financial Group | $6,630.91 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Linebarger Goggan Blair & Sampson | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| LoopNet, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Luce Forward Hamilton & Scripps LLP | $19,581.75 | Disputed | 11 | Claim 11 filed 7/30/2015 in Case No. 8:15-bk-11397-SC | $19,581.75 | $0.00 | $0.00 | $0.00 | $19,581.75 | |
| Luke V. McCarthy | | | 187 | 10/7/2015 | $40,000.00 | $0.00 | $0.00 | $0.00 | $40,000.00 | Claim based on a Consulting Agreement between American Spectrum Realty Advisors, LLC and Luke McCarthy. |
| MC Glass | | | 236 | 10/13/2015 | $15,533.87 | $0.00 | $0.00 | $0.00 | $15,533.87 | Claim based on goods and services provided. |
| New West Realty, Inc. a Delaware corporation c/o Spach, Capaldi & Wagga Madison S. Spach Jr. and Thomas E. Waling | $0.00 | Disputed | 76 | 9/25/2015 | $2,916,416.00 | $0.00 | $0.00 | $0.00 | $2,916,416.00 | Claim based on breach of Settlement Agreement and associated Note. Claim states amount of owed of $2,914,416 subsequently liquidated to $1,980,076 |
| New West Realty, Inc. a Delaware corporation c/o Spach, Capaldi & Wagga Madison S. Spach Jr. and Thomas E. Waling | | | 83 | 10/2/2015 | $1,980,076.00 | $0.00 | $0.00 | $0.00 | $1,980,076.00 | Appears to be a duplicate of Claim 76. |
| Madison S. Spach Jr./Spach, Capaldi & Waggam | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Mark Lafayette | | | 27 | 7/28/2015 | $300,900.00 | $0.00 | $0.00 | $0.00 | $300,900.00 | Claim for investment in College Park TIC 9, LLC |
| Meriplex Solutions LLC | $0.00 | Disputed | 220 | 10/7/2015 | $1,250.00 | $0.00 | $0.00 | $0.00 | $1,250.00 | Claim based on executory contract for IT Help Desk Services |
| Meriplex Solutions LLC | | | 221 | 10/7/2015 | $1,611.38 | $0.00 | $0.00 | $0.00 | $1,611.38 | Invoices for IT Help Desk services provided. |
| Merrill Communications | $178.61 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Meyer Hendricks PLLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Michael Meizlisch | | | 24 | 7/28/2015 | $377,600.00 | $0.00 | $0.00 | $0.00 | $377,600.00 | Claim for investment in College Park TIC 15, LLC |
| Mike Sullivan, Tax Assessor-Collect | $286.78 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Mike Sullivan, Tax Assessor-Collect | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Missouri Department of Revenue | $2,844.02 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Moody Law Group PLLC | $24,375.10 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Mydung Tran | | | 226 | 10/7/2015 | $18,086.54 | $0.00 | $0.00 | $6,028.85 | $12,057.69 | Asserts priority classification for $6,028.85, under Section 507(a)(4) (unpaid wages). |
| National Construction Rentals, Inc. | $140.40 | Disputed | 72 | 9/24/2015 | $561.60 | $0.00 | $0.00 | $0.00 | $561.60 | Invoice billed to American Spectrum Dunham Properties |
| Neighborhood Development Corporation a Washington Corporation | | | 45 | 7/29/2015 | $749,300.00 | $0.00 | $0.00 | $0.00 | $749,300.00 | Claim for investment in College Park TIC 16 LLC |
| Newport Stationers, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| NextEra Retail of Texas LP | | | | | | | | | | |
| Northwest Spectrum Plaza | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Odyssey One Source, Inc. | $194.35 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Office Solutions Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Ohio Bureau of Workers' Compensation | $95.00 | Disputed | 12 240 | Claim 12 filed 9/8/2015 in Case No. 8:15-bk-11397-SC for $15,132.55 (priority) Claim 240 filed 4/11/2016 in Case No. 8:15-10721-SC for $19,217.92 (general unsecured) Both claims for the same account | $19,217.92 | $0.00 | $0.00 | $0.00 | $19,217.92 | Taxes - worker's compensation premiums due pursuant to Ohio Revised Code 4123.35. |
| Ohio Commerce Center TIC Owners 1-13 and 15-28 | | | 70 | 9/21/2015 | $1,059,848.11 | $0.00 | $0.00 | $0.00 | $1,059,848.11 | Claim based on alleged unauthorized management fees and costs, missing funds and overcharges for insurance premiums |
| Ohio Department of Taxation | $811.87 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Ohio Department of Taxation | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Orange County Tax Collector | $2,495.24 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Orange of County | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Orion Property Group | $1,736.86 | Disputed | 58 | 8/21/2015 | $51,473.88 | $0.00 | $0.00 | $0.00 | $51,473.88 | Claim based on consulting agreement. |
| Oscar Quintanilla | $653.66 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| PAETEC Communications, Inc. | $2,271.65 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| PPC Irvine | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| PPC Irvine Center Investment, Inc. | | | | | | | | | | |
| PPC Irvine Center Investment, LLC | | | 219 | 10/7/2015 | $300,000.00 | $300,000.00 | $0.00 | $0.00 | $0.00 | Asserts a secured classification on alleged filing of a Judgment Lien. |
| Pacific Gas and Electric Company | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Pacific Printer Service | $145.12 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Patricia Hughes | | | 28 | 7/28/2015 | $382,320.00 | $0.00 | $0.00 | $0.00 | $382,320.00 | Claim for investment in College Park TIC 19 LLC |
| Patrick D. Barrett | $32,506.92 | Disputed | 80 81 82 | 10/1/2015 10/1/2015 10/2/2015 | $106,660.00 | $0.00 | $0.00 | $0.00 | $106,660.00 | Claim #80 based on unpaid legal fees as member of the Debtor's board in the amount of $35,000. Claim #81 based on unreimbursed out of pocket travel costs in the amount of $3,160. Claim #82 based on unpaid board of director fees in the amount of $68,500. |
| Paul Cable Inc dba The Kings and Paul Cagle Individually | | | 59 | 8/24/2015 | $75,826.00 | $0.00 | $0.00 | $0.00 | $75,826.00 | Claim based on Mutual Release and Settlement Agreement of breach of contract lawsuit. |
| Paul D. Rubenstein | $10,000.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Peachtree Business Products | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | | |
| Perfect Surface, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Petrochem Development I LLC | | | 78 | 9/29/2015 | $868,476.03 | $0.00 | $0.00 | $0.00 | $868,476.03 | Repayment of loan |
| Phil Mevawala | $682.52 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Pinnacle Structural Engineers | $4,249.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Pitney Bowes Global Fin. Svcs. LLC | $2,419.33 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | See Filed Proof of Claim (Claims 1 and 2) |
| Pitney Bowes Global Fin. Svcs. LLC | $9,289.32 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | See Filed Proof of Claim (Claims 1 and 2) |
| Pitney Bowes Inc. | | | 1 for $1,935.33 2 for $6,867.01 | 3/6/2015 3/3/2015 | $8,802.34 | $0.00 | | $0.00 | $8,802.34 | Claim 1 re account #XXX 3123 Claim 2 re account #XXX 3825 |
| Pitney Bowes, Inc. | $205.11 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | See Filed Proof of Claim (Claims 1 and 2) |
| Poetic Systems, LLC | $2,132.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Polsinelli Shughart  PC | $91,189.85 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Precision Graphics, Inc. | $1,952.96 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Preferred Income Partners | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Preferred Income Partners IV, LLC | | | | | | | | | | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Presley E Werlein III | | | 71 | 9/22/2015 | $23,203.25 | $0.00 | $0.00 | $0.00 | $23,203.25 | Lists amount owed of *"zero or unknown. As of 9-1-2015 $23,203.25 for Holmes & Bambace LLP "*. Claim based on alleged indemnification obligation to former directors for claims and lawsuits ASR 2620-263- Fountainview, et al. |
| Proskauer Rose LLP | $5,509.44 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Pula Stanely D Pula | $12,840.00 | Disputed | 55 | 8/17/2015 | $12,840.00 | $0.00 | $0.00 | $12,475.00 | $365.00 | Asserts a Priority Claim for Consultant Services rendered during January and February 2015 in the total amount of $12,840. Employed by American Spectrum Realty, Inc., under an Independent Contractor Agreement. If the Claim is Allowed, under the Plan, the Priority Classification will be reduced to the statutory limit of $12,475, with the balance of $365 to treated as a General Unsecured Claim. |
| Purchase Power | $6,377.85 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Pure Health Solutions Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Quentin E Thompson | | | 57 | 8/21/2015 | $106,774.14 | $0.00 | $0.00 | $12,475.00 | $94,299.14 | Claim for unpaid salary and benefits pursuant to employment agreement (Chief Financial Officers effective October 31, 2014). Claimant appears to have used an outdated proof of claim form and the priority portion should be increased to $12,475, the General Unsecured Claim adjusted accordingly. If the claim is allowed, under the Plan, the Priority Non-Tax Claim shall be increased to $12,475, with the balance of $94,299.14 to be treated as a General Unsecured Claim. |
| Quest Personnel Resources Inc. | $13,254.95 | Disputed | 162 | 10/6/2015 | $13,254.95 | $0.00 | $0.00 | $6,331.28 | $6,923.67 | Asserts priority portion of $6,331.28 pursuant to 507(a)(4) (wages). No documents attached to the claim to support the priority classification or the amount owed. |
| Rainier Property Tax Group, LP | $2,272.15 | Disputed | 48 | Claim 48 filed 7/31/2015 in Case No. 8:15-bk-10721-SC for $49,908.71. Claim 7 filed 5/6/2015 in Case No. 8:15-bk-11397-SC for $49,908.71 | $49,908.71 | $0.00 | $0.00 | $0.00 | $49,908.71 | Claim for property tax consulting billed to American Spectrum Management Group Inc. |
| Reichert's Signs, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Renee Ahola | | | 14 | 6/26/2015 | $14,416.25 | $0.00 | $0.00 | $12,475.00 | $1,941.25 | Asserts a Priority Claim for wages earned during January 2015. |
| Resources Global Professionals | $0.00 | Disputed | 56 | 8/19/2015 | $89,213.20 | $0.00 | $0.00 | $0.00 | $89,213.20 | Professional Services Agreement with American Spectrum Realty, Inc. |
| Richard L. Fuqua | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Righi Law Group, PLLC | $38,106.44 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Ringstad & Sanders LLC | | | 125 | 10/7/2015 | $26,581.79 | $0.00 | $0.00 | $0.00 | $26,581.79 | Legal fees. Asserts priority under 507(a)(1) but does not provide amount entitled to priority. |
| River Oaks Storage LLC | | | 103 | 10/6/2015 | $50,000.00 | $0.00 | $0.00 | $0.00 | $50,000.00 | Claim based on breach of management agreement. No documents attached to the claim. |
| Riverside County Tax Collector and Treasurer | $63,767.70 | Disputed | 224 | 10/7/2015 | $110,114.77 | $110,114.77 | $0.00 | $0.00 | $0.00 | Secured claim - Claims 224 and 235 appear to be duplicate claims. Claim 235 was withdrawn, See Docket 343. |
| Riverside County Tax Collector and Treasurer | | | 235 Claim 235 was withdrawn, See Docket 343 | 10/8/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | Secured claim - Claims 224 and 235 appear to be duplicate claims. Claim 235 was withdrawn, See Docket 343. |
| Ryan LLC | | | 222 | 10/7/2015 | $40,589.90 | $0.00 | $0.00 | $0.00 | $40,589.90 | Claim based on Property Tax Consulting Agreement |
| Sabre Compliance Services, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| San Antonio Loop 1604 Self Storage TIC 5, LP a Delaware limited partnership | | | 228 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for lossess. |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| San Antonio Loop 1604 Self Storage TIC 1, LP a Delaware limited partnership | | | 229 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for losses. |
| San Antonio Loop 1604 Self Storage TIC 2, LP a Delaware limited partnership | | | 230 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for losses. |
| San Antonio Loop 1604 Self Storage TIC 3, LP a Delaware limited partnership | | | 231 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for losses. |
| San Antonio Loop 1604 Self Storage TIC 4, LP a Delaware limited partnership | | | 232 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for losses. |
| San Antonio Loop 1604 Self Storage TIC 6, LP a Delaware limited partnership | | | 233 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for losses. |
| San Antonio Loop 1604 Self Storage TIC 7, LP a Delaware limited partnership | | | 234 | 10/7/2015 | $612,163.80 | $0.00 | $0.00 | $0.00 | $612,163.80 | Claim based on breach of contract/indemnification for losses. |
| San Diego County Treasurer-Tax Collector | $87,096.48 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Santa Cruz County Tax Collector | $55,835.64 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Scott Hulse PC | $5,000.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Seasons at Vacaville Investors LLC | | | 68 | 9/9/2015 | $448,522.20 | $0.00 | $0.00 | $0.00 | $448,522.20 | |
| Securities & Exchange Commission | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Securities & Exchange Commission | | | | | | | | | | |
| Siemans Dematic Corp. | $7,274.79 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Signmart, Ltd. DBA Fastsigns | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| SoCal Shred LLC | $160.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| SpareFoot, Inc. | | | 88 | 10/6/2015 | $20,008.84 | $0.00 | $0.00 | $0.00 | $20,008.84 | Claim based on advertising services for mini-storage facilities - invoices billed to American Spectrum Realty Management. |
| Spirn, Daniel Adam/Dentons US LLP | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Stacey F. Speier | $37,000.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Staples Advantage | $442.61 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Staples Credit Plan | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Stark & Stark/ Daniel John Sheridan | | | | | | | | | | |
| CALIFORNIA STATE BOARD OF EQUALIZATION | $2,131.08 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| State of California | $2,131.08 | Disputed | | | | | | | | Listed as Disputed and no Proof of Claim filed. |
| State of Delaware | $300.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Stephen Kaplan | $3,384.24 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Store It REIT, Inc., a Virginia corporation | | | 173 | 10/7/2015 | To Be Determined | $0.00 | $0.00 | $0.00 | $0.00 | Claim lists amount owed of "To Be Determined" and is based on services performed under an advisory agreement between the Debtor and the creditor, which agreement is not attached to the claim. |
| TD Management Co. | $3,000.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Tax & Accounting - R&G | $5,367.95 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Teresa Hinkel, Executor of the Estate of John N. Galardi | | | 163 | 10/6/2015 | $1,075,094.52 | $0.00 | $0.00 | $0.00 | $1,075,094.52 | Claim based on alleged failure to pay preferred stock dividend pursuant to December 30, 2008 Series A Preferred Stock Agreement. |
| Teresa Hinkel, Executor of the Estate of John N. Galardi | | | 164 | 10/6/2015 | $1,702,116.59 | $0.00 | $0.00 | $0.00 | $1,702,116.59 | Claim based on collection of indemnification of final judgment in favor of plaintiffs Kurt & Donna Sabatasso against Debtor. |
| Teresa Hinkel, Executor of the Estate of John N. Galardi | | | 166 | 10/6/2015 | $329,588.56 | $0.00 | $0.00 | $0.00 | $329,588.56 | Claim based on term note dated February 7, 2012. |
| Teresa Hinkel, Executor of the Estate of John N. Galardi | | | 168 | 10/6/2015 | $379,235.26 | $0.00 | $0.00 | $0.00 | $379,235.26 | Claim based on collection of unpaid guarantee fees incurred by John N. Galardi. |
| Teresa Goldberg | $1,631.34 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Ira L and Teresa Goldberg | | | | 10/6/2015 | $13,339.90 | $0.00 | $0.00 | $0.00 | $13,339.90 | Security deposit under residential lease (631 Qual Run Road, Aptos, CA) and reimbursement of repair and maintenance requests. |
| TEXAS COMPTROLLER OF PUBLIC ACCOUNTS | | | | | | | | | | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Texas Comptroller of Public Accounts | $1,151.28 | Disputed | 10 | 5/29/2015 Amended 8/24/2015 Amended 12/9/2015 | $30,699.95 | $30,699.95 | $0.00 | $0.00 | $0.00 | Asserts secured by Ch 113 Lien. Claim includes Tax of $.00, Penalty of $27,775.12 and Interest of $2,924.83. |
| Texprint/ Innovative Print Services | $578.93 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| The Campbell Family Trust Dated March 13 1996 | | | 33 | 7/28/2015 | $571,120.00 | $0.00 | $0.00 | $0.00 | $571,120.00 | Claim for investment in College Park TIC 1 LLC |
| The Claro Group, LLC | $13,062.35 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| The Cook Law Firm | $2,250.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| The Hartford | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| The Ben and Diane Newlander Family Trust Dated September 21 1999 | | | 44 | 7/29/2015 | $363,440.00 | $0.00 | $0.00 | $0.00 | $363,440.00 | Claim for investment in College Park TIC 7 LLC |
| The Field Family Trust Dated March 11, 1993 | | | 30 | 7/28/2015 | $802,400.00 | $0.00 | $0.00 | $0.00 | $802,400.00 | Claim for investment in College Park TIC 11 LLC |
| The Gary Rosenblatt 2006 Trust dated February 17 2006 | | | 40 | 7/28/2015 | $590,000.00 | $0.00 | $0.00 | $0.00 | $590,000.00 | Claim for investment in College Park TIC 17 LLC |
| The John W Bethea and Margaret C Bethea Revocable Trust Dated June 14 2004 | | | 34 | 7/28/2015 | $205,320.00 | $0.00 | $0.00 | $0.00 | $205,320.00 | Claim for investment in College Park TIC 5 LLC |
| The Lui Trust Dated September 27, 1994 | | | 26 | 7/28/2015 | $554,600.00 | $0.00 | $0.00 | $0.00 | $554,600.00 | Claim for investment in College Park TIC 4 LLC |
| The Miller 1998 Revocable Trust Originally Dated November 15 1998 & Amended May 6 2007 | | | 46 | 7/29/2015 | $298,540.00 | $0.00 | $0.00 | $0.00 | $298,540.00 | Claim for investment in College Park TIC 8 LLC |
| The Robert E Avis Trust Dated May 9 1991 | | | 37 | 7/28/2015 | $284,380.00 | $0.00 | $0.00 | $0.00 | $284,380.00 | Claim for investment in College Park TIC 3 LLC |
| TheSquareFoot, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Thermal Comfort Systems, Inc | $170.00 | | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Thompson & Knight LLP | $55,007.18 | Disputed | 91 | 10/6/2015 | Proof of Interest | $0.00 | $0.00 | $0.00 | $0.00 | Claim based on 20,128 share of common stock. |
| Thompson Coe Cousins & Irons LLP | $23,315.52 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Timothy R Brown | | | 62 | 9/2/2015 Amended 10/21/2015 | $57,562.00 | $0.00 | $0.00 | $0.00 | $57,562.00 | Indemnification obligation to former directors for claims and lawsuits. |
| Timothy R Brown | | | 63 | 9/2/2015 | $868,944.00 | $0.00 | $0.00 | $0.00 | $868,944.00 | Redemption obligation of preferred stock being 20,640 shares or 8% of cumulative preferred. |
| TiemWorks, LLC | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Todd Lane Pool & Spa | $210.31 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Total CAD Systems, Inc. | $6,051.18 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Total Tech International, Inc. dba Total Tec | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Totz Ellison & Totz, PC | $2,500.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Tracy Thomson | $55,000.00 | Disputed | 13 | 6/25/2015 | $55,000.00 | $0.00 | $0.00 | $0.00 | $55,000.00 | |
| Travis W. Foster/Ross, Banks, May, C Ron & C | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Treasurer of State of Ohio | $2,769.53 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| UPS | $35.43 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | See Filed Proof of Claim (Claim 6) |
| UPS | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | See Filed Proof of Claim (Claim 6) |
| United Parcel Service | | | 6 | 5/22/2015 | $35.43 | $0.00 | $35.43 | $0.00 | $0.00 | Asserts priority for Involuntary Gap Claim under 507(a)(2). |
| U.S. Bank National Association as Trustee of the Registered Holders of GS Mortgage Securities Corporation II, Commerical Pass-Through Certificates, Series 2012-GC9 | | | 152 | 10/7/2015 | $9,248,337.28 | $0.00 | $0.00 | $0.00 | $9,248,337.28 | Loan guarantee related to promissory note between Jefferies Loancore, LLC (original lender) and San Antonio Self-Storage III, LLC (borrower). |
| U.S. Bank National Association as Trustee in trust for COMM 2013-CCRE9 Mortgage Trust Commerical Mortgage Pass-Through Certificates | | | 215 | 10/7/2015 | $11,755,387.37 | $0.00 | $0.00 | $0.00 | $11,755,387.37 | Claim based on Guaranty of Recourse Obligations associated with loan agreement between lender and Commerce Distribution Center, LLC. |
| Van Orden Engineering | $5,082.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Van Riper Law | $3,348.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Venable LLP | $7,891.50 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| Victory Realty Solutions Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Webroot, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Weintraub Tobin Chediak Coleman Grodin Law Corporation | $11,562.90 | Disputed | 17 | 7/13/2015 | $12,813.90 | $0.00 | $0.00 | $0.00 | $12,813.90 | |
| Wells & Cuellar, P.C. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Wells Fargo Bank NA as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-CIBC 18, Commercial Mortgage Pass-Through Certificates, Series 2007-CIBC18 | | | 86 | 10/5/2015 | Not Stated | $0.00 | $0.00 | $0.00 | $0.00 | Claim based on breach of guaranty;indemnity agreement; conversion |
| Westpark Communications, LP | $4,223.33 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| William J. Carden | | | 182 | 10/7/2015 | $300,000.00 | $300,000.00 | $0.00 | $0.00 | $0.00 | Asserts a secured classification based on Equity Interest Pledge Agreement between AQQ Houston South Mason Self-Storage, LLC, American Spectrum Realty, Inc., and William J. Carden. |
| William J. Carden | | | 186 | 10/7/2015 | $75,000.00 | $0.00 | $0.00 | $12,475.00 | $62,525.00 | Assert priority classification for $12,475 under Code Section 507(a)(4).  Claim based on alleged unpaid salary of $25,000 and unpaid time off of $50,000. |
| William J. Carden | | | 200 | 10/7/2015 | $85,000.00 | $0.00 | $0.00 | $0.00 | $85,000.00 | Claim based on alleged indemnification for unpaid legal fees and expenses as a member of the Debtor's Board of Directors. |
| William J. Carden | | | 203 | 10/7/2015 | $150,000.00 | $0.00 | $0.00 | $0.00 | $150,000.00 | Claim based on alleged unpaid guarantee fees. |
| William J. Carden | | | 205 | 10/7/2015 | $304,478.22 | $0.00 | $0.00 | $0.00 | $304,478.22 | Claim based on alleged guarantee of franchise tax debt  of the Debtor. |
| William Craft Hughes Esq Hughes Ellzey LLP (re Gus Anthony Eppolito Jr) | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| William Craft Hughes Esq Hughes Ellzey LLP (re William McGrath and Darren Kelley) | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| William Hall | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| William S Renner | | | 42 | 7/29/2015 | $200,010.00 | $0.00 | $0.00 | $0.00 | $200,010.00 | Claim for investment in College Park TIC 12 LLC |
| Windstream | $0.00 | Disputed | 8 | 5/11/2015 in Case No. 8:15-bk-11397-SC | $2,271.65 | $0.00 | $0.00 | $0.00 | $2,271.65 | Invoices billed to American Spectrum Realty Management LLC |
| Workiva, Inc. | $17,077.32 | Disputed | 50 | 8/4/2015 | $17,077.32 | $0.00 | $0.00 | $0.00 | $17,077.32 | Claim for services performed for American Spectrum Realty Inc |
| X3 Connect, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Xpress Business Products, Inc. | $0.00 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | |
| Yardi Systems Inc. | $56,579.69 | Disputed | | | | $0.00 | $0.00 | $0.00 | $0.00 | Listed as Disputed and no Proof of Claim filed. |
| American Spectrum Asset Co., LLC | | | 90 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Dunham Properties, LLC | | | 92 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Holdings (Washington), LLC | | | 93 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Investments, LLC | | | 94 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Lenders Services, LLC | | | 95 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Management Group, Inc. | | | 96 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty 5450 NW, LLC | | | 97 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty 11500 NW, LLC | | | 98 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty Advisors, LLC | | | 100 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| American Spectrum Realty Management, LLC | | | 101 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty Operating Partnership LP | | | 102 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-8 Centre, LLC | | | 104 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-2855 Mangum, LLC | | | 105 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-6430 Richmond Atrium, LLC | | | 106 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-6430 Richmond, LLC | | | 107 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-Fountain View Place, LLC | | | 108 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-Gray Falls, LLC | | | 109 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-Parkway One & Two, LLC | | | 110 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-Windrose, LLC | | | 111 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Risk and Insurance Services, LLC | | | 112 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Self-Storage Management, LLC | | | 113 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Storage Management, LLC | | | 114 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-1501 Mockingbird, LLC | | | 115 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-6420 Richmond, LLC | | | 116 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| American Spectrum Realty-Beltway Industrial, LLC | | | 117 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| AQQ Commerce Distribution Center, LLC | | | 118 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| AQQ Florida, LLC | | | 119 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| AQQ Grissom, LLC | | | 120 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| AQQ San Antonio Self-Storage TIC 24, LLC | | | 121 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| AQQ San Antonio Self-Storage, LLC | | | 122 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| AQQ University Heights II TIC 17, LLC | | | 123 | 10/6/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 1501 Mockingbird, LP | | | 126 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 2620-2630 Fountainview GP, LLC | | | 127 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 2620-2630 Fountainview, LP | | | 128 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 5450 NW, L.P. | | | 129 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 6420 Richmond, LP | | | 130 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 6430 Richmond, LP | | | 131 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 6677 Gessner, LLC | | | 132 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 6677 Gessner, L.P. | | | 133 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 11500 NW, LP | | | 134 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR Centennial Park, LLC | | | 135 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 2401 Fountainview, LLC | | | 136 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR 2401 Fountainview, L.P. | | | 137 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR NRT, LLC | | | 138 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR Park Ten 350, LP | | | 139 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR Park Ten 360, L.P. | | | 140 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR Washington, L.P. | | | 141 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-8 Centre, L.P. | | | 142 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-2855 Mangum, L.P. | | | 143 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| ASR-6430 Richmond Atrium, L.P. | | | 144 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Beltway Industrial, LP | | | 145 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Fountain View Place, L.P. | | | 146 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Gray Falls, L.P. | | | 147 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Newport, LLC | | | 148 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Parkway One & Two, L.P. | | | 149 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Risk & Insurance Services, LLC | | | 150 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Risk Management, LLC | | | 151 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-West Gray, LLC | | | 153 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-West Gray, L.P. | | | 154 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| ASR-Windrose, L.P. | | | 156 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Attic Self Storage Manager, LLC | | | 158 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| B&R Services, LLC | | | 159 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Back Bay, LLC | | | 174 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Centennial Park Kansas, LLC | | | 175 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Club Royal Oak, LLC | | | 176 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Commerce Distribution Center, LLC | | | 177 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Grissom Road Self Storage, LP | | | 178 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| McDonnell Associates, LLC | | | 179 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Murrieta Plaza, LLC | | | 180 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nevada Treasure RV Resort, LLC | | | 181 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Nooney Income Fund II, LLC | | | 183 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Noone Real Property Investors Two, LLC | | | 184 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Nooney Rider Trail, L.P. | | | 185 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Pacific Spectrum, LLC | | | 188 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Premier Lone Star Construction, LLC | | | 189 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Quail Run Aptos, LLC | | | 190 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Rancho Coronado LLC | | | 191 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Rooftop Spectrum, LLC | | | 192 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sabo Road Acquisitions, LP | | | 193 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sabo Road Manager, LLC | | | 194 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| San Antonio Self-Storage III, LLC | | | 195 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| San Ysidro, LLC | | | 196 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Seventy Seven, LLC | | | 197 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sierra Creekside Partners | | | 198 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sierra Creekside, LLC | | | 199 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sierra Pacific Development Fund II, LLC | | | 201 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sierra Pacific Development Fund II, L.P. | | | 202 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sierra Pacific Development Fund, LLC | | | 204 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Sierra Southwest Pointe, LLC | | | 206 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor  - subject to accounting as to whether the subsidary is owed funds by the Debtor. |

# Exhibit 3

| Creditor | Scheduled Claim Amount | Disputed Contingent Unliquidated | Claim No. | Date Filed | Filed Claim Amount | Secured | Gap Claim | Priority | Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Solar Spectrum, LLC | | | 207 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Spectrum Lender Services, Inc. | | | 208 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Tampa Ocala Acquisitions, LLC | | | 209 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Third Coast Sierra Technology, LLC | | | 210 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Verdugo, LLC | | | 211 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| Wilmington CA, LLC | | | 212 | 10/7/2015 | Unknown | $0.00 | $0.00 | $0.00 | $0.00 | Subsidary of Debtor - subject to accounting as to whether the subsidary is owed funds by the Debtor. |
| | | | | | | | | | | |
| **Totals** | **$6,511,920.76** | | | | **$94,089,435.24** | **$1,124,237.79** | **$324,248.37** | **$871,616.23** | **$91,803,896.30** | |

# Exhibit 3

# EXHIBIT 4

# Liquidating Trust Agreement

## AMERICAN SPECTRUM REALTY, INC. LIQUIDATING TRUST
## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement for American Spectrum Realty, Inc. (the "Liquidating Trust Agreement"), is being entered into as of _____[Effective Date] by and between American Spectrum Realty, Inc. ("Debtor"), the debtor in the chapter 11 case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court"), as Case Number 8:15-bk-10721-SC ("Case"), and J. Michael Issa, solely in his capacity as trustee under this Liquidating Trust Agreement (the "Liquidating Trustee"). The Debtor's First Amended Chapter 11 Liquidating Plan, as it may have been amended from time to time in accordance with its terms or as ordered by the Bankruptcy Court (the "Plan")[1] was confirmed by the Bankruptcy Court's order, entered on the docket on _____, 2016 [Docket No. __ ] (the "Confirmation Order") and provides, *inter alia*, for:

(a) The transfer (the "Transfer") of all right, title and interest of the Debtor's bankruptcy estate in the Liquidating Trust Assets (or "Trust Assets") to the Beneficiaries who are then deemed to transfer them to the liquidating trust created by this Liquidating Trust Agreement (the "Liquidating Trust") on the Effective Date, free and clear of all Claims and Interests, for distribution to the Beneficiaries pursuant to, in accordance with, and except as specifically provided in this Liquidating Trust Agreement, the Plan and the Confirmation Order;

(b) The treatment of the Transfer for federal income tax purposes as the transfer of the Trust Assets by the Debtor to the Beneficiaries followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their respective beneficial interests therein;

(c) The treatment for all purposes, including federal income tax purposes, of the Beneficiaries as the deemed owners of their respective Trust Assets and as the grantors of the Liquidating Trust;

(d) The treatment of the Trust as a grantor trust for federal income tax purposes;

(e) The valuation of the Trust Assets by the Liquidating Trustee and the use of such valuations by the Liquidating Trustee and the Beneficiaries for all federal income tax purposes;

(f) The liquidation of the Trust Assets, including the management of such Trust Assets for purposes of such liquidation, by the Liquidating Trustee; and

(g) The distribution of the Trust Assets or the proceeds thereof to the Beneficiaries as set forth in the Plan, the Confirmation Order and this Liquidating Trust Agreement.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

## Exhibit 4

NOW, THEREFORE, pursuant to the Plan and in consideration of the mutual agreements of the parties contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.1 Purpose of the Liquidating Trust. The Debtor and the Liquidating Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Liquidating Trust Agreement, hereby settle the Liquidating Trust on behalf of and for the sole benefit of the Beneficiaries and for the primary purpose of liquidating the Trust Assets and distributing the Trust Assets or proceeds thereof to the Beneficiaries pursuant to the Plan and in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. It shall not be the objective or purpose of this Liquidating Trust to, and the Liquidating Trustee shall have no authority to, conduct a trade or business except as reasonable and necessary to, and consistent with, the liquidation of the Trust Assets. In particular, the Liquidating Trust, through the Liquidating Trustee, will oversee the wind down, dissolution, and liquidation of the Trust Assets, in accordance with the Plan, including without limitation the following:

(a) accept and place all Trust Assets into the Liquidating Trust;

(b) to the extent feasible, reduce all remaining Trust Assets, including, but not limited to, all Post-Confirmation Estate Claims, to cash;

(c) object to and resolve any Claims, whether or not they were included on Debtor's schedules of claims filed in the Case;

(d) prosecute, compromise, settle, abandon, dismiss or otherwise resolve any or all Post-Confirmation Estate Claims, the D&O Action or other Claims within the Liquidating Trust Assets;

(e) make all Distributions in accordance with the Plan to the extent such Distributions are to be made from the Trust Assets;

(f) pay U.S. Trustee Fees that may accrue in the Case after the Effective Date; (g) retain professionals and other agents; and

(h) take such steps as are reasonable and necessary to accomplish the Liquidating Trust's purpose, all as provided in, and subject to the terms and provisions of, the Plan and this Liquidating Trust Agreement. The Trust Assets shall be held for the exclusive and sole benefit of the Beneficiaries and shall only be used to fund distributions to such Beneficiaries in accordance with the Plan and to fund payment of costs, fees, and expenses incurred in connection with the administration of the Liquidating Trust or the Plan. The Liquidating Trustee shall not prolong the duration of the Liquidating Trust.

Section 1.2 Name of the Liquidating Trust. The Liquidating Trust established hereby shall be known as the "**American Spectrum Realty, Inc. Liquidating Trust.**" In connection with the exercise of his powers, the Liquidating Trustee may use the name or such variation thereof as he sees fit, and may transact the affairs of the Liquidating Trust in such name.

# Exhibit 4

Section 1.3 Funding of the Trust. Transfer of Assets to Create Liquidating Trust. Effective as of the Effective Date, the Debtor hereby grants, releases, assigns, transfers, conveys and delivers to the Liquidating Trustee and his successors, to be held in trust and to be applied as specified in the Plan, the Confirmation Order, and this Liquidating Trust Agreement, the Trust Assets, including, to the extent available, the information necessary to investigate, prosecute, protect and conserve all Post-Confirmation Estate Claims, and control over all attorney client privileges, work product or other evidentiary privileges and all rights related to the Post-Confirmation Estate Claims that belonged to the Debtor prior to the Effective Date, and all such privileges and immunities shall be vested in the Liquidating Trustee for the sole benefit of the Beneficiaries. The Debtor shall have no reversionary interest or other further interest in the Trust Assets. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar txt pursuant to section 1146(a) of the Bankruptcy Code.

Section 1.4 No Waiver of Claims. In accordance with section 1123(d) of the Bankruptcy Code, the Liquidation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Post-Confirmation Estate Claims after the Effective Date. No person or entity may rely on the absence of a specific reference in the Plan to any Cause of Action against them as any indication that the Liquidating Trustee will not pursue any and all available Post-Confirmation Estate Claims against them. Unless a Post-Confirmation Estate Claim is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or an order of the Bankruptcy Court, the Liquidating Trustee expressly reserves all Post-Confirmation Estate Claims for later adjudication, and therefore, no preclusion doctrine shall apply to such Post-Confirmation Estate Claims upon, after or as a consequence of the Confirmation Order.

Section 1.5 Relationship to and Incorporation of the Plan. The principal purpose of this Agreement is to effect the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions thereof by reference. To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order. To the extent there are any inconsistencies between the Liquidating Trust Agreement and the Confirmation Order, or the Plan and the Confirmation Order, the terms of the Confirmation Order shall be controlling. In the event of any inconsistency between the Liquidating Trust Agreement and the Plan, the Plan shall control be controlling.

Section 1.6 Acceptance by Liquidating Trustee. The Liquidating Trustee hereby accepts and confirms the following: (a) the appointment to serve as Liquidating Trustee; (b) the transfer of the Trust Assets, and all right, title and interest therein, to the Liquidating Trust; and (c) the obligations and duties imposed on him by this Liquidating Trust Agreement. The Liquidating Trustee agrees to receive, hold, administer and distribute the Trust Assets and the income derived therefrom, and to reconcile, administer and satisfy Claims pursuant to the terms of the Plan, the Confirmation Order and this Liquidating Trust Agreement.

## ARTICLE II
## TERMINATION OF TRUST

Section 2.1 Maximum Term. The Liquidating Trust shall terminate its existence as soon as practicable upon the occurrence of the complete liquidation, administration and distribution of

# Exhibit 4

the Trust Assets in accordance with the Plan and the full performance of all other duties and functions set forth in the Plan and this Liquidating Trust Agreement. Notwithstanding the foregoing, the Liquidating Trust shall terminate no later than the fifth anniversary of the Effective Date (the "Initial Liquidating Trust Term"); provided, however, that, on or later than the date that is six months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for a finite period if such extension is necessary to liquidate the Trust Assets. Multiple extensions may be obtained so long as: (a) Bankruptcy Court approval is obtained no more than six months prior to the expiration of each extended term, and (b) the Liquidating Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes.

Section 2.2 Winding Up and Discharge of the Liquidating Trustee. For purposes of winding up the affairs of the Liquidating Trust at its termination, the Liquidating Trustee shall continue to act as Liquidating Trustee until his duties have been fully discharged and any final distributions, and final accounting, have been made. After doing so, the Liquidating Trustee, his agents, professionals and employees, if any, shall have no further duties or obligations hereunder, except as required by this Liquidating Trust Agreement, the Plan, the Confirmation Order or applicable law concerning the termination of a trust, and the Trust shall be deemed dissolved.

## ARTICLE III
## OBLIGATIONS OF THE LIQUIDATING TRUSTEE

Section 3.1 Establishment and Maintenance of Accounts, Reserves and Escrows.
(a) Initial Establishment of Accounts and Reserves. On the Effective Date or as soon thereafter as practicable, the Liquidating Trustee shall establish the following accounts and reserves at an institution(s) approved by the United States Trustee:

(i) General Account(s): One or more general accounts (the "General Account(s)") into which shall be deposited, to the extent sufficient assets are available, cash comprising Trust Assets for distribution in accordance with the Plan, Confirmation Order, and this Liquidating Trust Agreement.

(ii) Reserve: An account or accounts, wherein funds may be commingled but shall be earmarked by accounting entries to be available to satisfy particular Disputed Claims, or groups of identified Disputed Claims, in the event they are ultimately Allowed, designated as a "Reserve," as described more fully in Section 3.2 below (the "Reserve").

(iii) Operating Reserve Account: An account, designated as an "Operating Reserve Account," as described more fully in Section 3.3 below (the "Operating Reserve Account").

(b) Subsequent Establishment of Accounts, Reserves and Escrows. On or after the Effective Date, the Liquidating Trustee (i) shall establish and maintain such additional accounts, reserves and escrows, to the extent sufficient assets are available, as may be required by applicable law or by order of the Bankruptcy Court, and (ii) may establish and maintain such additional accounts, reserves and escrows as he deems necessary or desirable to carry out the provisions of the Plan and this Liquidating Trust Agreement.

## Exhibit 4

(c) Amounts Deposited in Reserves. The amounts to be initially deposited in the reserves shall be established by the Liquidating Trustee consistent with the terms of the Plan. Changes in the amounts maintained in the reserves may be made at any time thereafter in the discretion of the Liquidating Trustee unless otherwise provided in any order of the Bankruptcy Court.

Section 3.2 Reserve.

(a) Prior to making each of the Distributions under the Plan, the Liquidating Trustee shall create and fund, to the extent that sufficient assets are available, one or more, as appropriate, Reserves with an amount of cash equal to the Distributions to which Holders of Disputed Claims would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims; provided, however, that the Liquidating Trustee may at any time file a motion(s) pursuant to section 502(c) of the Bankruptcy Code for an order(s) estimating and limiting the amount of cash which shall be deposited in any Reserve in respect of any Disputed Claims, with notice and an opportunity to be heard to the affected Holders of such Disputed Claims. The Liquidating Trustee shall have no obligation to file any such motion, and neither the Liquidating Trust nor the Liquidating Trustee shall have any liability whatsoever to any Holder of any Disputed Claim under any circumstances for any good faith action(s) or omission(s) causing the amount held in the Reserve for the segregated benefit of a particular Disputed Claim to be insufficient to provide for such Disputed Claim in the event it is ultimately determined to be an Allowed Claim.

(b) After a Final Order has been entered or other final resolution has been reached with respect to any Disputed Claim for which cash was reserved in the Reserve, the balance, if any, of cash remaining in such Reserve on account of such Claim, after making the distribution, if any, to which the holder of such Claims became entitled by virtue of such Final Order or other final resolution, shall be transferred to the General Account(s).

Section 3.3 Operating Reserve Account.

(a) On the Effective Date (or as soon thereafter as practicable), the Liquidating Trustee shall establish the Operating Reserve Account, which shall be funded in an amount to be determined in the sole discretion of the Liquidating Trustee and administered pursuant to the Plan and this Liquidating Trust Agreement for purposes of providing funds necessary to cover the ordinary and reasonable costs, expenses and obligations to be incurred in administering the Liquidating Trust and the Plan.

(b) The Liquidating Trustee may, in his sole discretion, transfer funds from the General Account(s) to the Operating Reserve Account if he deems it necessary or appropriate to provide funds necessary to cover the ordinary and reasonable costs, expenses and obligations to be incurred in administering the Liquidating Trust or the Plan.

(c) In connection with making a Distribution of cash or other assets under the Plan, if the Liquidating Trustee determines, in his sole discretion, that any excess cash is available from the Operating Reserve Account, the Liquidating Trustee may transfer such amount to the General Account(s).

# Exhibit 4

Section 3.4 Use of Assets. All cash or other Liquidating Trust Assets held or collected by the Liquidating Trustee shall be used solely for the purposes contemplated by the Plan or this Liquidating Trust Agreement.

Section 3.5 Distributions. The Liquidating Trustee shall make any Distributions on the Effective Date or soon thereafter that are required by the Plan to be paid then except for those Distributions to be made by the Debtor on the Effective Date or within a few days thereafter as provided in the Plan and in this Liquidating Trust Agreement. Following such initial Distributions, the Liquidating Trustee shall make further Distributions to Beneficiaries from the Operating Reserve Account in accordance with the Plan, the Confirmation Order, and this Liquidating Trust Agreement. The Liquidating Trustee shall make Distributions to the Beneficiaries at the addresses reflected in the Register. Any Unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be retained by the Liquidating Trust and deposited back into (or left within) the General Account (notwithstanding any applicable federal or state escheat, abandoned or unclaimed properly laws to the contrary) for distribution in accordance with the terms of the Plan and this Agreement. Any Claim for which a Distribution becomes an Unclaimed Distribution, shall be forever barred from receiving any further Distribution under the Plan, and the Liquidating Trustee shall remove from the Register the Holder of any such Claim.  Nothing contained herein shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

**ARTICLE IV**
**POWERS AND DUTIES OF THE LIQUIDATING TRUSTEE**

Section 4.1 Duties of Liquidating Trustee. The Liquidating Trustee shall have such duties and responsibilities as are specified in the Plan, the Confirmation Order and this Liquidating Trust Agreement.

Section 4.2 Authority of Liquidating Trustee. The Liquidating Trust and the Liquidating Trustee shall be vested with the property, rights, interests, and powers of the Debtor transferred to the Liquidating Trust, as specified in the Plan or the Confirmation Order. The Liquidating Trustee shall make continuing efforts to dispose of the Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trustee's rights, duties, and authority shall include, without limitation, all of the following:

(a) receive, control, manage and dispose of all Trust Assets for the benefit of the Beneficiaries who may receive distributions under the Plan;

(b) act as custodian of the Trust Assets and liquidate and reduce such assets to cash at such time as the Liquidating Trustee deems appropriate to accomplish the purpose of the Liquidating Trust, in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(c) calculate and pay all distributions required or permitted to be made from the Trust Assets under the Plan, this Liquidating Trust Agreement and/or orders of the Bankruptcy Court;

(d) subject to the provisions of the Plan and this Liquidating Trust Agreement, establish, fund, and/or administer the Reserve and such other reserves, accounts and escrows as may be authorized by this Liquidating Trust Agreement, the Plan, or order of the Bankruptcy Court;

# Exhibit 4

(e) employ, supervise and compensate attorneys, accountants, financial advisors and other professionals or other persons retained to represent the interests of and serve on behalf of the Liquidating Trust (the "Trust Professionals") and waive any conflicts of interest as deemed necessary or appropriate in his discretion;

(f) file the tax returns described in Section 7.4 in the manner described therein;

(g) object to or seek to recharacterize, reclassify or subordinate any Claims filed against the Debtor, and compromise and settle, abandon or dismiss any and all Disputed Claims, in accordance with the terms of the Plan;

(h) seek determination of tax liability under section 505 of the Bankruptcy Code;

(i) Investigate, analyze, commence, prosecute, litigate, compromise, settle, collect upon, abandon, dismiss and/or otherwise administer all Trust Assets, including, without limitation, all Post-Confirmation Estate Claims;

(j) pay all expenses and make other necessary payments relating to the Trust Assets;

(k) assert or waive any privilege or defense of the Debtor related to the Trust Assets;

(l) seek the examination of any entity under Bankruptcy Rule 2004;

(m) perform any and all acts necessary or appropriate for the conservation and protection of the Trust Assets;

(n) exercise all powers and rights, and take all actions contemplated by or provided for under the Plan, the Confirmation Order, or this Liquidating Trust Agreement;

(o) withhold from amounts distributable to any Person or Entity any and all amounts required by any law, rule, regulation, ruling, directive, or other governmental requirement, or as otherwise provided herein, as determined by the Liquidating Trustee in his sole discretion;

(p) except as otherwise set forth in the Plan, undertake all administrative functions remaining in the Case, including the ultimate closing of the Case pursuant to a Final Decree, and file with the Bankruptcy Court such status reports as are required by the Bankruptcy Code, Bankruptcy Court, United States Trustee's Office, or other applicable law or Bankruptcy Court procedure;

(q) respond to the inquiries of Holders of Unsecured Claims; and

(r) take any and all other actions necessary or appropriate to implement or consummate the Plan and the provisions of this Liquidating Trust Agreement.

Section 4.3 Limitations on the Liquidating Trustee. Notwithstanding anything in this Liquidating Trust Agreement to the contrary, the Liquidating Trustee, in his capacity as such, shall not do or undertake any of the following: (i) guaranty any debt; (ii) loan Trust Assets; (iii) purchase Trust Assets from the Liquidating Trust; (iv) transfer Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee; or (v) except as otherwise reasonably necessary to maintain the value of the Trust Assets and to further the liquidating purpose of the Liquidating Trust, invest Trust Assets other than in short-term, liquid investments, such as bank demand and time deposits, short-term bank or saving institution certificates of deposit or Treasury Bills.

Section 4.4 Liquidating Trustee and Conflicts of Interest. If the Liquidating Trustee determines, in the exercise of his reasonable discretion, that he has a material conflict of interest with respect to the settlement of a Claim, the resolution or prosecution of any Post-Confirmation Estate Claims or any other matter, the Liquidating Trustee may select a designee to act on behalf of the Liquidating Trust solely with respect to such matter (the "Designee"), with such Designee's authority to act on behalf of the Liquidating Trust to terminate upon the matter's conclusion. If

# Exhibit 4

the Designee files a pleading, motion or other filing with a court or tribunal on behalf of the Liquidating Trust, it shall do so in its own name as "Designee of the Trustee of the American Spectrum Realty, Inc. Liquidating Trust."

Section 4.5 Register of Beneficiaries. The Debtor shall provide the Liquidating Trustee with a register of the names, addresses and amounts of Allowed Claims of the Beneficiaries (the "Register") as of the close of business on the Effective Date. Thereafter, the Register will be maintained by the Liquidating Trustee, and changes thereto will be made upon notification proper under this Liquidating Trust Agreement submitted to the Liquidating Trustee. The Liquidating Trustee shall not be liable for relying on the accuracy of the Register, provided that he has reasonably maintained the Register in accordance with this Liquidating Trust Agreement. Any Beneficiary, who is a beneficiary as of the Effective Date (whether or not the Holder's Claim is Disputed) may, after the Effective Date, specify in writing an alternative address to where Distributions should be mailed, by providing notice to the Liquidating Trustee identifying such alternative address for Distributions. Such notification shall be effective only upon the Liquidating Trustee's implementation of any such alternative address into the Register. Absent actual receipt of such notice by the Liquidating Trustee, the Liquidating Trustee need not recognize any such change of address for Distribution purposes.  Notwithstanding anything herein to the contrary, in no event shall the Liquidating Trustee have any liability for the Liquidating Trustee's mailing of a Distribution to the Beneficiaries' address as reflected in the Ledger even if the notice of an alternative address had been provided in accordance with this section before any such Distribution.

Section 4.6 Books and Records. The Liquidating Trustee also shall maintain in respect of the Liquidating Trust and the Beneficiaries, books and records relating to the Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidating Trust in such detail and for such period of time as may be necessary to enable him to make full and proper reports in respect thereof. Such books and records shall be maintained in a manner consistent with the Plan and this Liquidating Trust Agreement. Except as expressly provided in this Liquidating Trust Agreement, the Plan or the Confirmation Order, nothing in the Liquidating Trust Agreement is intended to require the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Trust Assets.

Section 4.7 United States Trustee Statutory Fees. The Liquidating Trustee shall pay all U.S. Trustee Fees for each quarter following the Effective Date (including any fraction thereof), as calculated taking into account the substantive consolidation of the Debtor, out of the Trust Assets until the Case is converted, dismissed, or closed, whichever occurs first.

Section 4.8 Retention of Trust Professionals. The Liquidating Trustee may commit the Liquidating Trust to and shall pay such Trust Professionals reasonable compensation for services rendered and reasonable and actual expenses incurred. A law firm or other professional shall not be disqualified from being employed by the Liquidating Trustee solely because of its current or prior retention as counsel or professional to the Debtor in the Case.

# Exhibit 4

<u>Section 4.9 Final Accounting of Liquidating Trustee</u>. The Liquidating Trustee shall within ninety (90) days after the termination of the Liquidating Trust or his resignation, removal, liquidation or death (in which case, the obligation contained in this Section shall pass to a successor Liquidating Trustee pursuant to Section 5.4 of this Liquidating Trust Agreement), render a final accounting containing at least the following information:

(a) A description of the Trust Assets and their disposition;

(b) A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidating Trust and the Trust Assets during the Liquidating Trustee's term of service, including their source and nature;

(c) Separate entries for all receipts of principal and income;

(d) The ending balance of all Trust Assets as of the date of the Liquidating Trustee's accounting, including the cash balance on hand and the name and location of the depository where it is kept;

(e) All known liabilities owed by the Liquidating Trust; and

(f) The then-current Register of Allowed and Disputed Clams.

The final accounting shall be filed with the Bankruptcy Court.

## ARTICLE V
## LIABILITY OF LIQUIDATING TRUSTEE

<u>Section 5.1 Appointment</u>. The Liquidating Trustee is J. Michael Issa, solely in his capacity as Liquidating Trustee of the American Spectrum Realty, Inc. Trust and not otherwise.

<u>Section 5.2 Resignation</u>. The Liquidating Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the United States Trustee; provided, however, that such resignation shall not become effective until the appointment and Bankruptcy Court approval of a successor Liquidating Trustee in accordance with Section 5.4 hereof. If the Liquidating Trustee resigns from his position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

<u>Section 5.3 Removal</u>. At any time upon the request of a party-in-interest through a motion filed in the Bankruptcy Court, the Bankruptcy Court may remove the Liquidating Trustee, including any successor Liquidating Trustee or Designee, for cause. For purposes of this Section 5.3, "cause" shall mean: (a) an act of fraud, embezzlement, or theft in connection with the Liquidating Trustee's duties or in the course of his employment in such capacity, (b) the intentional wrongful damage to the Trust Assets, (c) the intentional wrongful disclosure of confidential information of the Liquidating Trust resulting in material harm to the Liquidating Trust, or (d) gross negligence by the Liquidating Trustee in connection with the performance of his duties under this Liquidating Trust Agreement. Unless the Bankruptcy Court orders immediate removal, the Liquidating Trustee shall continue to serve until a successor Liquidating Trustee is appointed, and such appointment becomes effective, in accordance with Section 5.4 hereof. If the Liquidating Trustee is removed for cause, the Liquidating Trustee shall not be

# Exhibit 4

entitled to any accrued but unpaid fees, expenses or other compensation under this Liquidating Trust Agreement or otherwise. If the Liquidating Trustee is unwilling or unable to serve (i) by virtue of his inability to perform his duties under this Liquidating Trust Agreement due to death, illness, or other physical or mental disability, or (ii) for any other reason whatsoever other than for "cause," subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation, to the extent incurred, arising or relating to events occurring before his removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.  In the event of any dispute regarding removal of the Liquidating Trustee, the Bankruptcy Court shall retain the exclusive jurisdiction to consider and adjudicate any such dispute.

Section 5.4 Appointment of Successor Liquidating Trustee. In the event of a vacancy by reason of the death or immediate removal of the Liquidating Trustee or prospective vacancy by reason of resignation or removal, the Bankruptcy Court shall appoint the successor Liquidating Trustee consistent with the best interests of the Beneficiaries of the Liquidating Trust. Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and the retiring Liquidating Trustee, if any, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Liquidating Trustee, without any further act, shall become vested with all the rights, powers and duties of the Liquidating Trustee; provided, however, that no Liquidating Trustee shall be liable for the acts or omissions of any prior or later Liquidating Trustee.

Section 5.5 Continuity. The death, resignation or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency (other than any agency of such Liquidating Trustee as a Liquidating Trustee) created pursuant to the Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee, and the successor Liquidating Trustee agrees that the provisions of the Liquidating Trust Agreement shall be binding on and inure to the benefit of each successor Liquidating Trustee and all his heirs and legal and personal representatives, successors or assigns. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall (a) execute and deliver by the effective date of his resignation or removal such documents, instruments and other writings as may be reasonably required to effect the termination of such Liquidating Trustee's capacity under this Liquidating Trust Agreement and (b) assist and cooperate in effecting the assumption of such Liquidating Trustee's obligations and functions by the successor Liquidating Trustee. If, for any reason, the Liquidating Trustee fails to execute the documents described in clause (a) of the preceding sentence, the Bankruptcy Court may enter such orders as are necessary to effect termination of such Liquidating Trustee's capacity under] this Liquidating Trust Agreement.

Section 5.6 Compensation. The Liquidating Trustee shall be compensated in the amount of $20,000 per month plus costs plus a potential bonus upon achievement of a positive result for this Estate, in an amount as may be awarded by the Oversight Committee and subject to the Court's review and final approval. Any Trust Professionals or agents retained or utilized by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred. After the Effective Date, the payment of the fees and expenses of the Liquidating Trustee and his agents, financial advisors, attorneys, consultants,

# Exhibit 4

independent contractors, representatives and other Trust Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court. Any successor Liquidating Trustee shall receive such reasonable compensation and reimbursement of actual, reasonable, and documented expenses in the same manner as the initial Liquidating Trustee.

Section 5.7 Indemnification; Limitation of Liability, etc.

(a) The Liquidating Trust shall indemnify and hold harmless each of (i) the Liquidating Trustee (and any successor Liquidating Trustee), (ii) the Trust Professionals, and (iii) each of the foregoing Persons heirs, legal representatives and permitted assigns (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust Agreement, or the implementation or administration of the Plan, except to the extent it is finally determined by a final and non-appealable order of a court of competent jurisdiction that such Indemnified Party acted in bad faith or in a manner reasonably believed to be not in, or opposed to, the best interests of the Beneficiaries, or, with respect to any criminal action or proceeding, had reasonable cause to believe its conduct was unlawful. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of the claims giving rise to the right of indemnification shall be paid from the Trust Assets.

(b) Each of the Indemnified Parties, whether or not acting upon the advice of counsel, shall incur no liability because of any error of law or fact, mistake of judgment or any matter or thing done or omitted under this Liquidating Trust Agreement except to the extent it is finally determined by a final and non-appealable order of a court of competent jurisdiction that such Indemnified Party acted in bad faith or in a manner reasonably believed to be not in, or opposed to, the best interests of the Beneficiaries, or, with respect to any criminal action or proceeding, such Indemnified Party had reasonable cause to believe its conduct was unlawful. Anything done or suffered in good faith by an Indemnified Party in accordance with the advice of counsel shall be conclusively in favor of such Indemnified Party against the Liquidating Trust or other interested party.

(c) Any Person acting at any time as the Liquidating Trustee or Trust Professional, and each of the foregoing Persons heirs, legal representatives and permitted assigns, shall not be liable for acts or defaults of any other person acting at any other time in any such capacity. Each Indemnified Party shall be protected and free from liability in acting upon any notice, request, consent, certificate, declaration, guarantee, affidavit or other paper or document or signature reasonably believed by him to be genuine and to have been signed by the proper party or parties or by the party or parties purporting to have signed the same.

(d) No provision of this Liquidating Trust Agreement shall require any Indemnified Party to expend or risk his own funds or otherwise incur any financial liability in the performance of any of his duties hereunder, or in the exercise of any of his rights or powers, if he shall have

# Exhibit 4

reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to him.

(e) Notwithstanding anything to the contrary in this Liquidating Trust Agreement, each of the Indemnified Parties shall be entitled to deduct and withhold from the Trust Assets and any amounts otherwise payable to any Beneficiary pursuant to this Liquidating Trust Agreement such amounts as may be owed by the Liquidating Trust or the Beneficiaries to the Indemnified Parties as expenses or other liabilities under Sections 5.6 or 5.7 of this Liquidating Trust Agreement.

Section 5.8 Insurance. The Liquidating Trustee shall be authorized to obtain all reasonably necessary insurance coverage for himself and the Trust Professionals, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Liquidating Trust, and (ii) the liabilities, duties and obligations of the Liquidating Trustee and the Trust Professionals (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Liquidating Trustee, remain in effect for a reasonable period after the conclusion of the Liquidating Trustee's service, and the costs and expenses of such insurance coverage shall be an expense for which the Liquidating Trustee is entitled to reimbursement hereunder from the Liquidating Trust.

Section 5.9 Reliance by Liquidating Trustee. The Liquidating Trustee may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Liquidating Trustee reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, e-mails and telexes, to have been sent by the proper party or parties, and the Liquidating Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. The Liquidating Trustee may consult with counsel and other professionals with respect to matters in their area of expertise (and the reasonable fees and expenses of such counsel shall be an expense for which the Liquidating Trustee is entitled to reimbursement hereunder), and any advice of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Liquidating Trustee. The Liquidating Trustee shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon. The Liquidating Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Liquidating Trust Agreement, the Plan, the Confirmation Order or any other document executed in connection therewith, and the Liquidating Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon. The Liquidating Trustee may rely upon the Debtor's filed schedules and statements of financial affairs and all other information provided by the Debtor or their representatives to the Liquidating Trustee concerning Claims filed against the Debtor, and their reconciliation and documents supporting such reconciliation.

Section 5.10 Reliance by Persons Dealing with the Liquidating Trustee. In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee to act on behalf of the Liquidating Trust and shall have no obligation to inquire into the existence of such authority.

# Exhibit 4

Section 5.11 Oversight Committee.  The Oversight Committee may monitor performance under the Plan, the administration of the Liquidating Trust and other duties by the Liquidating Trustee and may interact with the Liquidating Trustee to provide input and recommendations with respect to the administration of the Estate under the Plan.  The Liquidating Trustee shall use reasonable efforts to communicate with the Oversight Committee and seek its input in the administration of the Estate, but shall not be required to follow any recommendations or input received.

# ARTICLE VI
## BENEFICIARIES

Section 6.1 Interest Beneficial Only. The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary under the Liquidating Trust to any title in or to the Trust Assets or to any right to call for a partition or division of the Trust Assets or to require an accounting, except as specifically provided by this Liquidating Trust Agreement.

Section 6.2 Evidence of Beneficial Interest. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

Section 6.3 Registration of Beneficial Interest. The Liquidating Trustee shall cause the Register to be kept at his office or at such other place or places as may be designated by the Liquidating Trustee from time to time. The Register shall reflect the ownership of the beneficial interests of the Beneficiaries. The Register shall reflect only the addresses of the persons who were Beneficiaries as of the Effective Date unless otherwise acknowledged in a written agreement signed by the Liquidating Trustee at the sole discretion of the Liquidating Trustee.

Section 6.4 Absolute Owners. The Liquidating Trustee may deem and treat the Beneficiaries reflected in the Register as the absolute owner thereof for the purposes of sending Distributions and payments on account thereof, for federal and state income tax purposes and for all other purposes whatsoever.

Section 6.5 Standing of Beneficiary. Except as expressly provided in the Liquidating Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidating Trustee) upon or with respect to the Trust Assets.

Section 6.6 Tax Payer Number. At the written request of the Liquidating Trustee, a Beneficiary must certify such Beneficiary's taxpayer identification number, and that payments to such Beneficiary are exempt from backup withholding. Any Beneficiary who fails to provide this certification to the Liquidating Trustee within sixty (60) days of the mailing of the Liquidating Trustee's request to such Beneficiary for same, shall forfeit and not be entitled to receive any Distribution in respect of such Beneficiary's beneficial interest in the Liquidating Trust and such beneficial interest shall be deemed nullified, with any Distribution that otherwise would have

# Exhibit 4

been made in respect thereto to instead become property of the Liquidating Trust to be added to the General Account of the Liquidating Trust, and any such Beneficiaries (the "Affected Beneficiaries") shall not be entitled to any Distributions thereafter in respect of such beneficial interests. The Liquidating Trustee shall file with the Bankruptcy Court a "Notice of Forfeiture" reflecting any beneficial interests in the Liquidating Trust which have been forfeited pursuant to this paragraph, and serve such Notice of Forfeiture by regular mail upon each of the Affected Beneficiaries no less than sixty (60) days before making the first Distribution following any such forfeiture pursuant to this paragraph. Any such Distribution(s) shall proceed to be made, giving full effect to any forfeiture pursuant to this paragraph, unless an Order of the Bankruptcy Court reversing such forfeiture for any of the Affected Beneficiaries, upon a showing of excusable neglect, is entered by the Bankruptcy Court before sixty (60) days after the date the Liquidating Trustee mails the Notice of Forfeiture to such Affected Beneficiaries.

## ARTICLE VII
## TAXES

Section 7.1 Income Tax Treatment. The Debtor, the Liquidating Trustee and the Beneficiaries shall treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law. For income tax purposes, the Debtor, the Trustee and the Beneficiaries shall treat the transfer of the Trust Assets by the Debtor as having been made to the Beneficiaries, followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their beneficial interests therein. The Beneficiaries shall be treated for tax purposes as the grantors and deemed owners of their respective shares of the Trust Assets, and shall include in their taxable incomes their allocable share of each item of the Liquidating Trust's income, gain, deduction, loss and credit.  All such items shall be allocated by the Liquidating Trustee to the Beneficiaries using any reasonable allocation method.

Section 7.2 Valuation of Trust Assets. No later than 180 days following the Effective Date, the Liquidating Trustee shall determine the fair market value of each Trust Asset other than Cash based on a good faith determination and the advice of any professional retained by the Liquidating Trustee for such purpose. The Liquidating Trustee shall then, as soon as reasonably possible after such determination, notify each Beneficiary of the value of such holder's interest in the Liquidating Trust. The Liquidating Trustee and the Beneficiaries shall use such values consistently for all federal income tax purposes.

Section 7.3 Reserve. The Liquidating Trustee may elect to treat the Reserve as a discrete trust taxed as a "disputed ownership fund" described in Treasury Regulation § 1.468B-9, in which event it is intended that no item of income, gain, deduction, loss or credit attributable to the Trust Assets held in the Reserve shall be taxed to a Beneficiary unless and until such Beneficiary receives a distribution from the Reserve.

Section 7.4 Tax Returns. The Liquidating Trustee shall timely file all tax returns required to be filed by the Liquidating Trust on the basis that the Liquidating Trust is a grantor trust pursuant to Treasury Regulation § 1.671-4(a). If the Liquidating Trustee elects to treat the Reserve as a disputed ownership fund, it shall timely file all tax returns required to be filed by a disputed

## Exhibit 4

ownership fund. As soon as reasonably possible after the close of each calendar year, the Liquidating Trustee shall send each Beneficiary a statement setting forth such Beneficiary's share of the Liquidating Trust's income, gain, deduction, loss and credit for the year and shall instruct the holder to report all such items on his, his or its tax return for such year and pay any tax due with respect thereto. The Liquidating Trustee may, but is not required to, prepare and file the Debtor's tax return(s) to the extent such return(s) is/are required to be prepared and filed and the Debtor, due to being dissolved, has not otherwise made arrangements to do so.

Section 7.5 Tax Withholding. The Liquidating Trustee shall withhold and pay over to the appropriate taxing authority any amount required to be withheld from any payment made pursuant to this Agreement or the Plan. Any tax withheld shall be treated as distributed to the Beneficiary for purposes of this Agreement. The Liquidating Trustee may require that each Beneficiary certify such Beneficiary's taxpayer identification number, and that payments to such Beneficiary are exempt from backup withholding. The Liquidating Trustee may condition payment to a Beneficiary on prior receipt of such information.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

Section 8.1 Definitions. Unless the context otherwise requires, a capitalized term used but not defined herein shall have the meaning given to such term in the Plan.

Section 8.2 Descriptive Headings. The headings contained in this Liquidating Trust Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Liquidating Trust Agreement.

Section 8.3 Amendment. This Liquidating Trust Agreement may not be amended except by an instrument executed by the Liquidating Trustee with the approval of the Bankruptcy Court following the Effective Date.

Section 8.4 Governing Law. This Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of California, for contracts entered into and to be entirely performed within California, without regard to the rules of conflict of laws that may apply any law, whether substantive or procedural, other than California's laws.

Section 8.5 Counterparts; Effectiveness. This Liquidating Trust Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Liquidating Trust Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

Section 8.6 Severability; Validity. If any provision of this Liquidating Trust Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Liquidating Trust Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Liquidating Trust Agreement are agreed to be severable.

# Exhibit 4

Section 8.7 No Waiver by Liquidating Trustee. No failure by the Liquidating Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

Section 8.8 Preservation of Privilege and Defenses. In connection with the rights, claims, and Post-Confirmation Estate Claims that constitute Trust Assets and any objections to Disputed Claims prosecuted or resolved by the Liquidating Trustee in accordance with the Plan (including, without limitation, all defenses, counterclaims, setoffs and recoupments belonging to the Debtor), any applicable privilege or immunity of the Debtor, including, without limitation, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) shall vest in the Liquidating Trust.

Section 8.9 No Bond. Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor Liquidating Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 8.10 Notices. Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

If to the Liquidating Trustee:
J. Michael Issa
19800 MacArthur Suite 820
Irvine, CA 92612

With a Copy to:
Robert E. Opera, Esq.
Winthrop Couchot Professional Corporation
660 Newport Center Dr., #400
Newport Beach, CA 92660
Telephone:  949-720-4100
Facsimile:   949-720-4111

If to a Beneficiary:
To the name and address set forth in the Register or on the service list used for service of the Plan.

Section 8.11 Irrevocability. The Liquidating Trust is irrevocable.

Section 8.12 Relationship to Plan. The Liquidating Trustee shall have full power and authority to take any action consistent with the purposes and provisions of the Plan. However, in the event

# Exhibit 4

that the provisions of this Liquidating Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

Section 8.13 Retention of Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Case and the Plan, including, but not limited to, interpreting and implementing the provisions of this Liquidating Trust Agreement.

Section 8.14 Successors or Assigns. The terms of the Liquidating Trust Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives all as of the date first above written.

American Spectrum Realty, Inc.

_____
By: _____
Title: _____

J. MICHAEL ISSA, solely in his capacity
As Liquidating Trustee of the American Spectrum
Realty, Inc. Liquidating Trust

_____

# Exhibit 4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **100 Spectrum Center Drive, Suite 600, Irvine, California 92618**

A true and correct copy of the foregoing document entitled (*specify*): **SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN PROPOSED JOINTLY BY THE PETITIONING CREDITORS AND THE DEBTOR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 19, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

&#x2612; Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

&#x2610; Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 19, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Judge's Copy - Via Messenger:**
**Honorable Scott C. Clarkson, US Bankruptcy Court, 411 W Fourth St, Bin Beside 5th Fl Elevators, Santa Ana, CA 92701**

&#x2610; Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 19, 2016 | Lorre Clapp | /s/ Lorre Clapp |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

## NEF SERVICE LIST

Leslie Schwaebe Akins on behalf of Interested Party Courtesy NEF
lsa@stockmarketlaw.com, vs@stockmarketlaw.com;aks@stockmarketlaw.com

Robert D Bass on behalf of Interested Party Courtesy NEF
rbass@greenbass.com, mkerpik@greenbass.com;ecfnotification@greenbass.com

James C Bastian, Jr on behalf of Interested Party Courtesy NEF
jbastian@shbllp.com

Reem J Bello on behalf of Creditor Casa Bandera TIC Group, LLC, Timothy R Brown
rbello@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com

Martin J Brill on behalf of the Committee
mjb@lnbrb.com

Steve A Buchwalter on behalf of Creditor Cindi Langendoen
sab@securitieslaw-attorney.com, buchwalt@pacbell.net

Michael J Bujold on behalf of U.S. Trustee United States Trustee (SA)
Michael.J.Bujold@usdoj.gov

Frank Cadigan on behalf of U.S. Trustee United States Trustee (SA)
frank.cadigan@usdoj.gov

Alexandre I Cornelius on behalf of Defendant River Oaks Self Storage TIC 1, LP, River Oaks Self Storage TIC 2, LP, River Oaks Self Storage TIC 3, LP, River Oaks Self Storage TIC 4, LP
aicornelius@costell-law.com, jgalliver@costell-law.com;mharris@costell-law.com;cevans@costell-law.com;ladelson@costell-law.com;jlcostell@costell-law.com

Douglas A Daniels on behalf of Interested Party Courtesy NEF
douglas.daniels@danielsgentle.com, elizabeth.miller@danielsgentle.com;jeremy.williams@danielsgentle.com

Sean B Davis on behalf of Interested Party Courtesy NEF
sbdavis@winstead.com, sbdavis@winstead.com;deierdam@winstead.com

Robert H Dewberry on behalf of Interested Party Easterday Hunter Corporation d/b/a Easterday Building Maintenance
robert.dewberry@dewlaw.net

Lei Lei Wang Ekvall on behalf of Interested Party ASR 2620-2630 Fountainview, LP; Fountain View Park Plaza, LLC; and ASRP Investments, LLC
lekvall@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com

Marjorie A Elken on behalf of Interested Party Courtesy NEF
melken@zrlawgroup.com, cstinson@zrlawgroup.com

Richard L Fuqua on behalf of Attorney Richard L Fuqua
fuqua@fuquakeim.com

Anton Gerschler    NEF for Interested Party
anton@northcountylawfirm.com

Robert P Goe on behalf of Attorney Goe & Forsythe, LLP, ASR 2620-2630 Fountainview G.P., LLC, American Spectrum Realty Management, LLC, American Spectrum Realty Operating Partnership L.P., Interested Party NSA
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com

Jeffrey I Golden  on behalf of Interested Party Courtesy NEF
 jgolden@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com

Cristina A Guido
cguido@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com

Brian P Holmes on behalf of Creditor GS Mortgage Securities Trust 2012-GC9
bholmes@gersonlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

Brian P Holmes on behalf of Creditor WFRBS Commercial Mortgage Trust 2011-C3, WFRBS Commercial Mortgage Trust 2012-C6, WFRBS Commercial Mortgage Trust 2012-C8
bholmes@gersonlaw.com

William C Hughes on behalf of Interested Party Gus Anthony Eppolito, Jr.
craft@hughesellzey.com

Ira Benjamin Katz on behalf of Interested Party Interested Party
IKatz@katzlaw.net, ikatz@ecf.inforuptcy.com

Jeannie Kim on behalf of Debtor American Spectrum Realty Inc., a Maryland Corporation
jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com

Leib M Lerner on behalf of Interested Party Courtesy NEF
leib.lerner@alston.com

Andrew B Levin on behalf of Debtor American Spectrum Realty Inc., a Maryland Corporation
alevin@winthropcouchot.com, bayrelevin@hotmail.com;pj@winthropcouchot.com;mconour@winthropcouchot.com

Peter W Lianides on behalf of Debtor American Spectrum Realty Inc., a Maryland Corporation, American Spectrum Management Group, Inc., Plaintiff American Spectrum Realty Management, LLC, Plaintiff American Spectrum Self-Storage Management, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com

Melissa Davis Lowe on behalf of Petitioning Creditor D&A Daily Mortgage Fund III, LP  on behalf of Petitioning Creditor D&A Intermediate-Term Mortgage Fund III, L P, Petitioning Creditor D&A Semi-Annual Mortgage Fund III, L P
mdavis@shbllp.com, swartzell@shbllp.com

Hal M Mersel NEF for Interested Party
mark.mersel@bryancave.com, ginny.hamel@bryancave.com

Susan I Montgomery on behalf of Interested Party Susan I. Montgomery
susan@simontgomerylaw.com, assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com

Kevin J. Moore on behalf of Interested Party Courtesy NEF
Kmoore@kjmlaw.com, ddoitch@kjmlaw.com

Sarah D Moyed on behalf of Interested Party United States Securities and Exchange Commission
moyeds@sec.gov

Ryan D ODea    on behalf of Petitioning Creditor D&A Daily Mortgage Fund III, LP  on behalf of Petitioning Creditor D&A Intermediate-Term Mortgage Fund III, L P, Petitioning Creditor D&A Semi-Annual Mortgage Fund III, L P
rodea@shbllp.com, sswartzell@shbllp.com

Robert E Opera on behalf of Debtor American Spectrum Realty Inc., a Maryland Corporation, Plaintiff American Spectrum Management Group, Inc., Plaintiff American Spectrum Realty Management, LLC, Plaintiff American Spectrum Realty, Inc., Plaintiff American Spectrum Self-Storage Management, LLC
ropera@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com

Ronak Patel on behalf of Creditor County Of Riverside
rpatel@co.riverside.ca.us, mdominguez@co.riverside.ca.us

Jeffrey R Patterson on behalf of Interested Party Courtesy NEF
jpatterson@allenmatkins.com, csandoval@allenmatkins.com

Amelia Puertas-Samara    on behalf of EDD
itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov

Coni S Rathbone on behalf of Interested Party Courtesy NEF
crathbone@zrlawgroup.com, amy@zupgroup.com

Daniel H Reiss on behalf of Creditor Committee Official Committee of Unsecured Creditors
dhr@lnbyb.com, dhr@ecf.inforuptcy.com

Todd C. Ringstad on behalf of Interested Party Interested Party
becky@ringstadlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Lorraine M Sarles on behalf of Trustee Dennis Connolly (TR)
lorraine.sarles@alston.com

Melody T Scullary on behalf of Interested Party Courtesy NEF
Melody.Scullary@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov

Randye B Soref on behalf of Plaintiff American Spectrum Realty, Inc.
rsoref@polsinelli.com

Tamar Terzian on behalf of Creditor Crown Energy Services, Inc. and Crown Building Maintenance, Inc.
terzian@kingobk.com, cynthia@kingobk.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Reed S Waddell on behalf of Creditor U.S. Bank National Association, as Trustee, in Trust for the COMM 2013-CCRE9 Mortgage
Trust Commercial Mortgage Pass-Through Certificates
rwaddell@frandzel.com, efiling@frandzel.com;sking@frandzel.com

Kimberly Walsh on behalf of Creditor Texas Comptroller of Public Accounts
bk-kwalsh@texasattorneygeneral.gov

Craig A Welin on behalf of Creditor U.S. Bank National Association, as Trustee, in Trust for the COMM 2013-CCRE9 Mortgage
Trust Commercial Mortgage Pass-Through Certificates
cwelin@frandzel.com, efiling@frandzel.com;bwilson@frandzel.com

Jeffrey C Wisler on behalf of Creditor Cigna Health and Life Insurance Company and Related Cigna Entities
jwisler@connollygallagher.com, dperkins@connollygallagher.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**